Stephen D. Finestone (125675)
Jennifer C. Hayes (197252)
Ryan A. Witthans (301432)
FINESTONE HAYES LLP
456 Montgomery Street, 20th Floor
San Francisco, California 94104
Tel. (415) 421-2624
Fax (415) 398-2820
sfinestone@fhlawllp.com

Attorneys for Debtor
Munchery, Inc.

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re<br><br>MUNCHERY, INC.<br><br>    Debtor. | Case No. 19-30232<br><br>Chapter 11<br><br>**MOTION TO APPROVE BID PROCEDURES AND RELATED RELIEF IN CONNECTION WITH THE SALE OF DEBTOR'S ASSETS**<br><br>**Date:** TBD<br>**Time:** TBD<br>**Place:** 450 Golden Gate Ave, 16th Floor<br>        San Francisco, CA 94102 |

## INTRODUCTION

Munchery, Inc. ("Munchery" or "Debtor"), the debtor and debtor-in-possession intends to seek Court approval of a sale (the "Sale") of Debtor's assets (the "Assets") as more fully described below, pursuant to an Asset Purchase Agreement with Gate Gourmet, Inc. ("Gate"). The Debtor will be filing a separate motion for approval of the Sale (the "Sale Motion").

The Assets consist of a lease (the "Lease") for business premises of approximately 70,000 square feet located at 220 Shaw Road, South San Francisco, CA (the "Premises") and the significant improvements made by Debtor to the Premises and the equipment located on the Premises, which were used by Debtor in the operation of its business. In connection with the Sale, Debtor intends to provide the opportunity for another buyer to bid to acquire the Assets

MOTION RE BID PROCEDURES                                                  1

for a qualified higher bid (the "Overbid") than the amount being offered by Gate. In the event there is an Overbid, Debtor intends to hold an auction at the same time as it seeks approval of the Sale from this Court.

By this Motion, Debtor seeks the Court's approval of the bid procedures to be used to determine whether there is an interested overbidder and the procedures used in the event an Overbid is made. These procedures were the result of consultation with Gate and the Debtor's senior secured lenders. This Motion is made pursuant to Bankruptcy Code Section 363 and Bankruptcy Rules 2002 and 6004. This Motion is based on the arguments set forth below, the accompanying Declaration of James Beriker ("Beriker Declaration") and any other pleadings are argument submitted prior to or at the hearing on the matter.

## BACKGROUND

**A. The Debtor.**

Debtor filed its voluntary petition on February 28, 2019 (the "Petition Date"). Debtor continues to operate its business as a debtor in possession pursuant to Bankruptcy Code Sections 1107(a) and 1108. As of the filing of this Motion, no official committee of unsecured creditors has been appointed by the Office of the U.S. Trustee.

The background to the Debtor's business, operations and the events leading to this bankruptcy filing is set forth in the Beriker Declaration filed in support of Debtor's first day motions. In general terms, Munchery was a startup business specializing in food preparation and delivery. Customers ordered online or through an App and Munchery's drivers quickly prepared meals to is customers.[1] The company was founded in 2010 and grew its business to select cities throughout the United States. It ran into budget difficulties and downsized its business in 2018 by laying off approximately 30% of its workforce and shutting down its operations in New York and Seattle, while focusing on its remaining core business in the San Francisco Bay Area. Munchery sourced much of its product from local companies and highlighted accomplished chefs. By late 2018, although its performance was improving, it no

---

[1] Unlike some other startups, Munchery treated its drivers as employees rather than independent contractors,

longer had access to new investment and its lenders were no longer will to advance new funds to keep the business running. Munchery ceased operations and laid off all employees on January 21, 2019.

Since ending operations, Munchery has sought to maximize the value of its assets. Its primary assets are as follows:

- Its primary business premises and the improvements, machinery and equipment located on the premises. The premises are approximately 70,000 square feet, located at 220 Shaw Road, South San Francisco, CA (the "Premises") and are occupied pursuant to a lease (the "Lease") with Eureka Ventures VI, LLC ("Landlord"). The Lease expires in April 2015 and has a ten-year option to renew. Munchery spent approximately $8 million in building out the Premises and has a considerable amount of machinery and equipment on the Premises.
- Its intellectual property and related intangibles, including its website, its application, its trade name and customer lists.
- Its Net Operating Losses ("NOLs"), which were estimated as of 2018 to be $116 million (subject to further verification and analysis)

Debtor has entered into a proposed transaction for the first group of these assets: the Lease, as well as the improvements, machinery and equipment located on the Premises (the "Hard Assets") and this Motion relates to this transaction.

**B. The Transaction.**

Munchery has entered into a Letter of Intent ("LOI") and is negotiating an Asset Purchase Agreement ("APA") with a company known as Gate Gourmet, Inc. ("Gate"). Gate is in the airline catering business and a fully built out facility like Munchery's, located nearby to San Francisco International Airport is attractive to Gate. In general terms the APA provides for the transfer of the Lease to Gate and the sale of the Hard Assets. The sale is to be free and clear of any liens. The consideration for the sale is $5 million. The consideration is made up of $3.5 million for the improvements to the Premises and $1.5 million for all the equipment on the Premises, a list of which has already been provided to Gate. The Sale is contingent upon an

assignment of the Lease and the Landlord's agreement to provide Gate with an additional five-year option on the Lease. Gate has also agreed to spend $1 million in additional improvements to the Premises if it obtains the Lease. Munchery discussed the acceptability of Gate as a tenant with the Landlord prior to the Petition Date and understands that the Landlord is satisfied with Gate as an assignee of the Lease. As discussed below, however, the willingness to spend on additional improvements to the Premises and a request for an additional five-year lease are not a requirement of an Overbid. Munchery anticipates that the Sale will close prior to the end of April 2019.

**C. The Overbid Protections.**

Debtor has negotiated with Gate as the stalking horse bidder, certain procedures if any other party wishes to bid to acquire the Lease and the Hard Assets. Prior to entering into the LOI with Gate, Munchery was in discussions with other interested parties. Munchery, however, ended discussions with other parties by late January and has focused its efforts on reaching agreement with Gate. Nevertheless, there are a limited number of leased spaces of the size and with the build-out as the Premises, so it is possible that another party may appear.

The minimum overbid (the "Overbid") price is $5,250,000. If an Overbid is timely received, then further bidding increments will be in the minimum amount of $25,000. In the event that an Overbid is received, and Gate is not ultimately the successful bidder, Gate shall receive $150,000 from the sale proceeds to compensate it for its time and expense in being the stalking horse bidder.

**D. The Proposed Sale Procedures.**

In addition to the Overbid and minimum bidding increments if Munchery receives an Overbid, Munchery proposes to implement certain procedures (the "Bid Procedures") to facilitate a fair process designed to maximize the value of the assets covered in the Sale Motion. A copy of the proposed Bid Procedures is attached to this Motion as Exhibit A. The Bid Procedures are also designed to prevent any last-minute efforts that do not afford adequate time for Munchery, Gate and any party in interest to fairly analyze any Overbids and respond to them as appropriate.

The Bid Procedures set forth the parameters of is required in a bid (a "Qualified Bid") such that such an Overbid should include the following:

    i)     A price of at least $5,250,000;

    ii)     The identify of the party submitting the Overbid and adequate financial information regarding the party's financial wherewithal, satisfactory to the Debtor, to assure Debtor and its creditors that the party can close the sale, and satisfactory so that Debtor can meet its obligations under Bankruptcy Code Section 365 to provide the Landlord receive adequate assurance of the party's ability to perform its obligations under the Lease;

    iii)     An indication whether it is willing to make the same financial commitment as Gate to make additional improvements to the Premises;

    iv)     An indication whether it, like Gate, will request that the Landlord provide it with an additional five-year option on the Lease;

    v)     A draft asset purchase agreement in a form substantially similar to the APA with Gate, or such other document as may be appropriate for the Prospective Bidder to make its Overbid;

    vi)     A good faith deposit of $100,000 to be deposited with the Debtor's counsel in counsel's trust account and which will be refundable after closing with the successful bidder if the party submitting the Overbid is not the ultimate winning bidder. If the party submitting the deposit is the winning bidder, the deposit shall be credited as part of the purchase price;

    vii)     Acknowledgement satisfactory to the Debtor that the bidder is prepared to submit a declaration of its principal to support a finding by the Bankruptcy Court that the bidder is a good faith buyer under Bankruptcy Code Section 363(m); or, alternatively a draft of such a declaration; and,

    viii)     An indication whether the bidder is willing to act as a back-up bidder if it ultimately does not submit the highest or otherwise best bid, in which case the

bidder would be willing to close a sale transaction at its highest or otherwise best bid in the event that the winning bidder does not close.

Debtor intends to set a deadline for Overbids of one week prior to the hearing on the Sale Motion. If a timely Overbid is received, Debtor intends to hold an auction at the Bankruptcy Court at the date and time set for the hearing of the Sale Motion. Debtor anticipates that the Sale Motion will be heard by late March or early April.

Debtor reserves the right to make reasonable modifications to the proposed Bidding Procedures as circumstances warrant. The Debtor shall promptly notify any interested parties and prospective bidders of any such modifications.

## LEGAL ARGUMENT

The proposed Bid Procedures serve the best interests of the bankruptcy estate. The Bankruptcy Code provides that a debtor-in-possession, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." Section 363(b)(1). Although Section 363 does not specify a standard for approving bid procedures, the Ninth Circuit Bankruptcy Appellate Panel has established a standard based on the Debtor's "sound business judgment." Under this standard, the "bankruptcy court has considerable discretion in deciding whether to approve or disapprove the use of estate property by a debtor in possession, in the light of sound business justification. *In re Walter*, 83 B.R. 14, 16 (9th Cir. 1988); *see also In re Continental Airlines, Inc.*, 780 F.2d 1223, 1226 (5th Cir. 1986); *In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143 (3rd Cir. 1986); *In re Lionel Corp.*, 722 F.2d 1063, 1071 (2nd Cir. 1983); *In re Psychometric Systems, Inc.*, 267 B.R. 670, 674 (Bankr. D. Colo. 2007) (collecting cases).

In reviewing the Debtor's business judgment the Court must take the following items into consideration: whether: (a) there has been "[a]ny improper or bad motive," (b) the "price is fair and the negotiations or bidding has occurred at arm's length" and (c) the sale followed "[a]dequate procedures, including proper exposure to the market and accurate and reasonable notice to all parties in interest." *In re Castre*, 312 B.R. 426, 428 (Bankr. D. Colo. 2004). When applying the rule, "the bankruptcy court should presume that the debtor-in-possession acted

prudently, on an informed basis, in good faith, and in the honest belief that the action taken was in the best interests of the bankruptcy estate." *In re Pomona Valley Med. Group, Inc.*, 476 F.3d 665, 670 (9th Cir. 2007) (considering the rule in the context of the debtor's decision to reject a contract). In the context of this rule, courts often approve overbid procedures, *see, e.g., In re Crown Corp.*, 679 F.2d 774, 777 (9th Cir. 1982).

Munchery asserts that the Bidding Procedures are within its sound business judgment. It marketed the Lease and Hard Assets prior to filing bankruptcy. The proposed price was the result of negotiations as were the Bidding Procedures. The Bidding Procedures are designed to be fair to Gate, to a potential overbidder and provide an opportunity for the estate to recover greater value. The proposed Overbid is fair given the size of the transaction. In the event Gate is not the winning bidder, the break-up fee provides fair compensation to Gate while still returning value to the estate from an Overbid. The proposed bidding increments are also fair and encourage bidding if another buyer appears.

## CONCLUSION

Based on the foregoing, Debtor requests that this Court approve the proposed bidding procedures and provide such other and further relief as it deems appropriate under the circumstances.

Dated: February 28, 2019                    FINESTONE HAYES LLP


/s/ Stephen D. Finestone
Stephen D. Finestone
Attorneys for Munchery, Inc.