SUBORDINATION AGREEMENT

This Subordination Agreement (this "Agreement") is made as of January 25, 2018 by and between each of the undersigned creditors (each a "Creditor" and, collectively, the "Creditors"), and Comerica Bank ("Bank").

Recitals

A.    MUNCHERY INC. ("Borrower") has requested and/or obtained certain loans or other credit accommodations from Bank, including pursuant to a Loan and Security Agreement dated as of December 18, 2014, as amended, restated, modified and/or supplemented from time to time (the "Loan Agreement").

B.    Each Creditor has extended loans or other credit accommodations to Borrower, and/or may extend loans or other credit accommodations to Borrower from time to time.

C.    In order to induce Bank to extend credit to Borrower and, at any time or from time to time, at Bank's option, to make such further loans, extensions of credit, or other accommodations to or for the account of Borrower, or to purchase or extend credit upon any instrument or writing in respect of which Borrower may be liable in any capacity, or to grant such renewals or extension of any such loan, extension of credit, purchase, or other accommodation as Bank may deem advisable, each Creditor is willing to subordinate:  (i) all of Borrower's indebtedness and obligations to such Creditor, whether presently existing or arising in the future (the "Subordinated Debt") to all of Borrower's indebtedness and obligations to Bank; and (ii) all of such Creditor's security interests, if any, to all of Bank's security interests in Borrower's property.

NOW, THEREFORE, THE PARTIES AGREE AS FOLLOWS:

1.    Each Creditor subordinates to Bank any security interest or lien that the Creditor may have in any property of Borrower.  Notwithstanding the respective dates of attachment or perfection of the security interest of a Creditor and the security interest of Bank, the security interest of Bank in any property of Borrower shall at all times be prior to the security interest of such Creditor.  Capitalized terms not otherwise defined herein shall have the same meaning as in the Loan Agreement.

2.    All Subordinated Debt is subordinated in right of payment to all obligations of Borrower to Bank now existing or hereafter arising, together with all costs of collecting such obligations (including attorneys' fees), including, without limitation, all interest accruing after the commencement by or against Borrower of any bankruptcy, reorganization or similar proceeding, and all obligations under the Loan Agreement (the "Senior Debt").

3.    No Creditor will demand or receive from Borrower (and Borrower will not pay to any Creditor) all or any part of the Subordinated Debt, by way of payment, prepayment, setoff, lawsuit or otherwise, nor will the Creditor exercise any remedy with respect to the Collateral, nor will any Creditor commence, or cause to commence, prosecute or participate in any administrative, legal or equitable action against Borrower, for so long as any portion of the Senior Debt remains outstanding (other than inchoate indemnification obligations), provided that Creditor may at any time elect to convert the Subordinated Debt into equity securities of Borrower in accordance with the terms thereof (provided that, if such securities have any call, put or other conversion features that would obligate Borrower to declare or pay cash dividends, make cash distributions, or otherwise pay any money to the holder, each Creditor hereby agrees that Borrower may not declare, pay or make such dividends, distributions or other payments to any Creditor, and no Creditor shall accept any such dividends, distributions or other payments for so long as any portion of the Senior Debt (other than inchoate indemnification obligations) remains outstanding).

4.    Each Creditor shall promptly deliver to Bank in the form received (except for endorsement or assignment by such Creditor where required by Bank) for application to the Senior Debt any payment, distribution, security or proceeds received by such Creditor with respect to the Subordinated Debt other than in accordance with this Agreement and other than equity securities received by Creditor upon conversion of all or part of the Subordinated Debt provided that such securities do not have any call, put or other conversion features that would obligate Borrower to declare or pay cash dividends, make cash distributions, or otherwise pay any money to the holder.

Case: 19-30232   Doc# 40-17   Filed: 03/08/19   Entered: 03/08/19 13:04:44   Page 1 of 25

5.        In the event of Borrower's insolvency, reorganization or any case or proceeding under any bankruptcy or insolvency law or laws relating to the relief of debtors, these provisions shall remain in full force and effect, and Bank's claims against Borrower and the estate of Borrower shall be paid in full before any payment is made to any Creditor.

6.        For so long as any of the Senior Debt (other than inchoate indemnification obligations) remains unpaid, each Creditor irrevocably appoints Bank as its attorney in fact, and grants to Bank a power of attorney with full power of substitution, in the name of such Creditor or in the name of Bank, for the use and benefit of Bank, without notice to such Creditor, to perform at Bank's option the following acts in any bankruptcy, insolvency or similar proceeding involving Borrower:

(i)        To file the appropriate claim or claims in respect of the Subordinated Debt on behalf of such Creditor if such Creditor does not do so prior to 30 days before the expiration of the time to file claims in such proceeding and if Bank elects, in its sole discretion, to file such claim or claims; and

(ii)        To accept or reject any plan of reorganization or arrangement on behalf of such Creditor and to otherwise vote such Creditor's claims in respect of any Subordinated Debt in any manner that Bank deems appropriate for the enforcement of its rights hereunder.

7.        For so long as any of the Senior Debt (other than inchoate indemnification obligations) remains unpaid, no Creditor will object to or oppose (i) the sale of Borrower, or (ii) the sale or other disposition of any property of Borrower, if Bank has consented to such sale of Borrower or sale or disposition of any property of Borrower.  If requested by Bank, each Creditor shall affirmatively consent to such sale or disposition and shall take all necessary actions and execute such documents and instruments as Bank may reasonably request in connection with and to facilitate such sale or disposition including, but not limited to, releasing any security interests held by such Creditor in such property and filing any terminations of security interests of such Creditors in such property.  If such Creditor fails to take such actions within five (5) days of Bank's request, each Creditor irrevocably appoints Bank as such Creditor's attorney in fact, and grants to Bank a power of attorney with full power of substitution, in the name of such Creditor or in the name of Bank, for the use and benefit of Bank, without notice to such Creditor, to perform at Bank's option to take such actions.

8.        Each Creditor shall assure that the instruments evidencing the Subordinated Debt contain a legend stating that the instruments are subject to the terms of this Agreement.  No amendment of the documents evidencing or relating to the Subordinated Debt shall directly or indirectly modify the provisions of this Agreement in any manner which might terminate or impair the subordination of the Subordinated Debt or the subordination of the security interest or lien that a Creditor may have in any property of Borrower.  By way of example, such instruments shall not be amended to (i) increase the rate of interest with respect to the Subordinated Debt, (ii) accelerate the payment of the principal or interest or any other portion of the Subordinated Debt, or (iii) shorten the maturity date of the Subordinated Debt , or (iii) shorten the maturity date of the Subordinated Debt.

9.        This Agreement shall remain effective for so long as the Bank has any obligation to make credit extensions to Borrower or any portion of the Senior Debt (other than inchoate indemnification obligations) remains unpaid.  If, at any time after payment in full of the Senior Debt any payments of the Senior Debt must be disgorged by Bank for any reason (including, without limitation, the bankruptcy of Borrower), this Agreement and the relative rights and priorities set forth herein shall be reinstated as to all such disgorged payments as though such payments had not been made and each Creditor shall immediately pay over to Bank all payments received with respect to the Subordinated Debt to the extent that such payments would have been prohibited hereunder.  At any time and from time to time, without notice to any Creditor, Bank may take such actions with respect to the Senior Debt as Bank, in its sole discretion, may deem appropriate, including, without limitation, terminating advances to Borrower, increasing the principal amount, extending the time of payment, increasing applicable interest rates, renewing, compromising or otherwise amending the terms of any documents affecting the Senior Debt and any collateral securing the Senior Debt, and enforcing or failing to enforce any rights against Borrower or any other person. No such action or inaction shall impair or otherwise affect Bank's rights hereunder. Each Creditor waives the benefits, if any, of Civil Code sections 2799, 2808, 2809, 2810, 2815, 2819, 2820, 2821, 2922, 2838, 2839, 2845, 2847, 2848, 2849, 2850, 2899 and 3433

10.     This Agreement shall bind any successors or assignees of each Creditor and shall benefit any successors or assigns of Bank.  This Agreement is solely for the benefit of the Creditor and Bank and not for the benefit of Borrower or any other party.  If Borrower is in the process of refinancing a portion of the Senior Debt with a new lender, and if Bank makes a request to a Creditor, such Creditor shall agree to enter into a new subordination agreement with the new lender on substantially the terms and conditions of this Agreement.

11.     This Agreement may be executed in two or more counterparts, each of which shall be deemed an original and all of which together shall constitute one instrument.

12.     THE PARTIES HEREBY AGREE THAT THIS AGREEMENT AND ALL OTHER LOAN DOCUMENTS, INSTRUMENTS AND AGREEMENTS RELATED TO THIS AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF CALIFORNIA, WITHOUT REGARD TO ITS CONFLICTS OF LAW PROVISIONS. CREDITOR, BORROWER AND BANK EACH HEREBY IRREVOCABLY AND UNCONDITIONALLY (I) CONSENTS AND SUBMITS TO THE SOLE AND EXCLUSIVE JURISDICTION OF ANY STATE OR FEDERAL COURT LOCATED WITHIN THE STATE OF CALIFORNIA, AND ANY APPELATE COURT THEREOF, (II) AGREES THAT ALL ACTIONS AND PROCEEDINGS BASED UPON, ARISING OUT OF, RELATING TO OR OTHERWISE CONCERNING THIS AGREEMENT OR ANY OTHER DOCUMENT, INSTRUMENT  OR AGREEMENT RELATED TO THIS AGREEMENT, INCLUDING ALL CLAIMS FOR RECOGNITION OR ENFORCEMENT OF ANY JUDGMENT, SHALL SOLELY AND EXCLUSIVELY BE BROUGHT, HEARD, AND DETERMINED (LITIGATED) IN SUCH COURTS, (III) ACCEPTS FOR ITSELF AND IN CONNECTION WITH ITS PROPERTIES, THE SOLE AND EXCLUSIVE JURISDICTION OF THE AFORESAID COURTS, (IV) WAIVES ANY OBJECTION, INCLUDING ANY OBJECTION TO THE LAYING OF VENUE OR BASED UPON THE GROUNDS OF FORUM NON CONVENIENS, THAT IT MAY NOW OR HEREAFTER HAVE TO BRINGING OR MAINTAINING ANY SUCH ACTION OR PROCEEDING IN SUCH JURISDICTION, AND (V) AGREES TO BE BOUND BY ANY JUDGMENT RENDERED THEREBY IN CONNECTION WITH THIS AGREEMENT, OR ANY  SUCH OTHER DOCUMENT, INSTRUMENT OR AGREEMENT.  NOTHING HEREIN SHALL LIMIT THE RIGHT OF BANK TO BRING ANY ACTION OR PROCEEDING AGAINST, CREDITOR OR ITS PROPERTIES OR BORROWER OR ITS PROPERTIES IN THE COURTS OF ANY OTHER JURISDICTION IN CONNECTION WITH THE ENFORCEMENT OF ANY LIENS OR SECURITY INTERESTS IN FAVOR OF BANK ON ANY OF CREDITOR'S PROPERTIES OR ASSETS OR BORROWER'S PROPERTIES OR ASSETS.

13.     THE UNDERSIGNED ACKNOWLEDGE THAT THE RIGHT TO TRIAL BY JURY IS A CONSTITUTIONAL ONE, BUT THAT IT MAY BE WAIVED UNDER CERTAIN CIRCUMSTANCES.  TO THE EXTENT PERMITTED BY LAW, EACH PARTY, AFTER CONSULTING (OR HAVING HAD THE OPPORTUNITY TO CONSULT) WITH COUNSEL OF ITS, HIS OR HER CHOICE, KNOWINGLY AND VOLUNTARILY, AND FOR THE MUTUAL BENEFIT OF ALL PARTIES, WAIVES ANY RIGHT TO TRIAL BY JURY IN THE EVENT OF LITIGATION ARISING OUT OF OR RELATED TO THIS AGREEMENT OR ANY OTHER DOCUMENT, INSTRUMENT OR AGREEMENT BETWEEN THE UNDERSIGNED PARTIES.

1.     <u>JUDICIAL REFERENCE PROVISION.</u>

(a)     In the event the Jury Trial Waiver set forth above is not enforceable, the parties elect to proceed under this Judicial Reference Provision.

(b)     With the exception of the items specified in Section 14(c), below, any controversy, dispute or claim (each, a "Claim") between the parties arising out of or relating to this Agreement or any other document, instrument or agreement between the undersigned parties (collectively in this Section, the "Loan Documents"), will be resolved by a reference proceeding in California in accordance with the provisions of Sections 638 et seq. of the California Code of Civil Procedure ("CCP"), or their successor sections, which shall constitute the exclusive remedy for the resolution of any Claim, including whether the Claim is subject to the reference proceeding. Except as otherwise provided in the Loan Documents, venue for the reference proceeding will be in the state or federal court in the county or district where the real property involved in the action, if any, is located or in the state or federal court in the county or district where venue is otherwise appropriate under applicable law (the "Court").

(c)        The matters that shall not be subject to a reference are the following: (i) foreclosure of any security interests in real or personal property, (ii) exercise of self-help remedies (including, without limitation, set-off), (iii) appointment of a receiver and (iv) temporary, provisional or ancillary remedies (including, without limitation, writs of attachment, writs of possession, temporary restraining orders or preliminary injunctions). This Judicial Reference Provision does not limit the right of any party to exercise or oppose any of the rights and remedies described in clauses (i) and (ii) or to seek or oppose from a court of competent jurisdiction any of the items described in clauses (iii) and (iv). The exercise of, or opposition to, any of those items does not waive the right of any party to a reference proceeding pursuant to this Judicial Reference Provision as provided herein.

(d)        The referee shall be a retired judge or justice selected by mutual written agreement of the parties. If the parties do not agree within ten (10) days of a written request to do so by any party, then, upon request of any party, the referee shall be selected by the Presiding Judge of the Court (or his or her representative). A request for appointment of a referee may be heard on an ex parte or expedited basis, and the parties agree that irreparable harm would result if ex parte relief is not granted. Pursuant to CCP § 170.6, each party shall have one peremptory challenge to the referee selected by the Presiding Judge of the Court (or his or her representative).

(e)        The parties agree that time is of the essence in conducting the reference proceedings. Accordingly, the referee shall be requested, subject to change in the time periods specified herein for good cause shown, to (i) set the matter for a status and trial-setting conference within fifteen (15) days after the date of selection of the referee, (ii) if practicable, try all issues of law or fact within one hundred twenty (120) days after the date of the conference and (iii) report a statement of decision within twenty (20) days after the matter has been submitted for decision.

(f)        The referee will have power to expand or limit the amount and duration of discovery.  The referee may set or extend discovery deadlines or cutoffs for good cause, including a party's failure to provide requested discovery for any reason whatsoever. Unless otherwise ordered based upon good cause shown, no party shall be entitled to "priority" in conducting discovery, depositions may be taken by either party upon seven (7) days written notice, and all other discovery shall be responded to within fifteen (15) days after service. All disputes relating to discovery which cannot be resolved by the parties shall be submitted to the referee whose decision shall be final and binding.

(g)        Except as expressly set forth herein, the referee shall determine the manner in which the reference proceeding is conducted including the time and place of hearings, the order of presentation of evidence, and all other questions that arise with respect to the course of the reference proceeding. All proceedings and hearings conducted before the referee, except for trial, shall be conducted without a court reporter, except that when any party so requests, a court reporter will be used at any hearing conducted before the referee, and the referee will be provided a courtesy copy of the transcript. The party making such a request shall have the obligation to arrange for and pay the court reporter. Subject to the referee's power to award costs to the prevailing party, the parties will equally share the cost of the referee and the court reporter at trial.

(h)        The referee shall be required to determine all issues in accordance with existing case law and the statutory laws of the State of California. The rules of evidence applicable to proceedings at law in the State of California will be applicable to the reference proceeding. The referee shall be empowered to enter equitable as well as legal relief, enter equitable orders that will be binding on the parties and rule on any motion which would be authorized in a court proceeding, including without limitation motions for summary judgment or summary adjudication. The referee shall issue a decision at the close of the reference proceeding which disposes of all claims of the parties that are the subject of the reference.  Pursuant to CCP § 644, such decision shall be entered by the Court as a judgment or an order in the same manner as if the action had been tried by the Court and any such decision will be final, binding and conclusive.  The parties reserve the right to appeal from the final judgment or order or from any appealable decision or order entered by the referee.  The parties reserve the right to findings of fact, conclusions of laws, a written statement of decision, and the right to move for a new trial or a different judgment, which new trial, if granted, is also to be a reference proceeding under this provision.

(i)        If the enabling legislation which provides for appointment of a referee is repealed (and no successor statute is enacted), any dispute between the parties that would otherwise be determined

Case: 19-30232   Doc# 40-17   Filed: 03/08/19   Entered: 03/08/19 13:04:44   Page 4 of 25

by reference procedure will be resolved and determined by arbitration. The arbitration will be conducted by a retired judge or justice, in accordance with the California Arbitration Act §1280 through §1294.2 of the CCP as amended from time to time. The limitations with respect to discovery set forth above shall apply to any such arbitration proceeding.

(j)     THE PARTIES RECOGNIZE AND AGREE THAT ALL CONTROVERSIES, DISPUTES AND CLAIMS RESOLVED UNDER THIS JUDICIAL REFERENCE PROVISION WILL BE DECIDED BY A REFEREE AND NOT BY A JURY. AFTER CONSULTING (OR HAVING HAD THE OPPORTUNITY TO CONSULT) WITH COUNSEL OF ITS, HIS OR HER OWN CHOICE, EACH PARTY KNOWINGLY AND VOLUNTARILY, AND FOR THE MUTUAL BENEFIT OF ALL PARTIES, AGREES THAT THIS JUDICIAL REFERENCE PROVISION WILL APPLY TO ANY CONTROVERSY, DISPUTE OR CLAIM BETWEEN OR AMONG THEM ARISING OUT OF OR IN ANY WAY RELATED TO, THIS AGREEMENT OR THE OTHER LOAN DOCUMENTS.

2.     This Agreement represents the entire agreement with respect to the subject matter hereof, and supersedes all prior negotiations, agreements and commitments. No Creditor is relying on any representations by Bank or Borrower in entering into this Agreement, and each Creditor has kept and will continue to keep itself fully apprised of the financial and other condition of Borrower. This Agreement may be amended only by written instrument signed by Creditors and Bank.

14.     In the event of any legal action to enforce the rights of a party under this Agreement, the party prevailing in such action shall be entitled, in addition to such other relief as may be granted, all reasonable costs and expenses, including reasonable attorneys' fees, incurred in such action.

*[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK; SIGNATURE PAGES FOLLOW]*

IN WITNESS WHEREOF, the undersigned have executed this Agreement as of the date first above written.

"Creditors"

**SIMKIN LIVING TRUST 5-1-2017**

By:_____
Name:_Ryan Simkin_____
Title:_____Trustee_____

**RDG INC.**

By:_____
Name:_____
Title:_____

**BALDWIN FAMILY TRUST DATED 9-16-15**

By:_____
Name:_____
Title:_____

**LEZACK LIVING TRUST**

By:_____
Name:_____
Title:_____

**SMOKEY INVESTMENTS LP**

By:_____
Name:_____
Title:_____

**IPV SS II LLC**

By:_____
Name:_____
Title:_____

**JORDAN SIMKIN**

By:_____
Name:_____
Title:_____

**GAYL SIMKIN**

By:_____
Name:_____
Title:_____

162305492 v3

IN WITNESS WHEREOF, the undersigned have executed this Agreement as of the date first above written.

"Creditors"

**SIMKIN LIVING TRUST 5-1-2017**

By:_____

Name:_____

Title:_____

**RDG INC.**

By:_____

Name:_____

Title:_____

**BALDWIN FAMILY TRUST DATED 9-16-15**

By:_____

Name:_____

Title:_____

**LEZACK LIVING TRUST**

By:_____

Name:_____

Title:_____

**SMOKEY INVESTMENTS LP**

By:_____

Name:_____

Title:_____

**IPV SS II LLC**

By:_____

Name:_____

Title:_____

**JORDAN SIMKIN**

By:_____

Name:_____

Title:_____

**GAYL SIMKIN**

By:_____

Name:_____

Title:_____

IN WITNESS WHEREOF, the undersigned have executed this Agreement as of the date first above written.

**"Creditors"**

**SIMKIN LIVING TRUST 5-1-2017**

By: _____
Name: _____
Title: _____


**RDG INC.**

By: _____
Name: _____
Title: _____


**BALDWIN FAMILY TRUST DATED 9-16-15**

By: _____
Name: Geoffrey W. Baldwin and Jessica G. Baldwin
Title: Trustees of the Baldwin Family Trust Dated September 16, 2015


**LEZACK LIVING TRUST**

By: _____
Name: _____
Title: _____


**SMOKEY INVESTMENTS LP**

By: _____
Name: _____
Title: _____


**IPVSS II LLC**

By: _____
Name: _____
Title: _____


**JORDAN SIMKIN**

By: _____
Name: _____
Title: _____


**GAYL SIMKIN**

By: _____
Name: _____
Title: _____


162305492 v3

IN WITNESS WHEREOF, the undersigned have executed this Agreement as of the date first above written.

**"Creditors"**

**SIMKIN LIVING TRUST 5-1-2017**

By:_____
Name:_____
Title:_____


**RDG INC.**

By:_____
Name:_____
Title:_____


**BALDWIN FAMILY TRUST DATED 9-16-15**

By:_____
Name:_____
Title:_____

**LEZACK LIVING TRUST**

By:_____
Name:___Adam Lezack_____
Title:____Trustee_____


**SMOKEY INVESTMENTS LP**

By:_____
Name:_____
Title:_____

**IPV SS II LLC**

By:_____
Name:_____
Title:_____

**JORDAN SIMKIN**

By:_____
Name:_____
Title:_____

**GAYL SIMKIN**

By:_____
Name:_____
Title:_____

162305492 v3

IN WITNESS WHEREOF, the undersigned have executed this Agreement as of the date first above written.

"Creditors"

**SIMKIN LIVING TRUST 5-1-2017**

By:_____
Name:_____
Title:_____

**RDG INC.**

By:_____
Name:_____
Title:_____

**BALDWIN FAMILY TRUST DATED 9-16-15**

By:_____
Name:_____
Title:_____

**LEZACK LIVING TRUST**

By:_____
Name:_____
Title:_____

**SMOKEY INVESTMENTS LP**

By:_____
Name: Sam Simkin
Title: President, Smokester Investments LLC, general partner

**IPV SS II LLC**

By:_____
Name:_____
Title:_____

**JORDAN SIMKIN**

By:_____
Name:_____
Title:_____

**GAYL SIMKIN**

By:_____
Name:_____
Title:_____

IN WITNESS WHEREOF, the undersigned have executed this Agreement as of the date first above written.

"Creditors"

**SIMKIN LIVING TRUST 5-1-2017**

By:_____
Name:_____
Title:_____

**RDG INC.**

By:_____
Name:_____
Title:_____

**BALDWIN FAMILY TRUST DATED 9-16-15**

By:_____
Name:_____
Title:_____

**LEZACK LIVING TRUST**

By:_____
Name:_____
Title:_____

**SMOKEY INVESTMENTS LP**

By:_____
Name:_____
Title:_____

**IPVSS II LLC**

By: *Brandon Bentley*
Name:_____Brandon Bentley_____
Title:_____COO_____

**JORDAN SIMKIN**

By:_____
Name:_____
Title:_____

**GAYL SIMKIN**

By:_____
Name:_____
Title:_____

IN WITNESS WHEREOF, the undersigned have executed this Agreement as of the date first above written.

**"Creditors"**

**SIMKIN LIVING TRUST 5-1-2017**

By:_____
Name:_____
Title:_____

**RDG INC.**

By:_____
Name:_____
Title:_____

**BALDWIN FAMILY TRUST DATED 9-16-15**

By:_____
Name:_____
Title:_____

**LEZACK LIVING TRUST**

By:_____
Name:_____
Title:_____

**SMOKEY INVESTMENTS LP**

By:_____
Name:_____
Title:_____

**IPV SS II LLC**

By:_____
Name:_____
Title:_____

**JORDAN SIMKIN**

By:_____
Name:_____ Jordan Simkin _____
Title:_____

**GAYL SIMKIN**

By:_____
Name:_____
Title:_____

IN WITNESS WHEREOF, the undersigned have executed this Agreement as of the date first above written.

"Creditors"

**SIMKIN LIVING TRUST 5-1-2017**

By:_____
Name:_____
Title:_____


**RDG INC.**

By:_____
Name:_____
Title:_____


**BALDWIN FAMILY TRUST DATED 9-16-15**

By:_____
Name:_____
Title:_____

**LEZACK LIVING TRUST**

By:_____
Name:_____
Title:_____


**SMOKEY INVESTMENTS LP**

By:_____
Name:_____
Title:_____

**IPV SS II LLC**

By:_____
Name:_____
Title:_____

**JORDAN SIMKIN**

By:_____
Name:_____
Title:_____

**GAYL SIMKIN**

By:_____*Gayl Simkin*_____
Name:___Gayl Simkin_____
Title:_____

**"Creditors"**

**NATHAN FIELDS**

By: _[signature]_
Name: _Nathan Fields_
Title: _individ_

**MURRAY SIMKIN**

By: _____
Name: _____
Title: _____

**VIVE VC FUND, L.P.**

By: _____
Name: _____
Title: _____

162305492 v3

**"Creditors"**

**NATHAN FIELDS**

By:_____

Name:_____

Title:_____

**MURRAY SIMKIN**

By:_____

Name:_____

Title:_____

**VIVE VC FUND, L.P.**

By:_____

Name:_____

Title:_____

162305492 v3

"Creditors"

**NATHAN FIELDS**

By:_____
Name:_____
Title:_____

**MURRAY SIMKIN**

By:_____
Name:_____
Title:_____

**VIVE VC FUND, L.P.**

By:_____
Name:_____
Title: Member VIVEcapital, LLC (GP)

"Bank"

**COMERICA BANK**

By: _(signature)_
Name: _Robert Hernandez (handwritten)_
Title: _SENIOR VICE PRESIDENT (handwritten)_

The undersigned approves of the terms of this Agreement.

**MUNCHERY INC.**

By:_____

Name: _____

Title:_____

162305492 v3

**"Bank"**

**COMERICA BANK**

By:_____

Name:_____

Title:_____


The undersigned approves of the terms of this Agreement.

**MUNCHERY INC.**

By:_____

Name: _____JAMES BEARIKER_____

Title:_____CEO._____

<u>SUBORDINATION AGREEMENT</u>

THIS SUBORDINATION AGREEMENT (this "<u>Agreement</u>") is entered into as of January 25, 2018, by and between TRIPLEPOINT VENTURE GROWTH BDC CORP., a Maryland corporation ("<u>TriplePoint</u>"), and the persons and entities as set forth on the signature pages below (collectively, the "<u>Subordinated Lender</u>").

## RECITALS

A.      Pursuant to the Plain English Growth Capital Loan and Security Agreement dated as of  June 30, 2016 (as the same may be amended, supplemented, restated, replaced, or modified from time to time, the "<u>TriplePoint Loan Agreement</u>"), TriplePoint has made growth capital loans to Munchery Inc. ("<u>Borrower</u>"), in an original principal amount of Three Million Dollars ($3,000,000) with additional options of up to Five Million Dollars ($5,000,000), subject to the terms of the TriplePoint Loan Agreement.

B.      Subordinated Lender is agreeing to make a subordinated secured loan to Borrower in the original principal amount of up to Two Million Five Hundred Thousand and 00/100 Dollars ($2,500,000.00), as evidenced by a Note Purchase Agreement dated as of January 25, 2018 and related convertible promissory notes (as the same may from time to time be amended, modified, supplemented, restated, replaced, or modified, collectively, the "<u>Subordinated Loan Agreement</u>"), among Borrower and Subordinated Lender.  Borrower's obligations to Subordinated Lender arising under the Subordinated Loan Agreement are secured by the personal property Collateral granted by Borrower to Subordinated Lender pursuant to the Subordinated Loan Documents (as defined in <u>Section 1</u>).

C.      Subordinated Lender and TriplePoint desire to set forth in this Agreement their respective rights, priorities and interests governing their respective relationships with Borrower and the Collateral (as defined in <u>Section 1</u>).

## AGREEMENT

NOW, THEREFORE, each of Subordinated Lender and TriplePoint hereby agrees as follows:

1.      As used herein, the following terms shall have the following meanings:

"<u>Bankruptcy Code</u>" means the federal bankruptcy law of the United States as from time to time in effect, currently as Title 11 of the United States Code.

"<u>Collateral</u>" means all of Borrower's now owned and hereafter acquired personal property.

"<u>Event of Default</u>" means an "Event of Default" as defined in either the TriplePoint Loan Agreement or the Subordinated Loan Agreement.

"<u>Insolvency Proceeding</u>" shall have the meaning ascribed to it in <u>Section 6</u> of this Agreement.

"<u>Loan Agreement</u>" means, as the context may require, singularly the Subordinated Loan Agreement or the TriplePoint Loan Agreement, and collectively the Subordinated Loan Agreement and the TriplePoint Loan Agreement.

"<u>Obligations</u>" means all present and future indebtedness of Borrower that may be incurred by Borrower from time to time, including, but not limited to, any negotiable instruments evidencing the same, all guaranties, debts, demands, monies, indebtedness, liabilities and obligations owed or to become owing, including principal, interest, premium (if any), fees, costs, expenses (including attorneys' fees), and other charges (including interest, premium, fees, costs, expenses, and other charges accruing after the filing of a petition by or against Borrower under the Bankruptcy Code or any similar federal or state statute, whether or not such interest, premium, fees, costs, expenses, and other charges are allowed), and all claims, rights, causes of action, judgments, decrees, remedies, or

30097/00600/FW/9934044.3

Case: 19-30232    Doc# 40-17    Filed: 03/08/19    Entered: 03/08/19 13:04:44    Page 19 of 25

other obligations of any kind whatsoever and howsoever arising, whether voluntary, involuntary, absolute, contingent, direct, indirect, or by operation of law.

"Senior Debt" means any and all Obligations at any time owing by Borrower to TriplePoint under the Senior Loan Documents.

"Senior Loan Documents" means the TriplePoint Loan Agreement and any other agreement, security agreement, document, promissory note, UCC financing statement, or instrument executed by Borrower in favor of TriplePoint pursuant to or in connection with the Senior Debt or the TriplePoint Loan Agreement, as the same may from time to time be amended, modified, supplemented, extended, renewed, restated or replaced.

"Subordinated Debt" means any and all Obligations at any time owing by Borrower to Subordinated Lender, including, without limitation, Obligations under the Subordinated Loan Documents.

"Subordinated Loan Documents" means the Subordinated Loan Agreement, and any other agreement, document, promissory note, UCC financing statement, or instrument executed by Borrower pursuant to or in connection with the Subordinated Debt, as the same may from time to time be amended, modified, supplemented, extended, renewed, restated or replaced. Any changes to the payment schedule or the maturity of any of the Subordinated Debt shall require the prior written approval from TriplePoint.

Other capitalized terms used herein and not otherwise defined herein shall have the meaning given such terms in the Uniform Commercial Code as in effect in the State of California, as in effect from time to time ("UCC").

2.     Subordinated Lender subordinates any security interest or lien that Subordinated Lender may have in any Collateral to the security interests and liens of TriplePoint.  Notwithstanding the respective dates of attachment or perfection of the security interest or lien of Subordinated Lender and the security interest or lien of TriplePoint, the security interest or lien of TriplePoint in the Collateral shall at all times be prior to the security interest or lien of Subordinated Lender.

3.     The Subordinated Debt is hereby subordinated and subject to any Senior Debt, so long as (a) any Senior Debt (other than inchoate indemnification or reimbursement obligations or other obligations which, by their terms, survive termination of the Loan Agreement) shall remain unpaid, in whole or in part, or (b) TriplePoint shall be committed or otherwise obligated to extend credit to Borrower.

4.     So long as any of the Senior Debt (other than inchoate indemnification or reimbursement obligations or other obligations which, by their terms, survive termination of the Loan Agreement) remains unpaid, in whole or in part, or so long as TriplePoint is committed or otherwise obligated to extend credit to Borrower, Subordinated Lender agrees that, Subordinated Lender shall not: (a) ask for, demand, accelerate the maturity of, collect, or receive payment upon, by setoff, recoupment, foreclosure, or in any other manner, all or any portion of the Subordinated Debt now or hereafter existing; (b) Reserved; (c) declare or in any other manner find or hold Borrower in default under the Subordinated Debt; (d) enforce or apply any security, now or hereafter existing, for the Subordinated Debt; (e) commence, prosecute or participate in any administrative, legal, or equitable action against Borrower concerning the Subordinated Debt; (f) directly or indirectly contest, or support any other person or entity in contesting, in any proceeding (including any Insolvency Proceeding) the priority, validity or enforceability of a Lien held by or on behalf of TriplePoint in the Collateral or the provisions of this Agreement; (g) except as provided for under Section 6, join in any petition for bankruptcy, assignment for the benefit of creditors, or creditors' agreement; or (h) incur any obligation to, or receive any loans, advances, dividends, payments of any kind or gifts from, Borrower.

5.     Nothing in this Agreement shall prohibit Subordinated Lender from converting all or any part of the Subordinated Debt into equity securities of Borrower.

6.     All of the Senior Debt (other than inchoate indemnification or reimbursement obligations or other obligations which, by their terms, survive termination of the Loan Agreement) shall be first paid by Borrower before any payment shall be made by Borrower with respect to the Subordinated Debt.  This priority of payment shall apply

30097/00600/FW/9934044.3

at all times until all of the Senior Debt (other than inchoate indemnification or reimbursement obligations or other obligations which, by their terms, survive termination of the Loan Agreement) has been finally repaid in full in cash. In the event of any assignment by Borrower for the benefit of Borrower's creditors, any proceedings instituted by or against Borrower under the Bankruptcy Code, the appointment of any receiver for Borrower or Borrower's business or assets, or any dissolution or other winding up of the affairs of Borrower or of Borrower's business, and in all such cases, the officers of Borrower and any assignee, trustee in bankruptcy, receiver or other person or persons in charge, respectively, are hereby directed to pay to TriplePoint the full amount of the Senior Debt (other than inchoate indemnification or reimbursement obligations or other obligations which, by their terms, survive termination of the Loan Agreement) before making any payments to Subordinated Lender with respect to the Subordinated Debt. Subordinated Lender shall have the right to file such proofs of claim and, subject to Section 4 of this Agreement, other documents as may be necessary or appropriate to establish and protect its claims in any liquidation, bankruptcy, receivership, assignment for the benefit of creditors, or any other judicial, equitable, or administrative action or proceeding commenced by or against Borrower or any of the assets or property of Borrower under the Bankruptcy Code or under any other federal or state law involving the adjustment or restructuring of any or all of its assets, obligations, business, or property (collectively, an "Insolvency Proceeding"), and to vote its interest in the Subordinated Debt for or against a plan of reorganization or other arrangement in such Insolvency Proceeding so long as (a) all Senior Debt has been finally paid in full in cash and all commitments to extend credit to Borrower under the Senior Loan Documents have terminated or (b) such plan is accepted by TriplePoint; provided, that (i) any such proof of claim shall confirm the existence of this Agreement and TriplePoint's right hereunder to receive any distribution to which Subordinated Lender is otherwise entitled on the Subordinated Debt, and (ii) if Subordinated Lender has not filed any such proof of claim prior to 30 days before the expiration of the time to file claims in such Insolvency Proceeding, then TriplePoint may file any such proof of claim on behalf of Subordinated Lender, and Subordinated Lender hereby irrevocably appoints TriplePoint as its attorney-in-fact for purposes of such filing. Subordinated Lender agrees not to object, contest or support any other person or entity objecting to or contesting, (i) any request by TriplePoint for adequate protection or any adequate protection provided to TriplePoint, (ii) any objection by TriplePoint to any motion, relief, action or proceeding based on a claim of a lack of adequate protection, or (iii) the payment of interest, fees, expenses or other amounts to TriplePoint under Sections 506(b) or 506(c) of the Bankruptcy Code or otherwise.

7.      Subordinated Lender agrees that if part or all of the Subordinated Debt is evidenced, now or in the future, by a promissory note or other instrument, Subordinated Lender shall place or cause to be placed on its face a legend that states that the payment thereof is subject to the terms of this Agreement and is subordinate to the full and final payment of all of the Senior Debt in cash. Subordinated Lender agrees (a) to execute any recordable subordination agreements, financing statement amendments or other documents reasonably required by TriplePoint to provide notice to others of this Agreement and (b) to the recording of any such documents as TriplePoint may require.

8.      Subordinated Lender agrees that TriplePoint shall have absolute power and discretion, without notice to Subordinated Lender, to deal in any manner with the Senior Debt, including interest, costs and expenses payable by Borrower to TriplePoint, and any security and guaranties therefor, including, but not limited to, release, surrender, extension, renewal, acceleration, compromise, or substitution. To the extent permitted by applicable law, Subordinated Lender hereby waives and agrees not to assert against TriplePoint any rights that a guarantor or surety could exercise (including any claim of subrogation with respect to TriplePoint and the Senior Debt), but nothing in this Agreement shall constitute Subordinated Lender a guarantor or surety. To the extent permitted by applicable law, Subordinated Lender hereby waives (a) the right, if any, to require that TriplePoint marshal, or otherwise proceed to dispose of or foreclose upon, Collateral in any manner or order and (b) the benefits, if any, of California Civil Code Sections 2809, 2810, 2819, 2845, 2847, 2848, 2849, 2850, 2899 and 3433.

9.      If, at any time hereafter, TriplePoint shall, in its own judgment, determine to discontinue the extensions of credit to or on behalf of Borrower, then TriplePoint may do so. This Agreement, the obligations of Subordinated Lender owing to TriplePoint and the rights and privileges of TriplePoint hereunder shall continue until the date upon which payment and performance of all Senior Debt (other than inchoate indemnification or reimbursement obligations or other obligations which, by their terms survive termination of the Loan Agreement), and any obligations of Subordinated Lender to TriplePoint under this Agreement, have been fully and finally satisfied in a manner acceptable to TriplePoint. All rights, powers and remedies hereunder shall apply to all past, present and future Senior Debt, including under successive transactions, any of which may continue, renew, increase, decrease or, from time to time, create new Senior Debt, and notwithstanding that from time to time Senior

30097/00600/FW/9934044.3

Debt theretofore existing may have been finally paid in full. The provisions of this Agreement shall continue to be effective or be reinstated, and the Senior Debt shall not be deemed to be finally paid in full, as the case may be, if at any time any payment of any of the Senior Debt is rescinded or must otherwise be returned by TriplePoint pursuant to an Insolvency Proceeding or otherwise, all as though such payment had not been made.

10.    If Subordinated Lender, contrary to this Agreement, takes, attempts to or threatens to take any action with respect to the Collateral, or fails to take any action required by this Agreement, then TriplePoint (in its own name or in the name of Borrower) or Borrower may obtain relief against Subordinated Lender by injunction, specific performance, and/or other appropriate equitable relief.

11.    Except as otherwise expressly agreed to in this Agreement, if Subordinated Lender shall receive any payments or other rights in any property of Borrower in violation of this Agreement, such payment or property shall be received by Subordinated Lender in trust for TriplePoint and shall be delivered promptly to TriplePoint in the form received (except for endorsement or assignment by Subordinated Lender where required by TriplePoint).

12.    Subordinated Lender represents and warrants that,Subordinated Lender has not, as of the date hereof, previously assigned, sold or transferred any interest in the Subordinated Loan Agreement or the other Subordinated Loan Documents and that no other party owns any interest in any of the Subordinated Debt (whether as joint holders, participants or otherwise), and that the entire Subordinated Debt is owing only to Subordinated Lender. Subordinated Lender agrees not to amend or otherwise modify the Subordinated Loan Agreement or any of the Subordinated Loan Documents without TriplePoint's prior written consent. Subordinated Lender further warrants having established with Borrower adequate means of obtaining, on an ongoing basis, such information as Subordinated Lender may require that may affect the ultimate satisfaction by Borrower of the Subordinated Debt. TriplePoint shall have no duty to provide any such information to Subordinated Lender.

13.    Until the Senior Debt (other than inchoate indemnification or reimbursement obligations or other obligations which, by their terms, survive termination of the Loan Agreement) has been finally paid in full in cash and all commitments to extend credit to Borrower under the Senior Loan Documents have terminated, Subordinated Lender shall not assign, sell or otherwise transfer all or any portion of the Subordinated Loan Documents without the sale, assignment or transfer thereof being conditioned on the transferee thereof agreeing to become a party to this Agreement and being bound by the provisions of this Agreement as "Subordinated Lender" hereunder. Subordinated Lender further agrees that if Borrower is in the process of refinancing a portion of the Senior Debt with a new lender, and if TriplePoint makes a request of Subordinated Lender, then Subordinated Lender shall agree to enter into a new subordination agreement with the new lender on substantially the terms and conditions of this Agreement.

14.    This Agreement, which the parties hereto expressly acknowledge is a "subordination agreement" under Section 510(a) of the Bankruptcy Code, shall remain in full force and effect during and after the commencement of an Insolvency Proceeding. This Agreement shall terminate and be of no further force and effect upon the earlier to occur of the following: (a) the Senior Debt (other than inchoate indemnification or reimbursement obligations or other obligations which, by their terms, survive termination of the Loan Agreement) have been fully and finally paid and satisfied in cash, or (b) TriplePoint has otherwise consented thereto in writing.

15.    This Agreement shall be binding upon the successors and assigns of Subordinated Lender, and shall inure to the benefit of TriplePoint's successors and assigns. This Agreement represents the entire agreement with respect to the subject matter hereof, and supersedes all prior negotiations, agreements and commitments.

16.    In the event of any dispute under this Agreement, the prevailing party shall be entitled to recover its reasonable attorneys' fees and costs whether or not suit is brought.

17.    Until the Senior Debt Until the Senior Debt (other than inchoate indemnification or reimbursement obligations or other obligations which, by their terms, survive termination of the Loan Agreement) is fully and finally paid in cash, Subordinated Lender hereby irrevocably constitutes and appoints TriplePoint and any officer or agent thereof, with full power of substitution, as its true and lawful attorney-in-fact with full irrevocable power and authority in the place and stead of Subordinated Lender and in the name of Subordinated Lender or in its own name, from time to time in TriplePoint's discretion, for the purpose of carrying out the terms of this Agreement, to take any and all appropriate action and to execute and deliver any and all documents and instruments that may be

30097/00600/FW/9934044.3

4

necessary or desirable to accomplish the purposes of this Agreement, including, without limitation, to collect and receive the proceeds of the Subordinated Debt, to vote (on behalf of Subordinated Lender) its interest in the Subordinated Debt for or against a plan of reorganization or other arrangement in such Insolvency Proceeding.

18.     This Agreement and all rights and liabilities to the parties hereto shall be governed as to validity, interpretation, enforcement and effect by the laws of the State of California.

19.     ALL CLAIMS, CAUSES OF ACTION OR OTHER DISPUTES CONCERNING THIS AGREEMENT AND ANY DOCUMENTS EXECUTED IN CONNECTION HEREWITH (COLLECTIVELY, "CLAIMS" AND INDIVIDUALLY, A "CLAIM"), INCLUDING ANY AND ALL QUESTIONS OF LAW OR FACT RELATING THERETO, SHALL, AT THE WRITTEN REQUEST OF ANY PARTY, BE DETERMINED BY JUDICIAL REFERENCE ("REFERENCE").  THE PARTIES SHALL SELECT A SINGLE NEUTRAL REFEREE, WHO SHALL BE A RETIRED STATE OR FEDERAL JUDGE WITH AT LEAST FIVE YEARS OF JUDICIAL EXPERIENCE IN CIVIL MATTERS.  IN THE EVENT THAT THE PARTIES CANNOT AGREE UPON A REFEREE, THE REFEREE SHALL BE APPOINTED BY THE COURT.  THE PARTIES SHALL EQUALLY BEAR THE FEES AND EXPENSES OF THE REFEREE UNLESS THE REFEREE OTHERWISE PROVIDES IN THE STATEMENT OF DECISION.  THE REFEREE SHALL DETERMINE ALL ISSUES RELATING TO THE APPLICABILITY, INTERPRETATION, LEGALITY AND ENFORCEABILITY OF THIS AGREEMENT.  THE PARTIES ACKNOWLEDGE THAT ONE CONSEQUENCE OF A REFERENCE IS THAT THE CLAIMS WILL NOT BE ADJUDICATED BY A JURY.

20.     All notices and other communications under this Agreement shall be in writing and shall be deemed to have been given three days after deposit in the mail, first class mail, postage prepaid, or one day after being entrusted to a reputable commercial overnight delivery service, or when sent out by facsimile transmission addressed to the party to which such notice is directed at its address set forth beneath its signature line hereto.  Any party to this Agreement may change the address to which notices shall be directed under this Section 21 by giving 10 days' written notice of such change to the other party.

[Remainder of Page Intentionally Left Blank]

Case: 19-30232     Doc# 40-17     Filed: 03/08/19     Entered: 03/08/19 13:04:44     Page 23 of 25

This Subordination Agreement has been duly executed by the undersigned as of the date first referenced above.

"Subordinated Lender"

VIVE VC FUND, L.P.

By: _____

Name: _Jack Helfand_____

Title: _Member  VIVE Capital, LLC_____

Notice Address:

Attention: _1111 Bayhill Dr., Suite 220, San Bruno, CA 94066_

Telephone No.: _____

~~Facsimile No.:~~ _650  918  0910_____

[SIGNATURE PAGE TO SUBORDINATION AGREEMENT]

This Subordination Agreement has been duly executed by the undersigned as of the date first referenced above.

"Subordinated Lender"

**SIMKIN LIVING TRUST 5-1-17**

By: _____

Name: ____Ryan Simkin_____

Title: ____Trustee_____

Notice Address: Rsimkin@fortisrep.com

Attention: ____Ryan Simkin_____
Telephone No.: ___858-775-6406_____
Facsimile No.: _____

[SIGNATURE PAGE TO SUBORDINATION AGREEMENT]