to time be amended, modified, supplemented or restated; <u>provided</u>, that the Loan Documents shall not include any of the Excluded Agreements.

**"Loan Term"** has the meaning set forth in the Table of Terms.

"Material Adverse Effect" means a material adverse effect on (i) the business, operations, properties, assets or financial condition of any of You or all of You as a whole, (ii) the ability of any of You to perform the Secured Obligations in accordance with the terms of the Loan Documents or Our ability to enforce any of Our rights and remedies with respect to the Secured Obligations in accordance with the terms of the Loan Documents, or (iii) the Collateral or Our Liens on the Collateral or the priority of such Liens.

"**Merger Event**" means (i) any reorganization, consolidation or merger (or similar transaction or series of transactions) by any of Your or any of Your subsidiaries, with or into any other Person; (ii) any transaction, including the sale or exchange of outstanding shares of Your capital stock, or the capital stock of any of Your Subsidiaries, in which the holders of such outstanding capital stock of the affected corporation immediately before consummation of such transaction or series of related transactions do not, immediately after consummation of such transaction or series of related transactions, retain capital stock representing at least 50.0% of the voting power of the surviving corporation of such transaction or series of related transactions (or the parent corporation of such surviving corporation if such surviving corporation is wholly owned by such parent corporation), in each case without regard to whether You or any of Your subsidiaries are the surviving corporation, or (iii) the sale, license or other disposition of all or substantially all of Your assets, or the assets of any of Your subsidiaries.

**"OFAC"** means the United States Department of the Treasury's Office of Foreign Assets Control.

**"Part 2 Milestone"** means since the Closing Date You have achieved a monthly annualized revenue run-rate of $75,000,000 or more on or before September 30, 2016.

**"Part 3 Milestone"** means since the Closing Date You have (a) executed a term sheet with investors in which You agree to sell and issue shares of Your preferred stock in a new round of equity financing and (b) achieved a monthly annualized revenue run-rate of $90,000,000 or more on or before December 31, 2016.

**"Parts"** has the meaning given to it in Section 3.

**"Patent License"** means any written agreement granting any right with respect to any invention on which a Patent is in existence or a Patent application is pending in which agreement You now hold or acquire any interest, whether as licensor or licensee.

**"Patents"** means all of the following now owned or acquired by any of You or in which any of You now hold or acquire any interest: (a) all patents, or rights corresponding thereto, issued or registered in the United States or any other county, (b) all applications for patents, or rights corresponding thereto in, the United States or any other country; (c) all reissues, reexaminations, continuations, divisions, continuations-in-part, or extensions of the foregoing patents and/or applications; (d) all patents to be issued under any of the foregoing applications; and (e) all foreign counterparts of the foregoing patents and/or applications.

**"Patriot Act"** means the USA PATRIOT Improvement and Reauthorization Act of 2005.

**"Permitted Indebtedness"** means (a) Indebtedness of any of You in favor of Us; (b) Indebtedness existing at the Closing Date and disclosed on <u>Schedule 1</u>; (c) Indebtedness incurred for the acquisition of services, supplies or inventory on normal trade credit in the ordinary course of business; (d) Indebtedness under the Working Capital Loan Facility so long as the aggregate outstanding amount thereof does not at any time exceed Eight Million Five Hundred Thousand Dollars ($8,500,000) and subject to the Subordination Agreement; (e) Indebtedness not to exceed Three Million Dollars ($3,000,000) in the aggregate incurred during the term hereof, secured by a Lien described in clause (vii) of the defined term "Permitted Liens"; provided that such Indebtedness does not exceed the purchase price of the specific Equipment financed with such Indebtedness; (f) Subordinated Indebtedness, (g) Indebtedness with respect to corporate credit cards whether secured by Cash or unsecured, provided that the portion of which that may be secured by Cash collateral may not exceed Five Hundred Thousand Dollars ($500,000) and in which We have a perfected subordinated Lien on such Cash collateral, (h) Indebtedness with respect to letters of credit up to One Million Dollars ($1,000,000) secured solely by Cash collateral in which We have a perfected subordinated Lien on such Cash collateral; and (i) extensions, refinancings, modifications, amendments and restatements of any item of Permitted Indebtedness (a) though (h) above, provided that the principal amount thereof is not increased.

**"Permitted Investment"** means (a) Investments that are in existence on the Closing Date and are approved in writing by Us; (b) Investments in domestic certificates of deposit issued by, and other domestic investments with, financial

Case: 19-30232   Doc# 43-10   Filed: 03/08/19   Entered: 03/08/19 14:40:45   Page 1 of 25

institutions organized under the laws of the United States or a state thereof, having at least One Hundred Million Dollars ($100,000,000) in capital and a rating of at least "investment grade" or "A" by Moody's or any successor rating agency; (c) Investments in marketable obligations of the United States of America and in open market commercial paper given the highest credit rating by a national credit agency and maturing not more than one year from the creation thereof; (d) so long as no Event of Default has occurred and is continuing, temporary advances to employees to cover incidental expenses to be incurred in the ordinary course of business, in an aggregate outstanding amount not to exceed $50,000 at any time; and (e) Investments (including debt obligations) received in connection with the bankruptcy or reorganization of customers or suppliers and in settlement of delinquent obligations of, and other disputes with, customers or suppliers arising in the ordinary course of business.

"**Permitted Liens**" means any and all of the following: (i) Liens in Our favor; (ii) Liens for taxes, fees, assessments or other governmental charges or levies, either not delinquent or being contested in good faith by appropriate proceedings, underlined provided that such Liens do not have priority over any of Our Liens and You maintain adequate reserves in accordance with GAAP; (iii) Liens securing claims or demands of materialmen, artisans, mechanics, carriers, warehousemen, landlords and other like Persons arising in the ordinary course of Your business and imposed without action of such parties, underlined provided that the payment thereof is not yet required and that such Liens do not have priority over any of Our Liens; (iv) Liens arising from judgments, decrees or attachments in circumstances which do not constitute an Event of Default hereunder; (v) the following deposits, to the extent made in the ordinary course of Your business:  deposits under worker's compensation, unemployment insurance, social security and other similar laws, or to secure the performance of bids, tenders or contracts (other than for the repayment of borrowed money) or to secure indemnity, performance or other similar bonds for the performance of bids, tenders or contracts (other than for the repayment of borrowed money) or to secure statutory obligations (other than Liens arising under ERISA or environmental Liens) or surety or appeal bonds, or to secure indemnity, performance or other similar bonds; (vi) Liens on insurance proceeds in favor of insurance companies granted solely as security for financed premiums; (vii) purchase money Liens (including capital leases) securing Indebtedness not to exceed Three Million Dollars ($3,000,000) (A) on Equipment acquired or held by any of You, incurred for financing the acquisition of that Equipment, or (B) existing on Equipment when acquired by You, so long as, in each case, the Lien is confined to the specific Equipment and the proceeds of the Equipment; (viii) Liens in favor of the Working Capital Lender arising under the Working Capital Loan Facility; (ix) Liens in favor of customs and revenue authorities arising as a matter of law to secure payments of custom duties in connection with the importation of goods; (x) Liens in favor of financial institutions arising in connection with deposit or securities accounts held at such financial institutions, provided that such Liens only secure fees and service charges and customary chargebacks or reversals of credits associated with such accounts; (xi) Liens existing on the Closing Date and disclosed on Schedule 1; (xii) Liens securing Indebtedness of the types described in clause (g) of the definition of Permitted Indebtedness so long as the Liens are limited to Cash collateral, not to exceed Five Hundred Thousand Dollars ($500,000); (xiii) Liens securing Indebtedness of the types described in clause (h) of the definition of Permitted Indebtedness so long as the Liens are limited to Cash collateral, not to exceed One Million Dollars ($1,000,000) and (xii) Liens incurred in connection with the extension, renewal or refinancing of the Indebtedness secured by Liens of the type described in clauses (i), (vi), (vii) and (viii) above, provided that any extension, renewal or replacement Lien shall be limited to the property encumbered by the existing Lien and the principal amount of the Indebtedness being extended, renewed or refinanced (as may have been reduced by any payment thereon) does not increase.

"**Person**" means any individual, sole proprietorship, partnership, joint venture, trust, unincorporated organization, association, corporation, limited liability company, institution, public benefit corporation, other entity or government (whether federal, state, county, city, municipal, local, foreign, or otherwise, including any instrumentality, division, agency, body or department thereof).

"**Prepayment Fee**" has the meaning given to it in Section 9.

"**Proceeds**" means "proceeds," as such term is defined in the UCC and, in any event, shall include, without limitation, (a) any and all Accounts, Chattel Paper, Instruments, Cash or other proceeds payable to any of You from time to time in respect of the Collateral, (b) any and all proceeds of any insurance, indemnity, warranty or guaranty payable to any of You from time to time with respect to any of the Collateral, (c) any and all payments (in any form whatsoever) made or due and payable to any of You from time to time in connection with any requisition, confiscation, condemnation, seizure or forfeiture of all or any part of the Collateral by any governmental authority (or any Person acting under color of governmental authority), (d) the proceeds, damages, or recovery based on any claim of any of You against third parties (i) for past, present or future infringement of any Copyright, Copyright License, Patent or Patent License, or (ii) for past, present or future infringement or dilution of any Trademark or Trademark License or for injury to the goodwill associated with any Trademark, Trademark registration or Trademark licensed under any

Case: 19-30232    Doc# 43-10    Filed: 03/08/19    Entered: 03/08/19 14:40:45    Page 2
of 25

Trademark License; and (e) any and all other amounts from time to time paid or payable under or in connection with any of the Collateral.

"**Promissory Note**" has the meaning given to it in Section 2.

"**PT**" means Pacific Time.

"**Receivables**" means (i) all of any of the Accounts, Instruments, Documents, Cash, Chattel Paper, Supporting Obligations, letters of credit, proceeds of a letter of credit, and Letter of Credit Rights of any of You, and (ii) all customer lists, software, and related business records.

"**Secured Obligations**" means Your joint and several obligations to repay to Us all Advances made to You (whether or not evidenced by any Promissory Note), together with all principal, interest, fees, costs, reimbursements of Our professional fees and expenses as provided in this Agreement, and other liabilities or obligations for monetary amounts owed by any of You to Us, including the indemnity and insurance obligations in Sections 10, 13 and 20 hereof that are outstanding and unpaid (but excluding any inchoate indemnity obligations and any other obligations which by their terms survive termination of this Agreement) and including such amounts as may accrue or be incurred before or after default or workout or the commencement of any liquidation, dissolution, bankruptcy, receivership or reorganization by or against any of You, whether due or to become due, matured or unmatured, liquidated or unliquidated, contingent or non-contingent, and all covenants and duties of any kind or nature, present or future, arising under this Agreement, the Promissory Notes, or any of the other Loan Documents, as the same may from time to time be amended, modified, supplemented or restated, whether or not such obligations are partially or fully secured by the value of Collateral; provided, that the Secured Obligations shall not include any of the Indebtedness or obligations of any of You arising under or in connection with the Excluded Agreements.

"**Solvent**" means, with respect to any Person on a particular date, that on such date (a) the fair value of the property of such Person is greater than the total amount of liabilities, including contingent liabilities, of such Person; (b) the present fair salable value of the assets of such Person is not less than the amount that will be required to pay the probable liability of such Person on its debts as they become absolute and matured; (c) such Person does not intend to, and does not believe that it will, incur debts or liabilities beyond such Person's ability to pay as such debts and liabilities mature; and (d) such Person is not engaged in a business or transaction, and is not about to engage in a business or transaction, for which such Person's property would constitute an unreasonably small capital. The amount of contingent liabilities (such as litigation, guaranties and pension plan liabilities) at any time shall be computed as the amount that, in light of all the facts and circumstances existing at the time, represents the amount that can be reasonably be expected to become an actual or matured liability.

"**Subordinated Indebtedness**" means Indebtedness (i) approved by Us and (ii) subordinated to the Secured Obligations on terms and conditions acceptable to Us, including without limiting the generality of the foregoing, subordination of such Indebtedness in right of payment to the prior payment in full of the Secured Obligations, the subordination of the priority of any Lien at any time securing such Indebtedness to Our Liens in Your assets and properties, and the subordination of the rights of the holder of such Indebtedness to enforce its junior Lien following an Event of Default hereunder pursuant to a written subordination agreement approved by Us.

"**Subordination Agreement**" means that certain Subordination Agreement dated as of June 30, 2016 by and between Us and Working Capital Lender.

"**Subsidiary**" means, with respect to any Person, any Person of which more than 50% of the voting stock or other equity interests is owned or controlled, directly or indirectly, by such Person or one or more Affiliates of such Person.

"**Supporting Obligations**" means any "supporting obligations," as such term is defined in the UCC, now owned or acquired by any of You or in which any of You now hold or hereafter acquire any interest.

"**Table of Terms**" means the table of terms on Page 1 and 2 of this Agreement.

"**Trademark License**" means any written agreement granting any right to use any Trademark or Trademark registration in which agreement You now hold or hereafter acquire any interest, whether as licensor or licensee.

"**Trademarks**" means all of the following property now owned or hereafter acquired by any of You or in which any of You now hold or hereafter acquire any interest: (a) all trademarks, trade names, corporate names, business names, trade styles, service marks, logos, other source or business identifiers, prints and labels on which any of the foregoing have appeared or appear, designs and general intangibles of like nature, now existing or hereafter adopted or acquired, all registrations and recordings thereof, and any applications in connection therewith, including, without limitation, registrations, recordings and applications in the United States Patent and Trademark Office or in any similar office or

Case: 19-30232    Doc# 43-10    Filed: 03/08/19    Entered: 03/08/19 14:40:45    Page 3 of 25

agency of the United States, any State thereof or any other country or any political subdivision thereof and (b) reissues, extensions or renewals thereof.

"**Trading with the Enemy Act**" means the Trading with the Enemy Act of the United States of America (50 U.S.C. App. §§ 1 et seq.).

"**UCC**" means the Uniform Commercial Code as the same is, from time to time, in effect in the State of California; provided, that in the event that, by reason of mandatory provisions of law, any or all of the attachment, perfection or priority of, or remedies with respect to, Secured Party's Lien on any Collateral is governed by the Uniform Commercial Code as the same is, from time to time, in effect in a jurisdiction other than the State of California, the term "UCC" shall mean the Uniform Commercial Code as in effect, from time to time, in such other jurisdiction solely for purposes of the provisions thereof relating to such attachment, perfection, priority or remedies and for purposes of definitions related to such provisions. Unless otherwise defined herein or in the other Loan Documents terms that are defined in the UCC and used herein or in the other Loan Documents shall have the meanings given to them in the UCC.

"**Upon Request and Additional Approval**" has the meaning given to it in Section 3.

"**Warrant Agreement**" means the Warrant Agreement dated the date hereof between the Parties issued in connection with this Agreement and any other warrant agreement between the Parties issued in connection with this Agreement.

"**Working Capital Lender**" means Comerica Bank.

"**Working Capital Loan Facility**" means that certain revolving Loan and Security Agreement by and between You and Comerica Bank dated as of December 18, 2014, as amended, in which Comerica Bank makes advances to You based upon the value of Your Accounts.

Unless otherwise specified, all references in this Agreement or any Annex or Schedule hereto to a "Section," "subsection," "Exhibit," "Annex," or "Schedule" shall refer to the corresponding Section, subsection, Exhibit, Annex, or Schedule in or to this Agreement. The terms "herein," "hereof" and "hereunder" and other words of similar import refer to this Agreement as a whole, including all Exhibits, Annexes and Schedules, and not to any particular Section, subsection or other subdivision.

Wherever from the context it appears appropriate, each term stated in either the singular or plural shall include the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine and neuter genders. The words "including," "includes" and "include" shall be deemed to be followed by the words "without limitation," the word "or" is not exclusive; references to Persons include their respective successors and assigns (to the extent and only to the extent permitted by this Agreement and the Loan Documents) or, in the case of governmental Persons, Persons succeeding to the relevant functions of such Persons; and all references to statutes and related regulations shall include any amendments of the same and any successor statutes and regulations. Unless otherwise specifically provided herein, any accounting term used in this Agreement or the other Loan Documents shall have the meaning customarily given such term in accordance with GAAP, and all financial computations hereunder shall be computed in accordance with GAAP, consistently applied.

*(Signatures to Follow)*

Case: 19-30232    Doc# 43-10    Filed: 03/08/19    Entered: 03/08/19 14:40:45    Page 4 of 25

IN WITNESS WHEREOF, the Parties have executed and delivered this Agreement as of the day and year first above written.

**BORROWER:**

You:      MUNCHERY INC.

Signature:

Print Name:    Nathaniel Faggioli

Title:      CFO & COO

<u>Accepted in Menlo Park, California</u>:

**LENDER:**
**CORP.**

Us:      **TRIPLEPOINT VENTURE GROWTH BDC**

Signature: _____

Print Name: _____

Title: _____

[SIGNATURE PAGE TO PLAIN ENGLISH GROWTH CAPITAL LOAN AND SECURITY AGREEMENT]

Munchery_0953-GC

IN WITNESS WHEREOF, the Parties have executed and delivered this Agreement as of the day and year first above written.

**BORROWER:**                          **You:**          MUNCHERY INC.

                                        Signature:       _____

                                        Print Name:      _____

                                        Title:           _____

Accepted in Menlo Park, California:

**LENDER:**                             **Us:**          TRIPLEPOINT   VENTURE   GROWTH   BDC
**CORP.**

                                        Signature:       _____

                                        Print Name:      _Sajal Srivastava_____

                                        Title:           _President_____

[SIGNATURE PAGE TO PLAIN ENGLISH GROWTH CAPITAL LOAN AND SECURITY AGREEMENT]

Munchery_0953-GC

Table of Exhibits and Schedules

| | |
|---|---|
| Exhibit A | Promissory Note |
| Exhibit B | Advance Request |
| Exhibit C | Certificate of Perfection |
| Exhibit D | Certificate of Compliance |
| Exhibit E | Form of Joinder Agreement |
| Schedule 1 | Indebtedness and Liens |
| Schedule 2 | Schedule of Documents |

Munchery_0953-GC

30



## FORM OF PLAIN ENGLISH GROWTH CAPITAL PROMISSORY NOTE

This is a Plain English Growth Capital Promissory Note dated _____, 20__ by and between TRIPLEPOINT VENTURE GROWTH BDC CORP., as lender, and MUNCHER INC., as borrower, and any other Person that executes a Joinder Agreement to become a borrower under the Loan Agreement, as borrowers (the "Promissory Note"). The words "We", "Us", and "Our", refer to TRIPLEPOINT VENTURE GROWTH BDC CORP.. Unless otherwise specified, the words "You" and "Your" refer to MUNCHERY INC. and any other Person that executes a Joinder Agreement to become a borrower under the Loan Agreement, and not any individual, and MUNCHERY INC. and any other Person that executes a Joinder Agreement to become a borrower under the Loan Agreement, shall be jointly and severally liable for any and all of Your agreements and obligations under this Promissory Note. The words "Parties" refers to each of and all of TRIPLEPOINT VENTURE GROWTH BDC CORP., MUNCHERY INC. and any other Person that executes a Joinder Agreement to become a borrower under the Loan Agreement.

This Promissory Note is the Promissory Note referred to in, and is executed and delivered in connection with, the Plain English Growth Capital Loan and Security Agreement dated as of June 30, 2016 by and between the Parties, as the same may from time to time be amended, modified or supplemented in accordance with its terms (the "Loan Agreement"), and is entitled to the benefit and security of that Loan Agreement and the other documents executed in connection with all principal, interest, fees or other liabilities owed by You under the Loan Agreement and other Loan Documents (as defined in the Loan Agreement). All terms defined in the Loan Agreement shall have the same definitions when used herein, unless otherwise defined herein.

| PROMISSORY NOTE INFORMATION | | | |
|---|---|---|---|
| **Facility Name**<br>Growth Capital Loan Facility | **Facility Number**<br>0953-GC-0_ | **Promissory Note Number**<br>0953-GC-0_-0_ | **Principal Amount**<br>$_____ |
| **Payment Amount**<br>[Months 1-XX: $_____]<br><br>[Months 1-XX: interest only;<br><br>Months XX-XX: $_____] | **Loan Term**<br>__ months | **Interest Rate**<br>[Prime Rate plus ___%, however, in no event shall the Prime Rate be less than 3.25%] | **End of Term Payment**<br>$[___%] |
| **Interim Payment**<br>$_____ | **Funding Date**<br>_____, 20__ | **First Payment Date**<br>_____, 20__ | **Maturity Date**<br>_____, 20__ |

Case: 19-30232    Doc# 43-10    Filed: 03/08/19    Entered: 03/08/19 14:40:45    Page 8 of 25

| CONTACT INFORMATION | | |
|---|---|---|
| <u>Name</u><br><br>TriplePoint Venture Growth BDC Corp. | <u>Address For Notices</u><br>2755 Sand Hill Rd., Ste. 150<br>Menlo Park, CA 94025<br>Tel: (650) 854-2090<br>Fax: (650) 854-1850 | <u>Contact Person</u><br>Sajal Srivastava, President<br>Tel: (650) 233-2102<br>Fax: (650) 854-1850<br>email: legal@triplepointcapital.com |
| <u>Customer Name</u><br><br>Munchery Inc. | <u>Central Billing Address</u><br>375 Alabama Road, Suite 300<br>San Francisco, CA 94110 | <u>Contact Person</u><br>Nathaniel Faggioli, VP Finance<br>Tel: (415) 298-5698<br>Fax: (415) 484-7740<br>email: Nathaniel@munchery.com |

**FOR VALUE RECEIVED**, Each of You, jointly and severally, hereby promise to pay to the order of TRIPLEPOINT VENTURE GROWTH BDC CORP. or the holder of this Promissory Note at 2755 Sand Hill Road, Ste. 150, Menlo Park, CA, 94025 or such other place of payment as the holder of this Promissory Note may specify from time to time in writing, in lawful money of the United States of America, the principal amount of _____/100 Dollars ($_____) together with interest at ___ percent (___%) per annum, subject to adjustment as set forth above and in the Loan Agreement, from the date of this Promissory Note to maturity of each installment on the principal remaining unpaid, such principal and interest to be paid as stated on Page 1 of this Promissory Note and as set forth in the Loan Agreement. In addition to Your final payment, You will pay Us an amount equal to _____ percent (___%) of the principal amount of this Promissory Note. Interest shall be computed daily on the basis of a year consisting of 360 days for the actual number of days occurring in the period for which such interest is payable. Any payments made under this Promissory Note shall not be available for re-borrowing.

The aggregate outstanding principal balance of this Promissory Note shall be due and payable in full in immediately available funds on the Maturity Date, if not sooner paid in full.

You waive presentment and demand for payment, notice of dishonor, protest and notice of protest under the UCC or any applicable law.

You will not, directly or indirectly, use the proceeds of any Advance(s) under this Promissory Note, or lend, contribute or otherwise make available such proceeds to any Subsidiary, Affiliate, joint venture partner or other Person, to fund any activities or business of or with any Person, or in any country or territory, that, at the time of such funding, is the subject of any sanctions administered by OFAC, or in any other manner that would result in a violation of OFAC sanctions by any Person, including any Person participating in any capacity in any Advance(s) under this Promissory Note.

This Promissory Note has been negotiated and delivered to Us and is payable in the State of California. This Promissory Note shall be governed by and construed and enforced in accordance with, the laws of the State of California, excluding any conflicts of law rules or principles that would cause the application of the laws of any other jurisdiction.

**BORROWERS**

YOU:      **MUNCHERY INC.**

Signature:     _____

Print Name:   _____

Title:        _____

Case: 19-30232    Doc# 43-10    Filed: 03/08/19    Entered: 03/08/19 14:40:45    Page 9 of 25

## ADVANCE REQUEST

**To:**    TRIPLEPOINT VENTURE GROWTH BDC CORP.    **Date:**  _____
2755 Sand Hill Road Ste 150
Menlo Park, CA 94025
Attention: Customer Administrations
Fax (650) 854-1850

MUNCHER INC. ("We" or "Us"), hereby request from TRIPLEPOINT VENTURE GROWTH BDC CORP. ("You") an Advance in the amount of $_____) on _____, _____ (at least five (5) Business Days from today) pursuant to the Plain English Growth Capital Loan and Security Agreement between the Parties (the "Loan Agreement").

**We elect the following Option**: _____ *[enter letter of Advance Option from Table of Terms]*

**We instruct You to please:**

    (a)    Issue a check payable to Us    _____

        or

    (b)    Transfer Funds to our account    _____

            Bank:
            Address:
            ABA Number:
            Account Number:
            Account Name:

We represent, warrant and certify that:

⇒  No event or circumstance has occurred or exists which individually or together with any other event or circumstance, has had or could reasonably be expected to have a Material Adverse Effect;

⇒  The representations and warranties set forth in the Loan Agreement and in the associated Plain English Warrant Agreement are and shall be true, complete and correct in all material respects on and as of the date the requested Advance is funded with the same effect as though made on and as of such date, except to the extent such representations and warranties expressly relate to an earlier date (in which case, those representations and warranties remain true, complete and correct in all material respects as of such date), provided, however, that such materiality qualifiers shall not be applicable to any representations and warranties that already are qualified or modified by materiality in the text thereof;

⇒  We are in compliance with all covenants set forth in Section 12 of the Loan Agreement.

⇒  We are in compliance with all the terms and provisions set forth in any document related to this Advance (including, without limitation, Sections 4 and 5 of the Loan Agreement);

⇒  As of the date hereof and the date of the funding of the requested Advance, no fact or condition exists that would (or would, with the passage of time, the giving of notice, or both, would) constitute an Event of Default under the Loan Agreement;

⇒  We understand and acknowledge that You have the right to review the financial information supporting this representation and based upon such review in Your sole discretion You may decline to fund the requested Advance; and

Case: 19-30232    Doc# 43-10    Filed: 03/08/19    Entered: 03/08/19 14:40:45    Page 10 of 25

$\Rightarrow$ The Certificate of Perfection executed on _____, 20__, is true and correct as of the date of this Advance Request. [Attach an updated Certificate of Perfection as needed and insert the date that the Certificate of Perfection was executed on].

Executed this _____ day of _____, _____ by:

| | |
|---|---|
| **YOU:** | **MUNCHERY INC.** |
| Signature: | _____ |
| Print Name: | _____ |
| Title: | _____ |

**[SIGNATURE PAGE TO ADVANCE REQUEST]**

EXHIBIT C

### CERTIFICATE OF PERFECTION

This Certificate of Perfection shall reference that certain Plain English Growth Capital Loan and Security Agreement dated as of _____, 20__, by and between TRIPLEPOINT VENTURE GROWTH BDC CORP., MUNCHERY INC. and any other Person that executes a Joinder Agreement to become a borrower thereunder (the "Loan Agreement"). All terms not defined in this Certificate of Perfection shall have the same meanings as in the Loan Agreement. Pursuant to the terms of the Loan Agreement, each of MUNCHERY INC. and any other Person that executes a Joinder Agreement to become a borrower under the Loan Agreement hereby certifies, represents and warrants the following as of the date set forth below the signature to this Certificate of Perfection:

**1.**     Our current names and organizational status are as follows:

Name:          _____

Type of Organization:     _____

State of Organization:     _____

Organization File Number:     _____

Federal Employer Tax
Identification Number:     _____

Name:          _____

Type of Organization:     _____

State of Organization:     _____

Organization File Number:     _____

Federal Employer Tax
Identification Number:     _____

**2.**     Five (5) years prior to the date of this Certificate of Perfection, We did not do business under any other name or organization or form except the following:

Name:          _____

Type of Organization:     _____

State of Organization:     _____

Organization File Number:     _____

Federal Employer Tax
Identification Number:     _____

Dates of Existence:     _____

**3.**     Our fiscal year ends on _____.

Case: 19-30232     Doc# 43-10     Filed: 03/08/19     Entered: 03/08/19 14:40:45     Page 12 of 25

4.      Our current locations and the locations of all the Collateral are:

Chief Executive Office:

Principal Place of Business:

Locations of Collateral:

5.      The following is a list of any and all of Our Affiliates and subsidiaries:

Name:

Type of Organization:

State of Organization:

Organization File Number:

Federal Employer Tax
Identification Number:

Your Ownership Interest:

6.      We currently maintain Deposit Accounts, other accounts holding Investment Property owned by Us, and electronic accounts (such as PayPal or similar accounts) as follows:

| Bank Name/Address | Account Holder Name | Account (Type & Number) |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |

7.      We currently have the following commercial tort claims: _____.

8.      Attached is a current listing of all Patents, Patent Applications, Patent Licenses, Trademarks, Trademark Applications, Trademark Licenses, Copyright Registrations, Copyright Applications for Registration and Copyright Licenses of any of Us.

*(Signature Page to Follow)*

Case: 19-30232   Doc# 43-10   Filed: 03/08/19   Entered: 03/08/19 14:40:45   Page 13 of 25

**MUNCHERY INC.**

Signature: _____

Print Name: _____

Title: _____

Date: _____

[SIGNATURE PAGE TO CERTIFICATE OF PERFECTION]

Case: 19-30232    Doc# 43-10    Filed: 03/08/19    Entered: 03/08/19 14:40:45    Page 14 of 25

### CERTIFICATE OF COMPLIANCE

This Certificate of Compliance shall reference that certain Plain English Growth Capital Loan and Security Agreement dated as of June 30, 2016 by and between TRIPLEPOINT VENTURE GROWTH BDC CORP., MUNCHERY INC. and any other Person that executes a Joinder Agreement to become a borrower thereunder (the "Loan Agreement"). All terms not defined in this Certificate of Compliance shall have the same meanings as in the Loan Agreement. Pursuant to the terms of the Loan Agreement, each of MUNCHERY INC. and any other Person that executes a Joinder Agreement to become a borrower under the Loan Agreement hereby certifies, the following as of the date set forth below the signature to this Certificate of Compliance:

⇒  Each of Us is in compliance as of the date of this Certificate of Compliance with all required covenants unless otherwise noted and attached to this Certificate of Compliance.

⇒  Except as noted an attached disclosure schedule, as of the date of this Certificate of Compliance all representations and warranties in the Loan Agreement are true and correct in all material respects except to the extent such representations and warranties expressly relate to an earlier date (in which case, those representations and warranties remain true as of such date).

Disclosure schedule with respect to the representations and warranties in the Loan Agreement:

_____  None

_____  See attached

⇒  Except as noted in an attached updated Certificate of Perfection, the Certificate of Perfection executed on _____, 20__, is true and correct as of the date of this Certificate of Compliance.

Updated Certificate of Perfection:

_____  None

_____  See attached

**MUNCHERY INC.**

Signature:      _____

Print Name:    _____

Title:            _____

Date:            _____

Case: 19-30232    Doc# 43-10    Filed: 03/08/19    Entered: 03/08/19 14:40:45    Page 15 of 25

## FORM OF JOINDER AGREEMENT

Case: 19-30232    Doc# 43-10    Filed: 03/08/19    Entered: 03/08/19 14:40:45    Page 16 of 25

<u>JOINDER AGREEMENT</u>

THIS JOINDER AGREEMENT (the "<u>Agreement</u>") is made and entered into as of _____, 20__, by _____ ("<u>Company</u>") in favor of TRIPLEPOINT VENTURE GROWTH BDC CORP., a Maryland corporation (the "<u>Lender</u>").

## RECITALS

A.        MUNCHERY INC., a Delaware corporation (collectively, the "Borrowers") and Lender have entered into that certain Plain English Growth Capital Loan and Security Agreement dated as of June 30, 2016 (including all annexes, exhibits and schedules thereto, and as the same may be amended, restated, supplemented or otherwise modified from time to time, the "<u>Loan Agreement</u>"), pursuant to which Lender is providing loans and other financial accommodations to or for the benefit of the Borrowers upon the terms and conditions contained therein. Capitalized terms used herein without definitions shall have the respective meanings provided in the Loan Agreement.

B.        The Loan Agreement requires that upon execution and delivery by Company of this Agreement, Company will become a party to the Loan Agreement as a borrower, will become jointly and severally liable for payment of all Secured Obligations under the Loan Agreement and will grant to Lender a Lien in all of Company's personal property.

C.        Company has agreed to execute and deliver this Agreement in order to become a party to the Loan Agreement and the other Loan Documents.

NOW, THEREFORE, in consideration of the premises and of the covenants contained herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

## AGREEMENT

1.        <u>Loan Agreement</u>.   By executing and delivering this Agreement to Lender, Company hereby becomes a party to the Loan Agreement as a borrower thereunder with the same force and effect as if originally named therein as a borrower and, without limiting the generality of the foregoing, hereby expressly assumes all obligations and liabilities of a borrower thereunder. Company hereby agrees to be bound by all of the terms and provisions of the Loan Agreement and the other Loan Documents, which are incorporated herein by reference as fully as though set forth herein verbatim. Each reference to "You" or borrower in the Loan Agreement and in any other Loan Document shall be deemed to include Company. Company agrees to be jointly and severally liable with the other borrowers under the Loan Agreement for payment of all Secured Obligations thereunder and hereby grants and joins in the grant of a Lien pursuant to **Section 8** of the Loan Agreement and the cross-guaranty pursuant to **Section 17** of the Loan Agreement.

2.        <u>Representations and Warranties</u>.  Company hereby represents and warrants to Lender that each of the representations and warranties contained in **Section 11** of the Loan Agreement is true and correct as of the date hereof and after giving effect to this Agreement.

3.        <u>Conditions to Advances to Company</u>.  Company hereby acknowledges that Lender's obligation to fund any Advance to Company under the Loan Agreement and this Agreement is subject to delivery of all of the following fully-executed documents to Lender:

(a)        this Agreement;

(b)        the executed Certificate of Perfection of Company, attached as <u>Exhibit C</u> to the Loan Agreement;

(d)      secretary's certificate of incumbency and authority for Company;

(e)      certified copy of resolutions of Company's board of directors or similar governing body approving this Agreement, the Loan Agreement and the other Loan Documents;

(f)      certified copy of [Certificate of Incorporation] and [By-Laws] for Company, as amended through the date hereof;

(g)      a certificate of good standing from the [State of _____], and similar certificates from all other jurisdictions where Company does business and where the failure to be qualified could reasonably be expected to have a Material Adverse Effect; and

(h)      the other documents, certificates and other information required under **Section 5** of the Loan Agreement.

4.      <u>Recitals</u>.  The recitals to this Agreement shall constitute a part of the agreement of the parties hereto.

5.      <u>Governing Law</u>.  This Agreement has been made, executed and delivered in the State of California and will be governed and construed for all purposes in accordance with the laws of the State of California, excluding conflict of laws principles that would cause the application of laws of any other jurisdiction.

6.      <u>Signatures</u>.  This Agreement may be executed in any number of counterparts, each of which will be deemed an original, but all such counterparts together constitute one and the same instrument.  This Agreement may be executed and delivered by facsimile or transmitted electronically in either Tagged Image Format Files ("<u>TIFF</u>") or Portable Document Format ("<u>PDF</u>") and, upon such delivery, the facsimile, TIFF or PDF signature, as applicable, will be deemed to have the same effect as if the original signature had been delivered to the other party.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

2

IN WITNESS WHEREOF, the undersigned has caused this Agreement to be executed and delivered as of the date first above written.

[COMPANY]

By: _____
Name:_____
Title:_____

ACCEPTED BY:

TRIPLEPOINT VENTURE GROWTH BDC CORP.

By: _____
Name: _____
Title: _____

MUNCHERY INC.

By: _____
Name: _____
Title: _____

3

**INDEBTEDNESS AND LIENS**

| Creditor | Type of Credit Facility | Security Interest/Lien Granted | Outstanding Amount |
|---|---|---|---|
| None | | | |
| | | | |
| | | | |

## SCHEDULE 2

**(SCHEDULE OF DOCUMENTS)**

Case: 19-30232    Doc# 43-10    Filed: 03/08/19    Entered: 03/08/19 14:40:45    Page 21 of 25

| LENDER | TRIPLEPOINT VENTURE GROWTH BDC CORP. |
|---|---|
| LENDER'S COUNSEL ("LC") | KEVIN THORNE |
| BORROWER | MUNCHERY INC. |
| BORROWER'S COUNSEL ("BC") | RYAN HAYES, FENWICK & WEST |
| ITEMS COMPLETED | "XX" |

Capitalized Terms used herein and otherwise not defined have the meanings ascribed to them in the Loan and Security Agreement.

Items in bold indicate items to be prepared or obtained by the Borrower or the Borrower's counsel.

| Item | | | Resp. Party | Status |
|---|---|---|---|---|
| I. | | PRINCIPAL LOAN DOCUMENTS | | |
| | 1. | Growth Capital Loan and Security Agreement, executed by Borrower and Lender, together with: | LC/BC | XX |
| | 1.1 | Disclosure Schedules | BC | XX |
| | 1.2 | Exhibits | LC/BC | XX |
| | 2. | Warrant Agreement,0953-W-01 executed by Borrower and Lender | LC/BC | X |
| | 3. | Subordination Agreement between Lender and Comerica acknowledged by Borrower | LC/BC | Final |
| II. | | SECURITY DOCUMENTS | | |
| | 4. | Certificates of Perfection executed by Borrower | BC | XX |
| | 5. | Intellectual Property Security Agreement, together with **Schedules** for: Borrower | LC/BC | XXX |
| | 6. | Deposit Account Control Agreements executed by Borrower, Lender and Bank: | | |
| | 6.1 | Comerica, -4676; -4668 | LC/BC | Comerica: In process BofA: Accounts to be closed or ACA provided within 45 days of Closing |
| | 6.2 | Bank of America, -2064; -1674 [both to be closed] | | |
| | 7. | Landlord Waivers executed by the landlords party to the | | |

| | | | |
|---|---|---|---|
| | leases for the following locations: | | |
| | (a) Multiple Locations (see list) | LC/BC | Pre- & Post-Closing |
| 8. | Co-Location Agreement, executed by the bailee(s) for the following location(s) *if Necessary*: | | |
| | (a) [TBD] | LC/BC | n/a |
| 9. | Bailee Letters, executed by bailees for the following inventory locations: | | |
| | (a) None | LC/BC | N/A |
| III. | DUE DILIGENCE | | |
| 10. | Legal Due Diligence Questionnaire (Borrower) | BC | XX |
| 11. | Pre-Closing Lien Search Reports detailing the searches in those jurisdictions listed on Exhibit A attached hereto and a summary thereof | LC/BC | See Exhibit A |
| IV. | ANCILLARY DOCUMENTS | | |
| 12. | ACH Direct Payment Form | BC | ___ |
| 13. | Advance Request | BC | Final Draft |
| 14. | Proposal Letter among the Borrower and Lender | LC/BC | XX |
| 15. | Insurance Policies/Certificates naming Lender as additional insured/loss payee<br>- General Liability – (Additional Insured)<br>- Property Insurance – (Loss Payee)<br><br>* Endorsements must accompany each Certificate.<br>Notice Address for Certificates<br>*TriplePoint Venture Growth BDC Corp.*<br>*2755 Sand Hill Rd., Ste. 150*<br>*Menlo Park, CA 94025*<br>*Tel: (650) 854-2090*<br>*Fax: (650) 854-1850*<br>*Attn: Monitoring Group* | BC | To be updated with TPVG – post-closing |
| 16. | Termination Statements for _____ (if necessary) | BC | n/a |
| 17. | Facility Fees, Part 1: $45,000; Part 2: $30,000 | BORROWER | @ Closing |
| 18. | Legal/Diligence Fees, TBD | BORROWER | |

Case: 19-30232   Doc# 43-10   Filed: 03/08/19   Entered: 03/08/19 14:40:45   Page 23 of 25

| | | | |
|---|---|---|---|
| **V.** | **ORGANIZATIONAL DOCUMENTS** | | |
| | 19.   Borrower | | |
| | 19.1   Secretary's Certificate (including incumbency)<br><br>        (a)      Exhibit A – Certificate of Incorporation certified by the Secretary of State of Delaware<br><br>        (b)      Exhibit B - By-Laws, as amended through the Closing Date<br><br>        (c)      Exhibit C - Resolutions (re: Loan Documents; Warrant Agreement | BC | —— |
| | 19.2   Good Standing Certificates (tax and corporate) from:<br>        i.      Delaware<br>        ii.     California<br>        iii.    New York<br>        iv.     Washington | BC | XX |
| **VI.** | **EQUITY DOCUMENTS** | | |
| | 20.   Series C Preferred Stock Purchase Agreement | BC | XX |
| | 21.   Investors' Rights Agreement | BC | XX |
| | 22.   Capitalization Table | BC | XX |
| | 23.   409A Valuation Report | | XX |
| **VII.** | **POST CLOSING OBLIGATIONS** | | |
| | 24.   File UCC Financing Statements | LC | |
| | 25.   Post-Filing UCC Searches | LC | |
| | 26.   File Intellectual Property Security Agreements | LC | |

3

Pre-Closing Lien Search Reports

| Search Jurisdictions | Debtor | Received? |
|---|---|---|
| Delaware | MUNCHERY INC. | Yes;<br>Comerica Blanket Lien (w/o IP)<br>Apple Financial/Corporation<br>Service Company: equipment<br>specific Lien |
| California | MUNCHERY INC. | Yes; Xerox equip specific lien |

4