TIMOTHY S. LAFFREDI (WI SBN 1055133)
Assistant United States Trustee
TREVOR R. FEHR (SBN 316699)
Trial Attorney
United States Department of Justice
Office of the U.S. Trustee
280 South First St., Suite 268
San Jose, CA  95113
Telephone:    (408) 535-5525
Facsimile:    (408) 535-5532
Email: Trevor.Fehr@usdoj.gov

Attorneys for TRACY HOPE DAVIS
United States Trustee for Region 17

**UNITED STATES BANKRUPTCY COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| In re | Case No. 19-30232 HLB |
| MUNCHERY, INC. | Chapter 11 |
| Debtor. | Date: April 4, 2019<br>Time: 10:00 a.m.<br>Place: Hon. Hannah L. Blumenstiel<br>450 Golden Gate Ave., 16th Floor<br>Courtroom 19<br>San Francisco, CA  94102 |

**UNITED STATES TRUSTEE'S OBJECTION AND RESERVATION OF RIGHTS WITH RESPECT TO THE DEBTOR'S MOTION FOR ORDER PURSUANT TO SECTIONS 363(b) AND 503(b) APPROVING SALARY AND SUCCESS FEE**

Tracy Hope Davis, United States Trustee for Region 17 ("UST"), by and through her undersigned counsel, hereby objects ("Objection") to the Motion for Order Pursuant to Sections 363(b) and 503(b) Approving Salary and Success Fee ("Motion") filed by Debtor Munchery, Inc. ("Debtor") on March 7, 2019 and requests that the Court deny approval of the Motion for the reasons set forth herein. ECF No. 37.[1]

The United States Trustee requests that the Court take judicial notice of the pleadings and documents filed in this case pursuant to Federal Rule of Bankruptcy Procedure 9017 and Federal

---

[1] ECF references contained herein are to the PACER docket for Debtor Munchery, Inc., Case No. 19-30232, unless otherwise indicated.

UNITED STATES TRUSTEE'S OBJECTION – MOTION FOR SALARY AND SUCCESS FEE
- MUNCHERY, INC. 19-30232                       1

Rule of Evidence 201. The United States Trustee reserves all rights, including the right to seek sanctions against under 11 U.S.C. § 329.

## I. Introduction

The United States Trustee objects to the Debtor's Motion and requests that the Court deny the Motion because it improperly characterizes the success fee as an incentive and, regardless of whether it is an incentive payment, does not provide adequate factual support to justify the payment. First, the proposed success fee is a payment to induce Mr. Beriker, an insider, to remain with the debtor's business as defined under 11 U.S.C. § 503(c). Second, the Debtor does not provide adequate support to justify the payment as either an incentive or retention payment. For these reasons, the Motion should be denied.

## II. Jurisdiction and Venue

This Court has jurisdiction to hear and determine the Application and this Objection pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157(a) and (b)(2).

## III. The United States Trustee Has Standing to Object to the Application

The United States Trustee is charged with supervising the administration of cases under the Bankruptcy Code. 28 U.S.C. § 586. In furtherance of that duty, the United States Trustee is granted standing to raise and be heard on any issue in any bankruptcy case or proceeding pursuant to 11 U.S.C. § 307. The United States Trustee has a responsibility to enforce the laws as written by Congress and interpreted by the courts. *See United States Trustee v. Columbia Gas. Sys. Inc. (In re Columbia Gas Sys. Inc.)*, 33 F.3d 294, 295-96 (3d Cir. 1994). The United States Trustee is not required to demonstrate any pecuniary or other interest. *Id*.

//
//
//
//
//
//

### IV. Statement of Facts

#### A. Procedural History and Background

On February 28, 2019, the Debtor, Munchery, Inc., filed a voluntary Chapter 11 bankruptcy petition ("Petition"). ECF No.1.[2]

The Debtor's representative is President and CEO James Beriker. ECF No. 1, p. 4 of 5; §17.

The Debtor was founded in 2011 for the business of making, selling, and delivering freshly prepared meals, cooking kits, sides, desserts, and drinks to consumers. [ECF No. 6, p. 2]. After a sale of the business was not successful, and the Debtor and its Senior Secured Creditors were unable to come to an agreement to continue financing the business, the business operations was shut down. *Id.* at pp. 9-11.

No trustee has been appointed in the Debtor's case. *See generally* Case Docket. No official committee of unsecured creditors has been appointed to date. *Id*.

On February 18, 2019 the Debtor entered into a Letter of Intent ("LOI") with Gate Gourmet, Inc. ("Gate Gourmet") to acquire the Debtor's assets and lease located at the Debtor's facility at 220 Shaw Road in South San Francisco, CA ("Shaw Property"). ECF No. 37-1, p. 2-3. Under the LOI, Gate Gourmet proposed to pay $5,000,000 to the Debtor for these assets and an assignment of the lease on the Shaw Property. ECF No. 40, p. 3.

#### B. Debtor's Motion for Approval of the Salary and Success Fee

On March 11, 2019 the Debtor filed the Motion along with a supporting Declaration by Beriker ("Beriker Declaration") and the Debtor's Offer of Employment Letter with Beriker ("Offer of Employment"). ECF Nos. 37-1 & 37-2.

The Motion proposes that Beriker receive a success fee in accordance with the terms set out in the Offer of Employment. ECF No. 37, p. 3. The success fee is structured so that Beriker receives 2% up to a maximum of $40,000 if the net proceeds of a sale are less than $2 million;

---

[2] Unless otherwise noted, "ECF No." refers to the main bankruptcy docket for case number, 19-30232-HLB.

UNITED STATES TRUSTEE'S OBJECTION – MOTION FOR SALARY AND SUCCESS FEE
- MUNCHERY, INC. 19-30232        3

$65,000 if the net proceeds are between $2 and $3 million; $115,000 if the net proceeds are between $3 and $4 million; and $250,000 if the net proceeds are more than $4 million.

The Motion argues that Section 503(c), which restricts payments to insiders to induce them to remain with the Debtor, does not apply to this success fee because "the proposed success fee is not for the purpose of inducing Mr. Beriker to remain with Munchery. Rather, it specifically incentivizes Mr. Beriker to increase the net value of the estate because the amount of the success fee increases as the net value of the estate's assets, post-sale, increases." ECF No. 37, p. 6.

The Debtor states in the Motion that it "does not dispute that Mr. Beriker is an insider pursuant to section 101(31)(B)[.]" ECF No. 37, p. 6.

## V. Legal Argument

### A. The Debtor Has Failed to Demonstrate that the Success Fee Complies with Limits Imposed on Insider Payments Under 11 U.S.C. § 503(c)

Section 503(c) imposes limits on the ability of a debtor to make transfers to insiders. Under Section 503(c)(1), the Debtor must, "based upon evidence in the record," demonstrate all three of the required elements of Section 503(c)(1), which provides, in pertinent part, as follows:

(c) Notwithstanding subsection (b), there shall neither be allowed, nor paid—

> (1) a transfer made to, or an obligation incurred for the benefit of, an insider of the debtor for the purpose of inducing such person to remain with the debtor's business, absent a finding by the court based on evidence in the record that—
>
>> (A) the transfer or obligation is essential to retention of the person because the individual has a bona fide job offer from another business at the same or greater rate of compensation;
>>
>> (B) the services provided by the person are essential to the survival of the business; and
>>
>> (C) either—
>>
>>> (i) the amount of the transfer made to, or obligation incurred for the benefit of, the person is not greater than an amount equal to 10 times the amount of the mean transfer or obligation of a similar kind given to nonmanagement employees for any purpose during the calendar year in which the transfer is made or the obligation is incurred; or

(ii) if no such similar transfers were made to, or obligations were incurred for the benefit of, such nonmanagement employees during such calendar year, the amount of the transfer or obligation is not greater than an amount equal to 25 percent of the amount of any similar transfer or obligation made to or incurred for the benefit of such insider for any purpose during the calendar year before the year in which such transfer is made or obligation is incurred;

If a transfer to an insider is for the purpose of inducing the insider to stay with the Debtor, the transfer is allowable only under Section 503(c)(1), even if the transfer is otherwise in the ordinary course of the Debtor's business. *Neilson Nutraceutical*, 369 B.R. 787, 800-01 (Bankr. D. Del. 2007). Congress added section 503(c) to the Bankruptcy Code as one of the BAPCPA amendments in 2005, to "eradicate the notion that executives were entitled to bonuses simply for staying with the Company through the bankruptcy process." *In re Global Home Prods., LLC,* 369 B.R. 778, 783-84 (Bankr. D. Del. 2007).

Section 503(c) restricts debtors from making retention or severance payments to insiders unless its applicable requirements are satisfied. *In re AMR Corp.*, 497 B.R. 690, 696 (Bankr. S.D.N.Y. 2013) (finding that the language of Section 503(c) is prohibitive; if payments to insiders do not comply with the applicable 503(c) provisions, they "shall neither be allowed, nor paid").

Section 503(c) establishes specific evidentiary standards that must be met before a bankruptcy court may authorize payments to an insider for the purpose of inducing such person to remain with a debtor's business or payments made on account of severance. *In re Dana Corp.*, 351 B.R. 96, 102 (Bankr. S.D.N.Y. 2006) ("*Dana I*"); 11 U.S.C. § 503(c)(1). By enacting the BAPCPA, Congress put into place "a set of challenging standards" and "high hurdles" for debtors to overcome before retention bonuses could be paid. *In re Mesa Air Grp., Inc.*, Case No. 10-10018 (MG), 2010 WL 3810899, *2 (Bankr. S.D.N.Y. Sept. 24, 2010) (citations omitted). The proponent of a bonus plan has the burden of showing that the plan is not a retention plan governed by Section 503(c)(1). *In re Hawker Beechcraft, Inc.*, 479 B.R. 308, 313 (Bankr. S.D.N.Y. 2012).

To show that a bonus plan is not governed by section 503(c)(1), the debtors must prove by a preponderance of the evidence that the bonuses are part of a "pay for value" plan that offers incentives based on performance rather than a "pay to stay" plan. *Global Home Prods.*, 369 B.R. at 783; *accord Residential Capital, LLC*, 478 B.R. 170 (Bankr. S.D.N.Y. 2012). If the debtors fail to meet their burden of proof, then the bonus plan cannot be approved. In addition, although any payment to an employee, including regular wages, has at least a partial purpose of retaining the employee, for bonus plans to fall outside the purview of section 503(c)(1), they must be primarily incentivizing. *In re Nellson Nutraceutical*, 369 B.R. 787, 802 (Bankr. D. Del. 2007) (bankruptcy court construed section 503(c)(1) to mean "'a transfer to ... an insider of the debtor for the primary purpose of inducing such person to remain with the debtor's business.'") (citation omitted).

      i.    **The Motion Inappropriately Categorizes the Success Fee as an Incentive rather than a Retention Payment**

A debtor's label of a plan as incentivizing to avoid the strictures of section 503(c)(1) must be viewed with skepticism; the circumstances under which the proposal is made and the structure of the compensation package control. *In re Velo Holdings, Inc.*, 472 B.R. 201, 209 (Bankr. S.D.N.Y. 2012) ("Attempts to characterize what are essentially prohibited retention programs as incentive programs in order to bypass the requirements of section 503(c)(1) are looked upon with disfavor, as the courts consider the circumstances under which particular proposals are made, along with the structure of the compensation packages, when determining whether the compensation programs are subject to section 503(c)(1).") (internal quotation marks and citations omitted); see also *Residential Capital*, 478 B.R. at 161 (finding that an incentive plan "should incentivize employees for their post-petition efforts, not compensate them for the work they did before the bankruptcy filing."); *Hawker Beechcraft*, 479 B.R. at 313 ("The concern in the type of motion presented ... is that the debtor has dressed up a KERP to look like a KEIP in the hope that it will pass muster under the less demanding 'facts and circumstances' standard in ... § 503(c)(3)."); *Dana I*, 351 B.R. at 102 n. 3 ("If it walks like a duck (KERP) and quacks like a duck (KERP), it's a duck (KERP).").

In the present case, the Debtors' "incentive" label should be viewed with skepticism. The success fee appears retentive because the net profits the Debtor is set to receive under the LOI eliminate any incentive for Mr. Beriker. The Letter of Intent, which provided for a $5 million dollar payment, was entered into on February 18, 2019 – prior to the filing of this bankruptcy case. At the time this bankruptcy case commenced, there was no longer a higher target for Beriker to achieve. Similar to the circumstances in *Hawker Beechcraft*, the highest level of the proposed "incentive" is already well in hand. *Hawker Beechcraft*, 479 B.R. at 313 ("[A]lthough the KEIP includes incentivizing targets, the lowest levels are well within reach."). By definition, an incentive plan should encourage future performance, however the success fee benchmark was in hand before the bankruptcy petition was filed.

To demonstrate that the success fee is appropriate, the Debtor argues that "[i]t is important that the Debtor provide appropriate incentives to Mr. Beriker, who has agreed to a reduced salary and a modest, below-market success fee that incentivizes him to maximize the value of the estate's assets." ECF No. 37, p. 7. However, Beriker is already required to pursue this goal.

Beriker, as the Debtor's principal, already has a fiduciary duty to maximize the value of the estate. *See* 11 U.S.C. § 1107(a); *see also Official Comm. of Unsecured Creditors of Cybergenics Corp. ex rel. Cybergenics Corp. v. Chinery,* 330 F.3d 548, 573 (3d Cir. 2003) ("In Chapter 11 cases where there is no trustee appointed, § 1107(a) provides that the debtor-in-possession, *i.e.*, the debtor's management, enjoys the powers that would otherwise vest in the bankruptcy trustee. Along with those powers, of course, comes the trustee's fiduciary duty to maximize the value of the bankruptcy estate."). The Debtor's alleged incentive is already required by operation of the Bankruptcy Code. Therefore, this "incentive" is actually a bonus for staying with the Debtor and pursuing what the Bankruptcy Code requires.

Based on the facts of this case, the proposed success fee is much more akin to a "pay to stay" through the sale of assets rather than a "pay for value." *Global Home Prods.*, 369 B.R. at 783; *accord Residential Capital, LLC*, 478 B.R. 170 (Bankr. S.D.N.Y. 2012). The Motion should

be denied because it fails to demonstrate by a preponderance of the evidence that the success fee is an incentive rather than a retention payment. The proposed success fee is primarily retentive, and, therefore, can only be approved if the Debtor satisfies the standards of Section 503(c)(1).

### ii. The Success Fee Does Not Satisfy Section 503(c)(1)

Because the Bonus Plan is primarily a retention plan for an insider, it is governed by Section 503(c)(1). Section 503(c)(1) establishes specific and challenging standards a debtor must satisfy before a bankruptcy court may authorize bonus payments to an insider to induce the insider to remain with a debtor's business. *Dana I*, 351 B.R. at 100; 11 U.S.C. § 503(c)(1). The Debtors have the burden to prove these facts and must show that the proposed bonus payments comply with Section 503(c)(1). *See Dana I*, 351 B.R. at 100; *In re Mesa Air Group*, 2010 WL 3810899, at *2.

Where section 503(c)(1) applies, the transfer cannot be justified solely on the debtor's business judgment. See *In re Borders Grp., Inc.*, 453 B.R. 459, 470-71 (Bankr. S.D.N.Y. 2011). If a proposed transfer falls within section 503(c)(1), then the business judgment rule does not apply, irrespective of whether a sound business purpose may actually exist. *Id.*; *Dana I*, 351 B.R. at 100; 11 U.S.C. § 503(c)(1).

Section 503(c)(1) requires that the insider have a bona fide job offer at the same or greater compensation, the services provided by the insider are essential to the survival of the business, and the proposed retention payments are either less than ten times the mean of similar payments made to non-management employees during the calendar year or less than 25 percent of the amount of any similar payments made in the prior year. 11 U.S.C. § 503(c)(1). The Debtor has made not made this showing. The Debtor has only argued that the success fee is a proper exercise of the Debtor's business judgment and that Beriker "is critical to the preservation and enhancement of the bankruptcy estate." ECF No. 37, p. 7.

The proposed payment plan is not an incentive plan, it is, if anything, a retention plan, which brings Section 503(c)(1) into play. Because the Debtor has not satisfied the requirements of Section 503(c)(1), the payment plan cannot be approved.

### iii. Even If the Success Fee Is Governed By Sections 503(c)(3) and 363, the Debtor has Failed to Provide Adequate Justification

If the Court finds that Section 503(c)(1) does not apply, the Court may also consider whether the payments are permissible under 503(c)(3). *In re Dana Corp.*, 358 B.R. 567, 576 (Bankr. S.D.N.Y. 2006) ("*Dana II*"). Section 503(c)(3) authorizes judicial discretion with respect to bonus plans motivated primarily by reasons other than retention. *Id*. Should the Court find that Section 503(c)(1) does not apply, the Court must then find that the success fee passes the test of Section 503(c)(3) – that it is necessary to preserve the value of the Debtor's estate, and is "justified by the facts and circumstances of the case[.]" 11 U.S.C. § 503(c)(3).

In *Dana II*, Judge Lifland listed several factors that courts consider when determining if the structure of a compensation proposal and the process for its development satisfy §503(c)(3):

- Is there a reasonable relationship between the plan proposed and the results to be obtained, i.e., will the key employee stay for as long as it takes for the debtor to reorganize or market its assets, or, in the case of a performance incentive, is the plan calculated to achieve the desired performance?
- Is the cost of the plan reasonable in the context of the debtor's assets, liabilities and earning potential?
- Is the scope of the plan fair and reasonable; does it apply to all employees; does it discriminate unfairly?
- Is the plan or proposal consistent with industry standards?
- What were the due diligence efforts of the debtor in investigating the need for a plan; analyzing which key employees need to be incentivized; what is available; what is generally applicable in a particular industry?
- Did the debtor receive independent counsel in performing due diligence and in creating and authorizing the incentive compensation?

358 B.R. at 576–77 (emphasis in original). *See Global Home*, 369 B.R. at 786 (evaluating an incentive plan under the business judgment standard of section 363 by applying the factors listed above); Borders, 453 B.R. at 474 (same); *but see In re Pilgrim's Pride Corp.*, 401 B.R. 229, 236-37 (Bankr. N.D. Tex. 2009) (standard for approval under section 503(c)(3) is higher than the

UNITED STATES TRUSTEE'S OBJECTION – MOTION FOR SALARY AND SUCCESS FEE
- MUNCHERY, INC. 19-30232          9

business judgment test; if payments to employees outside the ordinary course were only subject to the business judgment test, then the language of section 503(c)(3) would ostensibly be rendered meaningless).

In the present case, the Debtor has failed to address the need for review under 501(c)(3). Further, the Debtor has not provided enough information for the Court to make this determination. When addressing whether the success fee is appropriate, the Debtor does not even indirectly address the *Dana II* factors, including whether the Debtor received independent counsel in performing due diligence; whether it is consistent with the Debtor's assets, liabilities, and earning potential; or whether there is a reasonable relationship between the proposed plan and the results to be obtained. The Debtor's only support for whether the success fee is warranted is that "the amount of the fee is tied to the net value of the estate's assets." ECF No. 37, p. 7. The Debtor's argument does not address how the fee was determined or how, with the LOI already guaranteeing the highest success fee, the proposed success fee will actually incentivize Beriker.

Further, under *Dana II*, the benchmarks for the payment of bonuses must be "difficult targets to reach." *Dana II*, 358 B.R. at 583. Here, the highest possible success fee payment was already in hand before the bankruptcy petition was filed. There is no higher target for Beriker to reach through further effort.

The Debtor urges the Court to apply the business judgment test to satisfy Section 363(b) and demonstrate that the success fee is appropriate. The Debtor argues that the Court may authorize a debtor to enter into transactions outside the ordinary course of business if it is within the Debtor's sound judgment. ECF No. 37, p. 6-7. This legal standard is inapplicable here.

"[T]he 'business judgment rule' is the presumption that directors making a business decision, not involving self-interest, act on an informed basis, in good faith, and in the honest belief that their actions are in the corporation's best interest." *In re Polycom, Inc.*, 78 F.Supp. 3d 1006 (N.D. Cal. 2015) (applying Delaware law). A key consideration here is the phrase "not acting in self-interest." Beriker has a financial stake in whether the success fee is authorized because he is the beneficiary. Yet, he is the only remaining board member of the Debtor, and

thus the Debtor's deciding voice with respect to whether the Debtor should seek approval for the success fee. He is not disinterested and, as a result, the business judgment rule cannot apply to that decision. Therefore, the Debtor has failed to justify the success fee under Sections 503(c)(3) and 363.

### B. Reservation of Rights in Favor of the United States Trustee

The United States Trustee reserves all rights, including the right to object to any subsequently amended Motion.

### VI. Conclusion

WHEREFORE, the United States Trustee requests that the Court deny Motion, and grant such other relief as is just and appropriate under the circumstances.

Dated: March 20, 2019

TRACY HOPE DAVIS
UNITED STATES TRUSTEE

*/s/ Trevor R. Fehr*
Trevor R. Fehr
Trial Attorney

UNITED STATES TRUSTEE'S OBJECTION – MOTION FOR SALARY AND SUCCESS FEE
- MUNCHERY, INC. 19-30232         11

Case: 19-30232   Doc# 71   Filed: 03/20/19   Entered: 03/20/19 16:44:01   Page 11 of 11