# Exhibit D



**AIR COMMERCIAL REAL ESTATE ASSOCIATION STANDARD INDUSTRIAL/COMMERCIAL SINGLE-TENANT LEASE -- NET**

(DO NOT USE THIS FORM FOR MULTI-TENANT BUILDINGS)

1. **Basic Provisions ("Basic Provisions")**.

    1.1 **Parties:** This Lease (**"Lease"**), dated for reference purposes only April __, 2015, is made by and between Lynn J. Bacon, Trustee of the Bacon Family Trust (**"Lessor"**) and Munchery, Inc. a California Corporation (**"Lessee"**) (collectively the **"Parties,"** or individually a **"Party"**).

    1.2 **Premises:** That certain real property, including all improvements therein or to be provided by Lessor under the terms of this Lease, and commonly known as 220 Shaw Road, South San Francisco, located in the County of San Mateo, State of California, and generally described as (describe briefly the nature of the property and, if applicable, the **"Project"**, if the property is located within a Project) an approximately 70,328 SF freestanding industrial building **Premises"**). (See also Paragraph 2)

    1.3 **Term:** 10 years (**"Original Term"**) commencing May 1, 2015 (**"Commencement Date"**) and ending April 30, 2025 (**"Expiration Date"**). (See also Paragraph 3)

    1.4 **Early Possession:** If the Premises are available Lessee may have non-exclusive possession of the Premises commencing May 1, 2015 (**"Early Possession Date"**). (See also Paragraphs 3.2 and 3.3)

    1.5 **Base Rent:** $58,000.00 per month (**"Base Rent"**), payable on the First day of each month commencing May 1, 2015

☒ If this box is checked, there are provisions in this Lease for the Base Rent to be adjusted. See Addendum Paragraph _____ (See also Paragraph 4)

    1.6 **Base Rent and Other Monies Paid Upon Execution:**

    (a) Base Rent: $58,000.00 for the period October 1, 2015 - October 31, 2015.

    (b) Security Deposit: $300,000 cash, plus $300,000 letter of credit (**"Security Deposit"**). (See also Paragraph 5)

    (c) Association Fees: $N/A _____ for the period _____

    (d) Other: $N/A _____ for _____

    (e) Total Due Upon Execution of this Lease: $358,000.00

    1.7 **Agreed Use:** General office and warehouse use associated with a food production and delivery company _____ . (See also Paragraph 6)

    1.8 **Insuring Party:** Lessor is the **"Insuring Party"** unless otherwise stated herein. (See also Paragraph 8).

    1.9 **Real Estate Brokers:** (See also Paragraph 15)

    (a) **Representation:** The following real estate brokers (the **"Brokers"**) and brokerage relationships exist in this transaction (check applicable boxes):

    þ CRC Partners (Ed Collantes) _____ represents Lessor exclusively (**"Lessor's Broker"**);
    þ Kidder Mathews _____ represents Lessee exclusively (**"Lessee's Broker"**); or
    ☐ _____ represents both Lessor and Lessee (**"Dual Agency"**).

    (b) **Payment to Brokers:** Per Separate Agreement.

Brokers the brokerage fee agreed to in a separate written agreement (or if there is no such agreement, the sum of _____ or

    1.10 **Guarantor.** The obligations of the Lessee under this Lease are to be guaranteed by _____

_____ (**"Guarantor"**). (See also Paragraph 37)

    1.11 **Attachments.** Attached hereto are the following, all of which constitute a part of this Lease:

X an Addendum consisting of Paragraphs 50 through 58; _____

X a plot plan depicting the Premises;

☐ a current set of the Rules and Regulations;

☐ a Work Letter;

☐ a energy disclosure addendum is attached;

X other (specify): Option to Extend Addendum

Case: 19-30232    Doc# 78-8    Filed: 03/21/19    Entered: 03/21/19 18:07:46    Page 2 of 10

## 2. Premises.

2.1 **Letting**. Lessor hereby leases to Lessee, and Lessee hereby leases from Lessor, the Premises, for the term, at the rental, and upon all of the terms, covenants and conditions set forth in this Lease. While the approximate square footage of the Premises may have been used in the marketing of the Premises for purposes of comparison, the Base Rent stated herein is NOT tied to square footage and is not subject to adjustment should the actual size be determined to be different. **Note: Lessee is advised to verify the actual size prior to executing this Lease.**

2.2 Condition. Lessor shall deliver the Premises to Lessee AS-IS on the Commencement Date or the Early Possession Date, whichever occurs first (the "**Start Date**"). Lessee acknowledges that it has thoroughly investigated the condition of the Premises and, subject to Sections 7.1 and 7.2 below, is not relying on any representations from Lessor, its broker or agents in entering into this Lease Agreement.

2.3 **Compliance with Laws.**

Lessor has made no representations or warranties that the Premises comply with existing building codes, applicable laws, covenants or restrictions of record, regulations, and ordinances ("**Applicable Requirements**"), and Lessee acknowledges that it has been given ample opportunity to investigate and inspect the building and Premises to review whether the Premises comply with the Applicable Requirements. During the Term of the Lease, if there are any penalties, fines, costs, repairs or construction related to either compliance with i) the Americans with Disability Act or any similar laws; or ii) any Applicable Requirements, including, but not limited to, any building or zoning laws, ordinance or regulations, restricting, regulating, prohibiting or relating to the occupancy, use or enjoyment of the Premises or the Agreed Use as set forth under the Lease, then the Lessee at its sole cost and expenses, shall undertake or pay, as applicable, for any such penalties, fines, costs, repairs or construction. Notwithstanding the above, if any such work would be deemed a capital expenditure under generally accepted accounting principles (a "**Capital Expenditure**") and such Capital Expenditure is required during the last 2 years of this Lease and the cost thereof exceeds 6 months' Base Rent, Lessee may instead terminate this Lease unless Lessor notifies Lessee, in writing, within 10 days after receipt of Lessee's termination notice that Lessor has elected to pay the difference between the actual cost thereof and an amount equal to 6 months' Base Rent. If Lessee elects termination, Lessee shall immediately cease the use of the Premises which requires such Capital Expenditure and deliver to Lessor written notice specifying a termination date at least 90 days thereafter. Such termination date shall, however, in no event be earlier than the last day that Lessee could legally utilize the Premises without commencing such Capital Expenditure.

2.4 **Acknowledgements.** Lessee acknowledges that: (a) it has been given an opportunity to inspect and measure the Premises, (b) it has been advised by Lessor and/or Brokers to satisfy itself with respect to the size and condition of the Premises (including but not limited to the electrical, HVAC and fire sprinkler systems, security, environmental aspects, and compliance with Applicable Requirements and the Americans with Disabilities Act), and their suitability for Lessee's intended use, (c) Lessee has made such investigation as it deems necessary with reference to such matters and assumes all responsibility therefor as the same relate to its occupancy of the Premises, (d) it is not relying on any representation as to the size of the Premises made by Brokers or Lessor, (e) the square footage of the Premises was not material to Lessee's decision to lease the Premises and pay the Rent stated herein, and (f) neither Lessor, Lessor's agents, nor Brokers have made any oral or written representations or warranties with respect to said matters other than as set forth in this Lease. In addition, Lessor acknowledges that: (i) Brokers have made no representations, promises or warranties concerning Lessee's ability to honor the Lease or suitability to occupy the Premises, and (ii) it is Lessor's sole responsibility to investigate the financial capability and/or suitability of all proposed tenants.

2.5 **Lessee Alterations**. After completion of Lessee's Initial Work as set forth in section 2.5(d) below, Lessee shall not make any Alterations or Lessee Improvements, as defined below, to the Premises without Lessor's prior written consent, which shall not be unreasonably withheld, conditioned or delayed. Within fourteen (14) days after Lessee delivers to Lessor the proposed plans and specifications for any such Alterations, Lessor shall either approve or disapprove the same, and in the case of disapproval Lessor shall specify in writing the basis for withholding its consent. If Lessor fails to provide Lessee with any written response during said fourteen (14)-day period, Lessor shall be deemed to have disapproved such Alterations. **[SEE ADDENDUM PARAGRAPH 58 REGARDING RESTORATION OBLIGATIONS]**

(a) **Ownership**. The Lessee Alterations shall not become the property of Lessor until the expiration or sooner termination of this Lease.

(b) **Limitations**. Lessor shall not have the right to approve Lessee's contractors or subcontractors, nor impose as a condition of Lessor's consent (when consent is required) that Lessee: (a) post performance bonds or security deposits; (b) submit lien waivers; (c) employ Lessor's designated contractors for the performance of any work (except for roof and sprinkler work); (d) perform any work after normal business hours; (e) [OMITTED]; (f) pay any review, management, supervision or approval fees; or (g) impose any back charges, impact fees or assessments. Notwithstanding the above, all contractors and subcontractors shall be properly licensed and perform their work as required by approved permits from Governmental Authorities.

(c) **Lessor's Cooperation**. Lessor shall reasonably cooperate with Lessee's efforts to make any Alterations or Lessee Improvements to the Premises, including without limitation, in connection with Lessee's efforts to obtain governmental and/or private permits, certificates, consents or approvals relating to such Alterations or Lessee Improvements, and by executing applications and/or other required documents and appearing, in person or through Lessor's designated agent, with Lessee (or Lessee's designated agent), at public or private hearing(s) or meeting(s) on such application or other documents.

(d) **Lessee's Initial Work**. The parties agree that Lessee will undertake to alter the Premises at Lessee's sole cost and expense after taking possession under this Lease. Lessee's initial construction, installation and/or modification of improvements at the Premises (including any demolition) shall be referred to as "**Lessee's Initial Work**". Any installations, improvements, alterations and/or additions made to the Premises by or on behalf of Lessee at any time during the Term, other than Lessee's Initial Work, shall be collectively referred to as "**Alterations**". Lessee's Initial Work and any Alterations constructed or installed at any time during the Term shall be collectively referred to as the "**Lessee Improvements**". The Lessee Improvements shall not include Lessee's signs, trade fixtures, furniture, merchandise, inventory or furnishings. Lessee shall have the right to alter the interior of the Premises to construct kitchens, renovate existing offices and modify the existing refrigeration and floor plan to meet Lessee's operational needs.

Without limitation of the above, Lessee may remodel and modify the existing interior of the Premises and Building and shall obtain all consents, Permits and Approvals (collectively, the "**Initial Work Consents**") required by any Governmental Authorities or Third Parties that have a right to approve the same. Lessor shall have the right to approve or disapprove any aspect of Lessee's Plans and specifications for Lessee's Initial Work (the "**Lessee**

INITIALS                                                                                                                                          INITIALS

Plans"), which approval shall not be unreasonably withheld, conditioned or delayed. Within fourteen (14) days after Lessee delivers to Lessor the proposed Lessee Plans, Lessor shall either approve or disapprove the same, and in the case of disapproval Lessor shall specify in writing the basis for withholding its consent. If Lessor fails to provide Lessee with such written response during the fourteen (14)-day period, then Lessor shall be deemed to have disapproved the Lessee Plans.

Except for Lessor's right to approve the Lessee Plans, the Lessee Plans shall be in accordance with such Lessee requirements as Lessee, in its sole and absolute discretion, may determine. Lessee shall be required to comply with any condition of approval imposed or requested by any Governmental Authorities or Third Parties (each as defined below) and obtain all Permits and Approvals required to complete Lessee's Initial Work.

Lessor shall cooperate with Lessee in its applications for the approval of the Lessee Plans by Governmental Authorities and/or Third Parties and shall execute any required documents and, if necessary, appear in person, or through its duly appointed agent, with Lessee (or Lessee's designated agent) at a public or private hearing or meeting on such application. **[SEE ADDENDUM PARAGRAPH 58 REGARDING RESTORATION OBLIGATIONS]**

Lessee's inability or failure to obtain permits or other required approvals from Government Authorities or Third Parties for any or all of Lessee's Plans shall not be grounds for terminating or modifying this Lease. Lessee acknowledges that

Lessor has made no representations regarding the suitability of the Premises for any Lessee proposed Lessee Improvements , or for the Lessee Plans.

The term "**Permits and Approvals**" means any and all approvals, consents, permits, exemptions, variances, easements, licenses, leases, and other authorizations from (a) Lessor, (b) all governmental and quasi-governmental departments, agencies and authorities (collectively, "**Governmental Authorities**"), (c) all third parties (whether private or public) including, without limitation, those third parties having authority pursuant to Legal Requirements or otherwise to review or approve the design or construction of Lessee's Initial Work or any other changes to the existing Building (collectively, "**Third Parties**").

3. **Term.**

    3.1    **Term.** The Commencement Date, Expiration Date and Original Term of this Lease are as specified in Paragraph 1.3.

3.2    **Early Possession.** Any provision herein granting Lessee Early Possession of the Premises is subject to and conditioned upon the Premises being available for such possession prior to the Commencement Date. Any grant of Early Possession only conveys a non-exclusive right to occupy the Premises. If Lessee totally or partially occupies the Premises prior to the Commencement Date, the obligation to pay Base Rent shall be abated for the period of such Early Possession. All other terms of this Lease (including but not limited to the obligations to pay Real Property Taxes and insurance premiums and to maintain the Premises) shall be in effect during such period. Any such Early Possession shall not affect the Expiration Date.

    3.3    **Delay In Possession.** Lessor agrees to use its best commercially reasonable efforts to deliver possession of the Premises to Lessee by the Commencement Date. If, despite said efforts, Lessor is unable to deliver possession by such date, Lessor shall not be subject to any liability therefor, nor shall such failure affect the validity of this Lease or change the Expiration Date. Lessee shall not, however, be obligated to pay Rent or perform its other obligations until Lessor delivers possession of the Premises and any period of rent abatement that Lessee would otherwise have enjoyed shall run from the date of delivery of possession and continue for a period equal to what Lessee would otherwise have enjoyed under the terms hereof, but minus any days of delay caused by the acts or omissions of Lessee. Notwithstanding the foregoing to the contrary, if possession of the Premises is not delivered to Tenant as of May 1, 2015, then (i) Lessee shall be entitled to an abatement of Base Rent equal to one (1) day of Base Rent for each such day of delay; any such abatement shall be applied immediately following the Commencement Date. Additionally, if possession is not delivered within ninety (90) days after the Commencement Date, as the same may be extended under the terms of any Work Letter executed by Parties, Lessee may, at its option, by notice in writing within 10 business days after the end of such 90 day period, cancel this Lease, in which event the Parties shall be discharged from all obligations hereunder. If such written notice is not received by Lessor within said 10 business day period, Lessee's right to cancel shall terminate. If possession of the Premises is not delivered within 120 days after the Commencement Date, this Lease shall terminate unless other agreements are reached between Lessor and Lessee, in writing.

    3.4    **Lessee Compliance.** Lessor shall not be required to deliver possession of the Premises to Lessee until Lessee complies with its obligation to provide evidence of insurance (Paragraph 8.5). Pending delivery of such evidence, Lessee shall be required to perform all of its obligations under this Lease from and after the Start Date, including the payment of Rent, notwithstanding Lessor's election to withhold possession pending receipt of such evidence of insurance. Further, if Lessee is required to perform any other conditions prior to or concurrent with the Start Date, the Start Date shall occur but Lessor may elect to withhold possession until such conditions are satisfied.

4. **Rent.**

    4.1.    **Rent Defined.** All monetary obligations of Lessee to Lessor under the terms of this Lease (except for the Security Deposit) are deemed to be rent ("**Rent**").

    4.2    **Payment.** Lessee shall cause payment of Rent to be received by Lessor in lawful money of the United States, without offset or deduction (except as specifically permitted in this Lease), on or before the day on which it is due. All monetary amounts shall be rounded to the nearest whole dollar. In the event that any invoice prepared by Lessor is inaccurate such inaccuracy shall not constitute a waiver and Lessee shall be obligated to pay the amount set forth in this Lease. Rent for any period during the term hereof which is for less than one full calendar month shall be prorated based upon the actual number of days of said month. Payment of Rent shall be made to Lessor at its address stated herein or to such other persons or place as Lessor may from time to time designate in writing. Acceptance of a payment which is less than the amount then due shall not be a waiver of Lessor's rights to the balance of such Rent, regardless of Lessor's endorsement of any check so stating. In the event that any check, draft, or other instrument of payment given by Lessee to Lessor is dishonored for any reason, Lessee agrees to pay to Lessor the sum of $25 in addition to any Late Charge and Lessor, at its option, may require all future Rent be paid by cashier's check. Payments will be applied first to accrued late charges and attorney's fees, second to accrued interest, then to Base Rent and any remaining amount to any other outstanding charges or costs.

5.    **Security Deposit.** Lessee shall deposit with Lessor upon execution hereof the Security Deposit as security for Lessee's faithful performance of its obligations under this Lease. If Lessee fails to pay Rent, or otherwise Defaults under this Lease, Lessor may use, apply or retain all or any portion of said Security Deposit for the payment of any amount already due Lessor, for Rents which will be due in the future, and/ or to reimburse or compensate

Lessor for any liability, expense, loss or damage which Lessor may suffer or incur by reason thereof. If Lessor uses or applies all or any portion of the Security Deposit, Lessee shall within 10 days after written request therefor deposit monies with Lessor sufficient to restore said Security Deposit to the full amount required by this Lease. If the Base Rent increases during the term of this Lease, Lessee shall, upon written request from Lessor, deposit additional monies with Lessor so that the total amount of the Security Deposit shall at all times bear the same proportion to the increased Base Rent as the initial Security Deposit bore to the initial Base Rent. Should the Agreed Use be amended to accommodate a material change in the business of Lessee or to accommodate a sublessee or assignee, Lessor shall have the right to increase the Security Deposit to the extent necessary, in Lessor's reasonable judgment, to account for any increased wear and tear that the Premises may suffer as a result thereof. If a change in control of Lessee occurs during this Lease and following such change the financial condition of Lessee is, in Lessor's reasonable judgment, significantly reduced, Lessee shall deposit such additional monies with Lessor as shall be sufficient to cause the Security Deposit to be at a commercially reasonable level based on such change in financial condition. Lessor shall not be required to keep the Security Deposit separate from its general accounts. Within 90 days after the expiration or termination of this Lease, Lessor shall return that portion of the Security Deposit not used or applied by Lessor. No part of the Security Deposit shall be considered to be held in trust, to bear interest or to be prepayment for any monies to be paid by Lessee under this Lease.

5.1 **Required Letter of Credit**. Notwithstanding anything to the contrary in this Lease, Lessee shall provide the Security Deposit to Lessor in the form of a standby irrevocable letter of credit ("**LC**") from a bank or financial institution reasonably acceptable to Lessor with a location in the City of San Francisco for drawing on the LC which LC shall be in form and substance reasonably acceptable to Lessor and which shall in no event expire prior to thirty (30) days after Lessor receives possession of the Premises from Lessee ("**LC Expiration Date**") and which LC shall include the following language: "This Letter of Credit shall be automatically extended for periods of one year from the current or any future expiration date unless at least thirty (30) calendar days prior to any expiration date we have sent written notice to the Beneficiary at the address noted above by courier that we elect not to renew this Letter of Credit for such additional periods." Lessee shall cause the Letter of Credit to be continuously maintained in effect (whether through replacement, renewal or extension) throughout the Term and the LC Expiration Date. If the LC held by Lessor expires earlier than the LC Expiration Date (whether by reason of a stated expiration date or a notice of termination or non-renewal given by the issuing bank), Lessee shall deliver a new letter of credit or certificate of renewal or extension to Lessor not later than fifteen (15) days prior to the expiration date of the LC then held by Lessor, and if Lessee fails to do so than Lessor may. at Lessor's option, draw all or part of the existing LC; in such event, Lessor may apply the proceeds of any such draw towards Lessee's rent payable hereunder as and when the same becomes due, and any excess proceeds shall be held by Lessor as a security deposit. Further, if Lessor so draws upon the LC then held by Lessor, Lessee must, within ten (10) business days following notice to Lessee of any such draw, reinstate the LC to the balance existing prior to such draw (upon Lessee's reinstatement of the LC, Lessor will return to Lessee any cash proceeds of such draw then held by Lessor). Lessee's failure to timely reinstate the balance of the LC following a draw by Lessor, as described herein, will constitute a default hereunder. Lessee shall provide Lessor with forty-five (45) days prior written notice of any change in the issuing bank of the LC. Any renewal or replacement letter of credit shall comply with all of the provisions of section 1.6(b) and this section 5.1. Lessor may, at any time, with notice to Lessee but without first obtaining Lessee's consent thereto, transfer all of its interest in and to the LC to another party, person or entity that acquires Lessor's interest in the Premises or any portion thereof and/or to have the LC reissued in the name of Lessor's mortgagee (provided that the mortgagee agrees in writing to comply with the terms of this Section 5.1). If Lessor transfers its interest in the Premises or any portion thereof and transfers the LC (and any proceeds thereof then held by Landlord, if any) to the transferee, Lessor shall, without any further agreement between the parties hereto, thereupon be released by Lessee from all liability therefor excluding any claims against Lessor for any breach of Lessor's rights or obligations under this section 5.1 of this Lease. The provisions hereof shall apply to every transfer or assignment of the LC to a new lessor.

Lessor may draw on the LC in the event of any Breach of Lessee to pay Base Rent or any other rent or sum due under this Lease as required herein, and shall not be required forgo drawing on said LC during any periods during which a rent loss claim has been made from any insurance obtained for this purpose. In the event of a Breach as defined in section 13.1, should Lessor elect its remedy to terminate the Lease under section 13.2, then Lessor may draw on the LC for the damages to which it may be entitled pursuant to Section 13.2 below, and in so drawing on said LC Lessor shall not waive or relinquish any other remedies it may have against Lessee under this lease. Lessee hereby waives (1) all of Lessee's rights under Civil Code section 1950.7, and (2) any limitations set forth in Civil Code section 1950.7 on Lessor's rights to draw on the LC for payment of Rent, additional rent, or other sums due under this Lease.

6. **Use.**

6.1 **Use.** Lessee shall use and occupy the Premises only for the Agreed Use, or any other legal use which is reasonably comparable thereto, and for no other purpose. Lessee shall not use or permit the use of the Premises in a manner that is unlawful, creates damage, waste or a nuisance, or that disturbs occupants of or causes damage to neighboring premises or properties. Other than guide, signal and seeing eye dogs, Lessee shall not keep or allow in the Premises any pets, animals, birds, fish, or reptiles. Lessor shall not unreasonably withhold or delay its consent to any written request for a modification of the Agreed Use, so long as the same will not impair the structural integrity of the improvements on the Premises or the mechanical or electrical systems therein, and/or is not significantly more burdensome to the Premises. If Lessor elects to withhold consent, Lessor shall within 7 days after such request give written notification of same, which notice shall include an explanation of Lessor's objections to the change in the Agreed Use.

6.2 **Hazardous Substances.**

(a) **Reportable Uses Require Consent.** The term **"Hazardous Substance"** as used in this Lease shall mean any product, substance, or waste whose presence, use, manufacture, disposal, transportation, or release, either by itself or in combination with other materials expected to be on the Premises, is either: (i) potentially injurious to the public health, safety or welfare, the environment or the Premises, (ii) regulated or monitored by any governmental authority, or (iii) a basis for potential liability of Lessor to any governmental agency or third party under any applicable statute or common law theory. Hazardous Substances shall include, but not be limited to, hydrocarbons, petroleum, gasoline, and/or crude oil or any products, by-products or fractions thereof. Lessee shall not engage in any activity in or on the Premises which constitutes a Reportable Use of Hazardous Substances without the express prior written consent of Lessor and timely compliance (at Lessee's expense) with all Applicable Requirements. **"Reportable Use"** shall mean (i) the installation or use of any above or below ground storage tank, (ii) the generation, possession, storage, use, transportation, or disposal of a Hazardous Substance that requires a permit from, or with respect to which a report, notice, registration or business plan is required to be filed with, any governmental authority, and/or (iii) the presence at the Premises of a Hazardous Substance with respect to which any Applicable Requirements requires that a notice be given to persons entering or occupying the Premises or neighboring properties.

INITIALS    INITIALS

©2001 - AIR COMMERCIAL REAL ESTATE ASSOCIATION                    FORM STN-18-04/14E

Case: 19-30232    Doc# 78-8    Filed: 03/21/19    Entered: 03/21/19 18:07:46    Page 5 of 10

Notwithstanding the foregoing, Lessee may use any ordinary and customary materials reasonably required to be used in the normal course of the Agreed Use, ordinary office supplies (copier toner, liquid paper, glue, etc.) and common household cleaning materials, so long as such use is in compliance with all Applicable Requirements, is not a Reportable Use, and does not expose the Premises or neighboring property to any meaningful risk of contamination or damage or expose Lessor to any liability therefor. In addition, Lessor may condition its consent to any Reportable Use upon receiving such additional assurances as Lessor reasonably deems necessary to protect itself, the public, the Premises and/or the environment against damage, contamination, injury and/or liability, including, but not limited to, the installation (and removal on or before Lease expiration or termination) of protective modifications (such as concrete encasements) and/or increasing the Security Deposit.

(b) **Duty to Inform Lessor.** If Lessee knows, or has reasonable cause to believe, that a Hazardous Substance has come to be located in, on, under or about the Premises, other than as previously consented to by Lessor, Lessee shall immediately give written notice of such fact to Lessor, and provide Lessor with a copy of any report, notice, claim or other documentation which it has concerning the presence of such Hazardous Substance.

(c) **Lessee Remediation.** Lessee shall not cause or permit any Hazardous Substance to be spilled or released in, on, under, or about the Premises (including through the plumbing or sanitary sewer system) and shall promptly, at Lessee's expense, comply with all Applicable Requirements and take all investigatory and/or remedial action reasonably recommended, whether or not formally ordered or required, for the cleanup of any contamination of, and for the maintenance, security and/or monitoring of the Premises or neighboring properties, that was caused or materially contributed to by Lessee, or pertaining to or involving any Hazardous Substance brought onto the Premises during the term of this Lease, by or for Lessee, or any third party.

(d) **Lessee Indemnification.** Lessee shall indemnify, defend and hold Lessor, its agents, employees, lenders and ground lessor, if any, harmless from and against any and all loss of rents and/or damages, liabilities, judgments, claims, expenses, penalties, and attorneys' and consultants' fees arising out of or involving any Hazardous Substance brought onto the Premises by or for Lessee, or any third party (other than Lessor or Lessor's contractors, agents or employees) (provided, however, that Lessee shall have no liability under this Lease with respect to underground migration of any Hazardous Substance under the Premises from adjacent properties not caused or contributed to by Lessee). Lessee's obligations shall include, but not be limited to, the effects of any contamination or injury to person, property or the environment created or suffered by Lessee, and the cost of investigation, removal, remediation, restoration and/or abatement, and shall survive the expiration or termination of this Lease. **No termination, cancellation or release agreement entered into by Lessor and Lessee shall release Lessee from its obligations under this Lease with respect to Hazardous Substances, unless specifically so agreed by Lessor in writing at the time of such agreement.**

(e) **Lessor Indemnification.** Except as otherwise provided in paragraph 8.7, Lessor and its successors and assigns shall indemnify, defend, reimburse and hold Lessee, its employees and lenders, harmless from and against any and all environmental damages, including the cost of remediation, which result from Hazardous Substances which existed on the Premises prior to Lessee's occupancy or which are caused by the gross negligence or willful misconduct of Lessor, its agents or employees. Lessor's obligations, as and when required by the Applicable Requirements, shall include, but not be limited to, the cost of investigation, removal, remediation, restoration and/or abatement, and shall survive the expiration or termination of this Lease.

(f) **Investigations and Remediations.** Lessor shall retain the responsibility and pay for any investigations or remediation measures required by governmental entities having jurisdiction with respect to the existence of Hazardous Substances on the Premises prior to Lessee's occupancy, unless such remediation measure is required as a result of Lessee's use (including "Alterations", as defined in paragraph 7.3(a) below) of the Premises, in which event Lessee shall be responsible for such payment. Lessee shall cooperate fully in any such activities at the request of Lessor, including allowing Lessor and Lessor's agents to have reasonable access to the Premises at reasonable times in order to carry out Lessor's investigative and remedial responsibilities.

(g) **Lessor Termination Option.** If a Hazardous Substance Condition (see Paragraph 9.1(e)) occurs during the term of this Lease, unless Lessee is legally responsible therefor (in which case Lessee shall make the investigation and remediation thereof required by the Applicable Requirements and this Lease shall continue in full force and effect, but subject to Lessor's rights under Paragraph 6.2(d) and Paragraph 13), Lessor may, at Lessor's option, either (i) investigate and remediate such Hazardous Substance Condition, if required, as soon as reasonably possible at Lessor's expense, in which event this Lease shall continue in full force and effect, or (ii) if the estimated cost to remediate such condition exceeds 12 times the then monthly Base Rent or $100,000, whichever is greater, give written notice to Lessee, within 30 days after receipt by Lessor of knowledge of the occurrence of such Hazardous Substance Condition, of Lessor's desire to terminate this Lease as of the date 60 days following the date of such notice. In the event Lessor elects to give a termination notice, Lessee may, within 10 days thereafter, give written notice to Lessor of Lessee's commitment to pay the amount by which the cost of the remediation of such Hazardous Substance Condition exceeds an amount equal to 12 times the then monthly Base Rent or $100,000, whichever is greater. Lessee shall provide Lessor with said funds or satisfactory assurance thereof within 30 days following such commitment. In such event, this Lease shall continue in full force and effect, and Lessor shall proceed to make such remediation as soon as reasonably possible after the required funds are available. If Lessee does not give such notice and provide the required funds or assurance thereof within the time provided, this Lease shall terminate as of the date specified in Lessor's notice of termination.

6.3     **Lessee's Compliance with Applicable Requirements.** Except as otherwise provided in this Lease, Lessee shall, at Lessee's sole expense, fully, diligently and in a timely manner, materially comply with all Applicable Requirements, the requirements of any applicable fire insurance underwriter or rating bureau, and the recommendations of Lessor's engineers and/or consultants which relate in any manner to the such Requirements, without regard to whether such Requirements are now in effect or become effective after the Start Date. Lessee shall, within 10 days after receipt of Lessor's written request, provide Lessor with copies of all permits and other documents, and other information evidencing Lessee's compliance with any Applicable Requirements specified by Lessor, and shall immediately upon receipt, notify Lessor in writing (with copies of any documents involved) of any threatened or actual claim, notice, citation, warning, complaint or report pertaining to or involving the failure of Lessee or the Premises to comply with any Applicable Requirements. Likewise, Lessee shall immediately give written notice to Lessor of: (i) any water damage to the Premises and any suspected seepage, pooling, dampness or other condition conducive to the production of mold; or (ii) any mustiness or other odors that might indicate the presence of mold in the Premises. In addition, Lessee shall provide copies of all relevant material safety data sheets (**MSDS**) to Lessor within 10 days of the receipt of a written request therefor. In addition, Lessee shall provide Lessor with copies of its business license, certificate of occupancy and/or any similar document within 10 days of the receipt of a written request therefor.

INITIALS                                                                                                                                                                              INITIALS

©2001 - AIR COMMERCIAL REAL ESTATE ASSOCIATION                                                                                                       FORM STN-18-04/14E

Case: 19-30232    Doc# 78-8    Filed: 03/21/19    Entered: 03/21/19 18:07:46    Page 6 of 10

6.4    **Inspection; Compliance.** Lessor and Lessor's **"Lender"** (as defined in Paragraph 30) and consultants shall have the right to enter into Premises at any time, in the case of an emergency, and otherwise at reasonable times after reasonable notice, for the purpose of inspecting the condition of the Premises and for verifying compliance by Lessee with this Lease. The cost of any such inspections shall be paid by Lessor, unless a violation of Applicable Requirements, or a Hazardous Substance Condition (see paragraph 9.1) is found to exist or be imminent, or the inspection is requested or ordered by a governmental authority. In such case, Lessee shall upon request reimburse Lessor for the cost of such inspection, so long as such inspection is reasonably related to the violation or contamination. In addition, Lessee shall provide copies of all relevant material safety data sheets (**MSDS**) to Lessor within 10 days of the receipt of a written request therefor.

7.    **Maintenance; Repairs, Utility Installations; Trade Fixtures and Alterations.**

   7.1    **Lessee's Obligations.**

   (a) **In General.** Subject to the provisions of Paragraph 2.2 (Condition), 2.3 (Compliance), 6.3 (Lessee's Compliance with Applicable Requirements), 7.2 (Lessor's Obligations), 9 (Damage or Destruction), and 14 (Condemnation), Lessee shall, at Lessee's sole expense, keep the Premises, Utility Installations (intended for Lessee's exclusive use, no matter where located), and Alterations in good order, condition and repair (whether or not the portion of the Premises requiring repairs, or the means of repairing the same, are reasonably or readily accessible to Lessee, and whether or not the need for such repairs occurs as a result of Lessee's use, any prior use, the elements or the age of such portion of the Premises),

including, but not limited to, all equipment or facilities, such as plumbing, HVAC equipment, electrical, lighting facilities, boilers, pressure vessels, fire protection and sprinkler systems, fixtures, walls (interior and exterior), foundations, ceilings, roofs (including the roofs were Lessee has penetrations have been made for Tenant's benefit), roof drainage systems, floors, windows, doors, plate

glass, skylights, landscaping, driveways, parking lots, fences, retaining walls, signs, sidewalks and parkways located in, on, or adjacent to the

Premises. Lessee, in keeping the Premises in good order, condition and repair, shall exercise and perform good maintenance practices, specifically including the procurement and maintenance of the service contracts required by Paragraph 7.1(b) below. Lessee's obligations shall include restorations, replacements or renewals when necessary to keep the Premises and all improvements thereon or a part thereof in good order, condition and state of repair. Lessee shall, during the term of this Lease, keep the exterior appearance of the Building in a first-class condition (including, e.g. graffiti removal) consistent with the exterior appearance of other similar facilities of comparable age and size in the vicinity, including, when necessary, the exterior repainting of the Building. All work by Lessee on the roof or sprinklers will be performed using Lessor's contractor so as not to void any warranty. Notwithstanding the foregoing provisions of this Section 7.1, Lessor shall keep the surface and structural elements of the roof, foundations, and bearing walls in good repair (see paragraph 7.2). Lessee shall pay the cost for any repairs associated with any roof penetrations by Lessee and agrees to reimburse Lessor within 15 days from the receipt of an invoice.

   (b) **Service Contracts.** Lessee shall, at Lessee's sole expense, procure and maintain contracts, with updated copies to Lessor at least every year, in customary form and substance for, and with contractors specializing and experienced in the maintenance of the following equipment and improvements, if any, if and when installed on the Premises: (i) HVAC equipment, (ii) boiler, and pressure vessels, (iii) fire extinguishing systems, including fire alarms, sprinklers and/or smoke detection, (iv) landscaping and irrigation systems, (v) roof covering and drains, (vi) clarifiers (vii) oven vent and flues (periodic cleaning).

   (c) **Failure to Perform.** If Lessee fails to perform Lessee's obligations under this Paragraph 7.1, Lessor may enter upon the Premises after 10 days' prior written notice to Lessee (except in the case of an emergency, in which case no notice shall be required), perform such obligations on Lessee's behalf, and put the Premises in good order, condition and repair, and Lessee shall promptly pay to Lessor a sum equal to 115% of the cost thereof.

   (d) **Replacement.** Subject to Lessee's indemnification of Lessor as set forth in Paragraph 8.7 below, and without relieving Lessee of liability resulting from Lessee's failure to exercise and perform good maintenance practices, if an item described in Paragraph 7.1(b) cannot be repaired other than at a cost which is in excess of 50% of the cost of replacing such item, then such item shall be replaced by Lessor, and the cost thereof shall be prorated between the Parties and Lessee shall only be obligated to pay, each month during the remainder of the term of this Lease, on the date on which Base Rent is due, an amount equal to the product of multiplying the cost of such replacement by a fraction, the numerator of which is one, and the denominator of which is 144 (i.e. 1/144th of the cost per month). Lessee shall pay Interest on the unamortized balance but may prepay its obligation at any time.

   7.2    **Lessor's Obligations.** Subject to the provisions of Paragraphs 2.2 (Condition), 2.3 (Compliance), 9 (Damage or Destruction) and

14 (Condemnation), it is intended by the Parties hereto that Lessor have no obligation, in any manner whatsoever, to repair and maintain the Premises, or the equipment therein, all of which obligations are intended to be that of the Lessee, except for the surface and structural elements of the roof, foundations and bearing walls, the repair of which shall be the responsibility of Lessor upon receipt of written notice that such a repair is necessary. The sole exclusion to the surface of the roof maintenance by Lessor is that Lessee shall pay the cost for any roof repair associated with any roof penetrations by Lessee, which penetrations, if at all, shall be made by a roofer selected by Lessor. It is the intention of the Parties that the terms of this Lease govern the respective obligations of the Parties as to maintenance and repair of the Premises, and they expressly waive the benefit of any statute now or hereafter in effect to the extent it is inconsistent with the terms of this Lease.

   7.3    **Utility Installations; Trade Fixtures.**

   [NOTE TO LESSOR: Section 7.3(a) and (b) deleted as they are replaced by Section 2.5]

   7.3 **Utility Installations; Trade Fixtures; Liens; Bonds.**

   (a) **Definitions.** The term **"Utility Installations"** refers to all floor and window coverings, air and/or vacuum lines, power panels, electrical distribution, security and fire protection systems, communication cabling, lighting fixtures, HVAC equipment, plumbing, and fencing in or on the Premises. The term **"Trade Fixtures"** shall mean Lessee's machinery and equipment that can be removed without doing material damage to the Premises.

INITIALS    INITIALS

©2001 - AIR COMMERCIAL REAL ESTATE ASSOCIATION            FORM STN-18-04/14E

Case: 19-30232    Doc# 78-8    Filed: 03/21/19    Entered: 03/21/19 18:07:46    Page 7 of 10

(b) **Consent.** Lessee shall not make any Alterations or Utility Installations to the Premises without Lessor's prior written consent, which will not be unreasonably withheld or delayed.

[SEE ALSO SECTION 2.5

(a) [OMITTED]

(b) [OMITTED]

(c) **Liens; Bonds.** Lessee shall pay, when due, all claims for labor or materials furnished or alleged to have been furnished to or for Lessee at or for use on the Premises, which claims are or may be secured by any mechanic's or materialmen's lien against the Premises or any interest therein. Lessee shall give Lessor not less than 10 days notice prior to the commencement of any work in, on or about the Premises, and Lessor shall have the right to post notices of non-responsibility. If Lessee shall contest the validity of any such lien, claim or demand, then Lessee shall, at its sole expense defend and protect itself, Lessor and the Premises against the same and shall pay and satisfy any such adverse judgment that may be rendered thereon before the enforcement thereof. If Lessor shall require, Lessee shall furnish a surety bond in an amount equal to 150% of the amount of such contested lien, claim or demand, indemnifying Lessor against liability for the same. If Lessor elects to participate in any such action, Lessee shall pay Lessor's attorneys' fees and costs.

7.4    **Ownership; Removal; Surrender; and Restoration.**

(a) **Ownership.** All Alterations and Utility Installations made by Lessee shall be the property of Lessee, but considered a part of the Premises. All Alterations, Trade Fixtures and Utility Installations, except as otherwise provided herein, shall, at the expiration or termination of this Lease, become the property of Lessor and be surrendered by Lessee with the Premises. For the purposes of this section, Alterations and Utility Installations shall include all refrigeration or cooling units, stoves, gas tops, microwaves, racking, counters, and other trade fixtures and kitchen related installations added by Lessee in building out a kitchen in the Premises.

(b) **Removal.** By delivery to Lessee of written notice from Lessor not earlier than 90 and not later than 30 days prior to the end of the term of this Lease, and subject to the terms of Section 7.4(a), Lessor may require that any designated moveable Trade Fixtures be removed by the expiration or termination of this Lease. Lessor may require the removal at any time of all or any part of any Alterations or Utility Installations made without therequired consent.

(c) **Surrender; Restoration.** Lessee shall surrender the Premises by the Expiration Date or any earlier termination date, with all of the improvements, parts and surfaces thereof broom clean and free of debris, and in good operating order, condition and state of repair, ordinary wear and tear excepted. "Ordinary wear and tear" shall not include any damage or deterioration that would have been prevented by good maintenance practice. Notwithstanding the foregoing, if this Lease is for 12 months or less, then Lessee shall surrender the Premises in the same condition as delivered to Lessee on the Start Date with NO allowance for ordinary wear and tear. Lessee shall repair any damage occasioned by the installation, maintenance or removal of Alterations, furnishings, and equipment as well as the removal of any storage tank installed by or for Lessee. Lessee shall remove from the Premises any and all Hazardous Substances brought onto the Premises by or for Lessee, or any third party (except Hazardous Substances which were deposited via underground migration from areas outside of the Premises) to the level specified in Applicable Requirements. Any personal property of Lessee not removed on or before the Expiration Date or any earlier termination date shall be deemed to have been abandoned by Lessee and may be disposed of or retained by Lessor as Lessor may desire. The failure by Lessee to timely vacate the Premises pursuant to this Paragraph 7.4(c) without the express written consent of Lessor shall constitute a holdover under the provisions of Paragraph 26 below. **[SEE ADDENDUM PARAGRAPH 58 REGARDING RESTORATION OBLIGATION]**

8.    **Insurance; Indemnity.**

8.1    **Payment of Premium Increases.**

(a) Lessee shall pay to Lessor any insurance cost increase ("Insurance Cost Increase") occurring during the term of this Lease. Insurance Cost Increase is defined as any increase in the actual cost of the insurance required under Paragraph 8.2(b), 8.3(a) and 8.3(b), over and above the Base Premium as hereinafter defined calculated on an annual basis. Insurance Cost Increase shall include but not be limited to increases resulting from the nature of Lessee's occupancy, any act or omission of Lessee, requirements of the holder of mortgage or deed of trust covering the Premises, increased valuation of the Premises and/or a premium rate increase. The parties are encouraged to fill in the Base Premium in paragraph 1.8 with a reasonable premium for the Required Insurance based on the Agreed Use of the Premises. If the parties fail to insert a dollar amount in Paragraph 1.8, then the Base Premium shall be the actual annual premium obtained for the Required Insurance as of the commencement of the Original Term for the Agreed Use of the Premises. In no event, however, shall Lessee be responsible for any portion of the increase in the premium cost attributable to liability insurance carried by Lessor under Paragraph 8.2(b) in excess of $2,000,000 per occurrence.

(b) Lessee shall pay any such Insurance Cost Increase to Lessor within 30 days after receipt by Lessee of a copy of the premium statement or other reasonable evidence of the amount due. If the insurance policies maintained hereunder cover other property besides the Premises, Lessor shall also deliver to Lessee a statement of the amount of such Insurance Cost Increase attributable only to the Premises showing in reasonable detail the manner in which such amount was computed. Premiums for policy periods commencing prior to, or extending beyond the term of this Lease, shall be prorated to correspond to the term of this Lease.

8.2    **Liability Insurance.**

(a) **Carried by Lessee.** Lessee shall obtain and keep in force a Commercial General Liability policy of insurance protecting Lessee and Lessor as an additional insured against claims for bodily injury, personal injury and property damage based upon or arising out of the ownership, use, occupancy or maintenance of the Premises and all areas appurtenant thereto. Such insurance shall be on an occurrence basis providing single limit coverage in an amount not less than $2,000,000 per occurrence with an annual aggregate of not less than $4,000,000. Lessee may meet these requirements with a combination of primary and umbrella coverages. Lessee shall add Lessor as an additional insured by means of an endorsement at least as broad as the Insurance Service Organization's "Additional Insured-Managers or Lessors of Premises" Endorsement. The policy shall not contain any intra-insured exclusions as between insured persons or organizations, but shall include coverage for liability assumed under this Lease as an "**insured contract**" for the performance of Lessee's indemnity obligations under this Lease. The limits of said insurance shall not, however, limit the

INITIALS 

 INITIALS

©2001 - AIR COMMERCIAL REAL ESTATE ASSOCIATION                    FORM STN-18-04/14E

liability of Lessee nor relieve Lessee of any obligation hereunder. Lessee shall provide an endorsement on its liability policy(ies) which provides that its insurance shall be primary to and not contributory with any similar insurance carried by Lessor, whose insurance shall be considered excess insurance only.

(b) Lessor shall maintain liability insurance as described in Paragraph 8.2(a), in addition to, and not in lieu of, the insurance required to be maintained by Lessee. Lessee shall not be named as an additional insured therein.

8.3 **Property Insurance - Building, Improvements and Rental Value.**

(a) Lessor shall maintain in effect "ISO causes of loss - special form" (formerly known as "all-risk") property insurance or its substantial equivalent, excluding the perils of earthquake and flood, for the full replacement cost (with deductibles and agreed amount and building ordinance coverage endorsements in amounts, form and substance satisfactory to Lessee) of the Building and any Alterations thereto (together with any builder's risk policy or endorsement described below, the "Premises Property Insurance Policy"). During any period that Lessee is constructing, installing or modifying Improvements or Alterations at the Premises, Lessee or its general contractor shall maintain a separate policy covering risks otherwise excluded under the so-called "builder's risk exclusion" of the "all risk" policy. The Premises Property Insurance Policy at all times shall name Lessee as an additional named insured and shall name Lessor's mortgagee or trust deed beneficiary as a loss payee, provided that Lessor's mortgagee shall be named as loss payee only if it has agreed in writing that, unless the Lease is terminated by Lessee as provided herein, the proceeds of the Premises Property Insurance Policy shall be made available to repair and restore the Building and any Alterations (which funds shall disbursed through a construction escrow at a reputable title insurance company selected by Lessor's mortgagee and approved in writing by Lessee, such approval not to be unreasonably withheld or delayed by Lessee). Lessee also shall be named as loss payee (with Lessor's mortgagee or trust deed beneficiary) until such time as Lessee has approved in writing a construction escrow, a construction escrow holder and construction escrow instructions governing the disbursement of the proceeds of the Premises Property Insurance Policy.

(a) **Building and Improvements.**

(b) **Rental Value.** The Lessor shall obtain and keep in force a policy or policies in the name of Lessor with loss payable to Lessor and any Lender, insuring the loss

of the full Rent for one year with an extended period of indemnity for an additional 180 days ("**Rental Value insurance**"). Said insurance shall contain an agreed valuation provision in lieu of any coinsurance clause, and the amount of coverage shall be adjusted annually to reflect the projected Rent otherwise payable by Lessee, for the next 12 month period. Lessee shall be liable for any deductible amount in the event of such loss.

(c) **Adjacent Premises.** If the Premises are part of a larger building, or of a group of buildings owned by Lessor which are adjacent to the Premises, the Lessee shall pay for any increase in the premiums for the property insurance of such building or buildings if said increase is caused by Lessee's acts, omissions, use or occupancy of the Premises.

8.4 **Lessee's Property; Business Interruption Insurance; Worker's Compensation Insurance.**

(a) **Property Damage.** Commencing on the Commencement Date and until lease Expiration Date, Lessee shall maintain in effect "ISO causes of loss - special form" (formerly known as "all-risk") property insurance or its substantial equivalent, including coverage for fire, lighting, vandalism, malicious mischief, and extended perils (but excluding the perils of earthquake and flood), for the full replacement cost of Lessee's trade fixtures, furniture and other personal property on the Premises.

(b) **Business Interruption.** Lessee shall obtain and maintain loss of income and extra expense insurance in amounts as will reimburse Lessee for direct or indirect loss of earnings attributable to all perils commonly insured against by prudent lessees in the business of Lessee or attributable to prevention of access to the Premises as a result of such perils.

(c) **Worker's Compensation Insurance.** Lessee shall obtain and maintain Worker's Compensation Insurance in such amount as may be required by Applicable Requirements. Such policy shall include a 'Waiver of Subrogation' endorsement. Lessee shall provide Lessor with a copy of such endorsement along with the certificate of insurance or copy of the policy required by paragraph 8.5.

(d) **No Representation of Adequate Coverage.** Lessor makes no representation that the limits or forms of coverage of insurance specified herein are adequate to cover Lessee's property, business operations or obligations under this Lease.

8.5 **Insurance Policies.** Insurance required herein shall be by companies maintaining during the policy term a "General Policyholders Rating" of at least A-, VII, as set forth in the most current issue of "Best's Insurance Guide", or such other rating as may be required by a Lender. Lessee shall not do or permit to be done anything which invalidates the required insurance policies. Lessee shall, prior to the Start Date, deliver to Lessor certificates with copies of the required endorsements evidencing the existence and amounts of the required insurance. No such policy shall be cancelable or subject to modification except after 30 days prior written notice to Lessor (provided, however, that if Lessee's insurers are not willing to provide such a provision in their policies, Lessee's obligation pursuant to the provisions of this sentence shall be to promptly (within two (2) business days of notification) notify Lessor of any such modification following Lessee's receipt of notification from its insurer of such modification). Lessee shall, at least 10 days prior to the expiration of such policies, furnish Lessor with evidence of renewals or "insurance binders" evidencing renewal thereof, or Lessor may order such insurance and charge the cost thereof to Lessee, which amount shall be payable by Lessee to Lessor upon demand. Such policies shall be for a term of at least one year, or the length of the remaining term of this Lease, whichever is less. If either Party shall fail to procure and maintain the insurance required to be carried by it, the other Party may, but shall not be required to, procure and maintain the same.

8.6 **Waiver of Subrogation.** Notwithstanding any other provision of this Lease to the contrary, Lessee and Lessor each hereby release and relieve the other, and waive their entire right to recover damages against the other, for loss of or damage to its property arising out of or incident to the perils required to be insured against herein. The effect of such releases and waivers is not limited by the amount of insurance carried or required, or by any deductibles applicable hereto. The Parties agree to have their respective property damage insurance carriers waive any right to subrogation that such companies may have against Lessor or Lessee, as the case may be, so long as the insurance is not invalidated thereby.

8.7 **Indemnity.** Subject to Section 8.6, and except for Lessor's gross negligence or willful misconduct, Lessee shall indemnify, protect, defend and hold harmless the Premises, Lessor and its agents, Lessor's master or ground lessor, partners and Lenders, from and against any and all claims, loss of rents and/or damages, liens, judgments, penalties, attorneys' and consultants' fees, expenses and/or liabilities arising out of, involving, or in connection with, the use and/or occupancy of the Premises by Lessee. If any action or proceeding is brought against Lessor by reason of any of the

INITIALS

INITIALS

©2001 - AIR COMMERCIAL REAL ESTATE ASSOCIATION                    FORM STN-18-04/14E

Case: 19-30232    Doc# 78-8    Filed: 03/21/19    Entered: 03/21/19 18:07:46    Page 9 of 10

foregoing matters, Lessee shall upon notice defend the same at Lessee's expense by counsel reasonably satisfactory to Lessor and Lessor shall cooperate with Lessee in such defense. Lessor need not have first paid any such claim in order to be defended or indemnified.

       8.8    **Exemption of Lessor and its Agents from Liability**. Notwithstanding the negligence or breach of this Lease by Lessor or its agents, neither Lessor nor its agents shall be liable under any circumstances for: (i) injury or damage to the person or goods, wares, merchandise or other property of Lessee, Lessee's employees, contractors, invitees, customers, or any other person in or about the Premises, whether such damage or injury is caused by or results from fire, steam, electricity, gas, water or rain, indoor air quality, the presence of mold or from the breakage, leakage, obstruction or other defects of pipes, fire sprinklers, wires, appliances, plumbing, HVAC or lighting fixtures, or from any other cause, whether the said injury or damage results from conditions arising upon the Premises or upon other portions of the building of which the Premises are a part, or from other sources or places, (ii) any damages arising from any act or neglect of any other tenant of Lessor or from the failure of Lessor or its agents to enforce the provisions of any other lease in the Project, or (iii) injury to Lessee's business or for any loss of income or profit therefrom. Instead, it is intended that Lessee's sole recourse in the event of such damages or injury be to file a claim on the insurance policy(ies) that Lessee is required to maintain pursuant to the provisions of this paragraph 8.

       8.9    **Failure to Provide Insurance.** Lessee acknowledges that any failure on its part to obtain or maintain the insurance required herein will expose Lessor to risks and potentially cause Lessor to incur costs not contemplated by this Lease, the extent of which will be extremely difficult to ascertain. Accordingly, for any month or portion thereof that Lessee does not maintain the required insurance and/or does not provide Lessor with the required binders or certificates evidencing the existence of the required insurance, the Base Rent shall be automatically increased, without any requirement for notice to Lessee, by an amount equal to 10% of the then existing Base Rent or $100, whichever is greater, and such increase will be effective until such time as Lessee delivers evidence of procurement of the insurance required herein. The parties agree that such increase in Base Rent represents fair and reasonable compensation for the additional risk/costs that Lessor will incur by reason of Lessee's failure to maintain the required insurance. Such increase in Base Rent shall in no event constitute a waiver of Lessee's Default or Breach with respect to the failure to maintain such insurance, prevent the exercise of any of the other rights and remedies granted hereunder, nor relieve Lessee of its obligation to maintain the insurance specified in this Lease.

9.    **Damage or Destruction.**

       9.1    **Definitions.**

         (a) **"Premises Partial Damage"** shall mean damage or destruction to the improvements on the Premises, other than Lessee Owned Alterations and Utility Installations, which can reasonably be repaired in 6 months or less from the date of the damage or destruction. Lessor shall notify Lessee in writing within 30 days from the date of the damage or destruction as to whether or not the damage is Partial or Total.

         (b) **"Premises Total Destruction"** shall mean damage or destruction to the Premises, other than Lessee Owned Alterations and Utility Installations, which cannot reasonably be repaired in 6 months or less from the date of the damage or destruction. Lessor shall notify Lessee in writing within 30 days from the date of the damage or destruction as to whether or not the damage is Partial or Total.

         (c) "**Insured Loss**" shall mean damage or destruction to improvements on the Premises, other than Lessee Owned Alterations and Utility Installations and Trade Fixtures, which was caused by an event required to be covered by the insurance described in Paragraph 8.3(a), irrespective of any deductible amounts or coverage limits involved.

         (d) **"Replacement Cost"** shall mean the cost to repair or rebuild the improvements owned by Lessor at the time of the occurrence to their condition existing immediately prior thereto, including demolition, debris removal and upgrading required by the operation of Applicable Requirements, and without deduction for depreciation.

         (e) **"Hazardous Substance Condition"** shall mean the occurrence or discovery of a condition involving the presence of, or a contamination by, a Hazardous Substance, in, on, or under the Premises which requires remediation.

       9.2    **Partial Damage - Insured Loss.** If a Premises Partial Damage that is an Insured Loss occurs, then Lessor shall, at Lessor's expense, repair such damage (but not Lessee's Trade Fixtures or Lessee Owned Alterations and Utility Installations) as soon as reasonably possible and this Lease shall continue in full force and effect; provided, however, that Lessee shall, at Lessor's election, make the repair of any damage or destruction the total cost to repair of which is $10,000 or less, and, in such event, Lessor shall make any applicable insurance proceeds available to Lessee on a reasonable basis for that purpose. Notwithstanding the foregoing, if the required insurance was not in force or the insurance proceeds are not sufficient to effect such repair, the Insuring Party shall promptly contribute the shortage in proceeds (except as to the deductible which is Lessee's responsibility) as and when required to complete said repairs. In the event, however, such shortage was due to the fact that, by reason of the unique nature of the improvements, full replacement cost insurance coverage was not commercially reasonable and available, Lessor shall have no obligation to pay for the shortage in insurance proceeds or to fully restore the unique aspects of the Premises unless Lessee provides Lessor with the funds to cover same, or adequate assurance thereof, within 10 business days following receipt of written notice of such shortage and request therefor. If Lessor receives said funds or adequate assurance thereof within said 10 business day period, the party responsible for making the repairs shall complete them as soon as reasonably possible and this Lease shall remain in full force and effect. If such funds or assurance are not received, Lessor may nevertheless elect by written notice to Lessee within 10 business days thereafter to: (i) make such restoration and repair as is commercially reasonable with Lessor paying any shortage in proceeds, in which case this Lease shall remain in full force and effect, or (ii) have this Lease terminate 30 days thereafter. Lessee shall not be entitled to reimbursement of any funds contributed by Lessee to repair any such damage or destruction. Premises Partial Damage due to flood or earthquake shall be subject to Paragraph 9.3, notwithstanding that there may be some insurance coverage, but the net proceeds of any such insurance shall be made available for the repairs if made by either Party.

       9.3    **Partial Damage - Uninsured Loss.** If a Premises Partial Damage that is not an Insured Loss occurs, unless caused by a negligent or willful act of Lessee (in which event Lessee shall make the repairs at Lessee's expense), Lessor may either: (i) repair such damage as soon as reasonably possible at Lessor's expense, in which event this Lease shall continue in full force and effect, or (ii) terminate this Lease by giving written notice to Lessee within 30 days after receipt by Lessor of knowledge of the occurrence of such damage. Such termination shall be effective 60 days following the date of such notice. In the event Lessor elects to terminate this Lease, Lessee shall have the right within 10 business days after receipt of the termination notice to give written notice to Lessor of Lessee's commitment to pay for the repair of such damage without reimbursement from Lessor. Lessee shall provide Lessor with said funds or satisfactory assurance thereof within 30 days after making such commitment. In such event this Lease

©2001 - AIR COMMERCIAL REAL ESTATE ASSOCIATION      FORM STN-18-04/14E

Case: 19-30232   Doc# 78-8   Filed: 03/21/19   Entered: 03/21/19 18:07:46   Page 10 of 10