1  DAVID B. GOLUBCHIK (SBN 185520)
   KRIKOR J. MESHEFEJIAN (SBN 255030)
2  LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
3  10250 Constellation Boulevard, Suite 1700
   Los Angeles, California 90067
4  Telephone: (310) 229-1234
   Facsimile: (310) 229-1244
5  Email: dbg@lnbyb.com; kjm@lnbyb.com

6  Attorneys for Urban Leaf Co. dba The Produce Company

7

8            UNITED STATES BANKRUPTCY COURT
             NORTHERN DISTRICT OF CALIFORNIA
9               SAN FRANCISCO DIVISION

10 In re:                          Case No. 19-30232

11 MUNCHERY, INC.,                 Chapter 11

12                                 **OPPOSITION TO OBJECTION OF THE**
         Debtor and Debtor-in-Possession.   **OFFICIAL COMMITTEE OF**
13                                 **UNSECURED CREDITORS TO CLAIM**
                                   **NO. 71 FILED BY URBAN LEAF CO.**
14                                 **DBA THE PRODUCE COMPANY**
15
                                   **[Declarations of Soo Ming Yee and Krikor**
16                                 **J. Meshefejian concurrently filed in support**
                                   **thereof]**
17
18                                 Hearing:
                                   Date:   April 2, 2020
19                                 Time:   10:00 a.m. (Pacific Time)
                                   Place:  U.S. Bankruptcy Court
20                                         450 Golden Gate Ave., 16th Fl.
                                         San Francisco, CA
21                                 Judge:  Hon. Hannah L. Blumenstiel
22
23
24       Urban Leaf Co. dba The Produce Company ("Produce Co") hereby submits this
25 opposition to the *Objection Of The Official Committee Of Unsecured Creditors To Claim No.*
   *71 Filed By Urban Leaf Co. D/B/A The Produce Company* (the "Claim Objection") [Doc #
26 297] filed by the Official Committee of Unsecured Creditors (the "Committee") appointed in
27 the chapter 11 bankruptcy case of Munchery, Inc. (the "Debtor").
28

# TABLE OF CONTENTS

I.      Introduction ........................................................................................................ 2

II.     Relevant Facts and Argument ........................................................................... 5

A.      Produce Co's Claims Constitute Valid Trust Claims Under PACA. ................. 5

B.      The Mere Lack Of A Written Pre-Transaction Agreement Does
        Not Result In The Loss Of Trust Rights. ......................................................... 6

C.      None Of The Cases Cited By The Committee Actually Support
        The Committee's Argument. ........................................................................... 13

D.      Produce Co Is Entitled To Its Attorneys' Fees And Costs ............................ 16

E.      The Court Should Order The Debtor's Estate To Pay Produce Co's
        Allowed Claim In Full From The Segregated PACA Funds ........................... 19

III.    Conclusion ....................................................................................................... 19

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*A.J. Rinella & Co., Inc. v. Bartlett (In re Bartlett)*
   367 B.R. 21 (Bankr. D. Mass. 2007) ..................................................................14, 15

*In re Atlanta Egg & Produce, Inc.*
   321 B.R. 746 (N.D. Ga. 2005) ........................................................... *passim*

*In re Atlantic Tropical Market Corporation*
   118 B.R. .........................................................................................................17

*Bowlin & Son, Inc. v. San Joaquin Food Service, Inc.*
   958 F.2d 938 (9th Cir. 1992) ..........................................................................11

*C.H. Robinson Co. v. B.H. Produce Co.*
   723 F.Supp. 785 (N.D. Ga. 1989) ..................................................................15

*In re Country Harvest Buffet Restaurants, Inc.*
   245 B.R. 650 (B.A.P. 9th Cir. 2000) .................................................................5

*Hull Co. v. Hauser's Foods, Inc.*
   924 F.2d 777 (8th Cir. 1991) ..........................................................................12

*Idahoan Fresh v. Advantage Produce, Inc.*
   157 F.3d 197 (3rd Cir. 1998) ........................................................... *passim*

*In re John DeFrancesco & Sons, Inc.*
   114 B.R. 335 (Bankr. D. Mass. 1990) ............................................................14

*In re Long John Silver's*
   230 B.R. 29 (Bankr. D. Del. 1999) ...................................................................5

*Middle Mountain Land and Produce Inc. v. Sound Commodities Inc.*
   307 F.3d 1220 (9th Cir. 2002) ........................................................................16

*In re Milton Poulos, Inc.*
   94 B.R. 648 (Bankr. C.D. Cal. 1988) ..............................................................17

*Patterson Frozen Foods, Inc. v. Crown Foods Intern., Inc.*
   307 F.3d 666 (7th Cir. 2002) ..........................................................................13

*Produce Alliance v. Let-Us Produce*
   776 F. Supp.2d 197 (E.D. Va. 2011) ................................................. *passim*

*Spada Properties, Inc. v. Unified Grocers, Inc.*
   121 F.Supp.3d 1070 ......................................................................................13

**Other State Cases**

*John B. Ordille, Inc. v. Lenny Perry's Produce, Inc.*
   2012 WL 5499652 ..................................................................................................................14

**Federal Statutes**

7 U.S.C.
   § 499a(b)(4)(A) ...............................................................................................................5
   § 499e(c)(3) .....................................................................................................................7
   § 499e(c)(3)(i) .................................................................................................................8
   § 499e(c)(3)(ii) ................................................................................................................8
   § 499e(c)(3)… ............................................................................................................2, 8
   § 499e(c)(4) ...................................................................................................3, 6, 10, 11

Perishable Agricultural Commodities Act, 1930
   § 5(c) (7 U.S.C. § 499e(c)) .............................................................................................6

**Other Authorities**

7 C.F.R. § 46.2(aa) ................................................................................................................8

7 C.F.R. § 46.46 ....................................................................................................................9

7 C.F.R. § 46.46(e)(1) ...........................................................................................................9

7 C.F.R. § 46.46(e)(1)-(2) .....................................................................................................9

7 C.F.R. § 46.46(e)(2) ...........................................................................................................9

7 C.F.R. § 46.46(e)(3) ...........................................................................................................9

# I.    Introduction

The Claim Objection is based on a misreading of the plain language of the PACA statute and fails to acknowledge or address caselaw that is directly and specifically on point. Based on the plain language of the PACA statute and applicable caselaw, the lack of a written pre-transaction agreement between Produce Co and the Debtor in and of itself does not result in the loss of PACA trust rights. Rather, the requirement for a written agreement, and whether or not one exists, goes toward, and is relevant to, determining whether Produce Co's notice of intent to preserve PACA trust rights was timely. Here, there is no dispute that notice of Produce Co's intent to preserve its PACA trust rights was timely, because such notice was provided concurrently with the delivery of goods, on the invoices issued to the Debtor, well within the deadline based on the default 10-day payment period specified in the PACA statute.

The PACA statute unequivocally provides, and applicable caselaw unequivocally holds, in the absence of a written pre-transaction agreement to extend the payment terms beyond the standard 10 days, with respect to those sellers whose invoices included payment terms other than 10 days but in no circumstance greater than 30 days (exactly the situation here), the listing of payment terms other than 10 days had no legal relevance, and the statutory notice of intent printed on each invoice is sufficient to preserve the PACA trust benefits. *See In re Atlanta Egg & Produce, Inc.*, 321 B.R. 746 (N.D. Ga. 2005); *see also Produce Alliance v. Let-Us Produce*, 776 F. Supp.2d 197 (E.D. Va. 2011); *see also Idahoan Fresh v. Advantage Produce, Inc.*, 157 F.3d 197 (3rd Cir. 1998).

Indeed, "[a] careful review of the so-called 'writing requirement' as set forth in the PACA statute reveals that Congress only referenced a writing extending payment terms within the context of defining the *alternative notice period*. Specifically, the statute defines timely notice as notice provided "within thirty calendar days (i) after expiration of the time prescribed by which payment must be made, as set forth in regulations issues by the Secretary [*or*] (ii) after expiration of such other time by which payment must be made, *as the parties have expressly agreed to in writing before entering into the transaction* ...." 7 U.S.C. § 499e(c)(3).... A plain reading of such language is that if the parties have not 'expressly agreed

in writing' to extend payment terms, then the second notice provision simply cannot apply. Accordingly, in such circumstances, the statutory text indicates that notice remains 'timely' if made in compliance with the default notice period set forth in subsection (i). As here, there is no allegation that any remaining claimant failed to timely provide notice within the default period, there appears to be no statutory basis for finding that the failure to reduce to writing an agreement to extend payment terms within the permissible 11-30 day window rises to the level of a disqualifying event." *Produce Alliance v. Let-Us Produce*, 776 F. Supp.2d 197, 203 - 204 (E.D. Va. 2011) (emphasis in original).

"Because there was no agreement…to extend the payment terms beyond the standard 10 days, the listing of payment terms other than 10 days had no legal relevance. No provision of the statute or regulations disqualifies a seller from PACA trust benefits simply because the seller unilaterally changed the payment term on the invoice to a period other than the standard 10-day period, but in no circumstance greater than 30 days. These sellers satisfied the notice requirement by including the requisite language on the fact of their invoices…, see 7 U.S.C. § 499e(c)(4), and the payment period on the invoices did not exceed thirty days. In compliance with 7 U.S.C. § 499e(c)(4), these sellers, therefore, properly preserved their PACA trust benefits." *In re Atlanta Egg & Produce, Inc.*, 321 B.R. 746, 755 (N.D. Ga. 2005).

Thus, "[t]he plain and unambiguous language of the section does not provide…that a written agreement is a precondition of being entitled to the statutory trust benefits. Rather, the requirement is relevant to assessing when prompt payment is due and therefore when notice is timely." *Idahoan Fresh v. Advantage Produce, Inc.*, 157 F.3d 197, 203 (3rd Cir. 1998).

It is undisputed that Produce Co timely complied with all PACA trust requirements, and timely provided notice of its intent to preserve PACA trust rights on its invoices to the Debtor, which invoices were always delivered to the Debtor with the fulfilled orders. Thus, without a written pre-transaction agreement specifying terms of the net 14 days and net 21 days, Produce Co did not lose its PACA trust rights. The effect of a lack of a written pre-transaction agreement is simply that Produce Co's 30-day deadline to provide notice of its intent to preserve trust rights is not based on the net 14 or net 21-day invoice terms, but rather,

on the default 10-day term provided by the statute. Because Produce Co provided notice of its intent to preserve trust rights within the required noticing window based on the 10-day term discussed in the PACA statute, Produce Co properly preserved its trust rights. Neither the statute nor the directly on point caselaw provides that the mere lack of a written pre-transaction agreement in and of itself results in a loss of PACA rights.

Additionally, Produce Co is entitled to its reasonable attorney's fees and costs under the PACA statute (this is not disputed), and its counsel's fees and expenses are wholly reasonable under the circumstances. Produce Co was required to take proactive measures to protect its rights. Produce Co's efforts resulted in the creation and maintenance of an "adequate protection" fund to which all PACA creditors could look to repayment of their PACA claims. Produce Co attempted to settle its disputes with the Debtor (which has not participated in any settlement discussions) and the Committee to avoid legal fees and costs.

Produce Co and the Committee were unable to settle (in Produce Co's opinion, primarily because of the Committee's flawed position regarding the lack of a written pre-transaction agreement). The Committee then filed the Claim Objection, which Produce Co respectfully submits is wholly without merit, is based on a total misreading of the applicable statute and regulations, and completely ignores caselaw that is directly on point. Thus, Produce Co's legal fees and expenses were necessitated by the circumstances of this case, and the need for Produce Co to protect its rights. The fact that Produce Co was required to incur a significant amount of fees in protecting its rights does not render the fees unreasonable, and that is not the test. The Court should consider what Produce Co was required to do in this case in order to protect its rights – oppose the Debtor's cash collateral motion and sale motion because neither provided adequate protection to PACA creditors; negotiate a cash reserve for the benefit of PACA creditors because none was offered, or provided, in the first place; and respond to a Claim Objection that, when considering the caselaw that is directly on point, should have never been brought in the first place. Under the circumstances, Produce Co submits that its attorney's fees and costs are wholly reasonable.

The debt owed to Produce Co is a significant, and critical, amount to Produce Co (which is a relatively small business). Produce Co respectfully requests that the Court overrule the Claim Objection and order the payment of Produce Co's PACA claim from the PACA claim fund created for such purpose, without further delay.

## II. Relevant Facts and Argument

**A. Produce Co's Claims Constitute Valid Trust Claims Under PACA.**

In order to become a perfected PACA trust beneficiary, a PACA claimant must meet three requirements. First, the goods in question must be perishable agricultural commodities. Second, the commodities must have been received by a commission merchant, a dealer, or broker. Third, the claimant must have provided written notice of its intent to preserve its rights under PACA within thirty days after payment became due. *In re Long John Silver's,* 230 B.R. 29, 32 (Bankr. D. Del. 1999); *In re Country Harvest Buffet Restaurants, Inc*., 245 B.R. 650, 653 (B.A.P. 9th Cir. 2000). It is undisputed that all of these requirements have been met with respect to Produce Co's claims.

First, Produce Co sold fresh vegetables and fruits to the Debtor. The term "perishable agricultural commodities" is defined, in relevant part, as "any of the following, whether or not frozen or packed in ice: Fresh fruits and fresh vegetables of every kind and character." *See* 7 U.S.C. § 499a(b)(4)(A). The Committee does not dispute this.

Second, the goods were received by the Debtor, which is a dealer under the PACA statute.[1] Moreover, the Debtor was operating under a valid PACA license and therefore voluntarily subjected itself to PACA and its statutory trust provisions. As such, the Debtor is a statutory trustee under PACA and is obligated to maintain and preserve the PACA trust assets

---

[1] At all relevant time, the Debtor was "engaged in the business of buying or selling in wholesale or jobbing quantities…any perishable agricultural commodity in interstate or foreign commerce." *See* 7 U.S.C. 499a(b)(6)); *see also*, *In re Country Harvest Buffet Restaurants, Inc*., 245 B.R. 650, 653 - 656 (B.A.P. 9th Cir. 2000) (holding that restaurant chain that purchases wholesale quantities of produce for use in the preparation of meals served to customers is a "dealer" under the PACA statute). Furthermore, any person not considered a "dealer" under clauses (A), (B), and (C) may elect to secure a license under the provisions of Section 3 of the PACA statute, and in such case and while the license is in effect such person shall be considered as a "dealer."

5

for the benefit of all validly perfected PACA trust beneficiaries such as the Debtor. The Committee does not dispute this.

Third, Produce Co preserved and perfected its PACA trust rights by using ordinary and usual billing or invoice statements in compliance with 7 U.S.C. § 499e(c)(4), which provides that any licensee who includes the following statement on the face of its invoices will have perfected its PACA trust rights, and the Committee does not dispute this:

The perishable agricultural commodities listed on this invoice are sold subject to the statutory trust authorized by section 5(c) of the Perishable Agricultural Commodities Act, 1930 (7 U.S.C. § 499e(c)). The seller of these commodities retains a trust claim over these commodities, all inventories of food or other products derived from these commodities, any receivables or proceeds from the sale of these commodities until full payment is received.

7 U.S.C. § 499e(c)(4).

All of the invoices that comprise Produce Co's claims against the Debtor include the required language verbatim. Moreover, all of the invoices were delivered to the Debtor concurrently with the fulfillment of the Debtor's orders. Accordingly, Produce Co qualifies as a trust beneficiary under PACA for all transactions that are the subject of the invoices attached to Claim No. 71.

The Committee does not dispute any of this. Rather, the Committee contends that Produce Co "is not entitled to security under PACA as the payment terms of the supporting invoices are not compliant with the 10-day default payment terms required to preserve the benefits of the PACA trust and there is no pre-transaction written agreement that would otherwise permit a variance to the 'PACA prompt' payment terms." *See* Claim Objection, p. 3, ll. 21 – 25. However, the Committee's analysis of the PACA statute and its requirements, is fatally flawed, because it ignores the actual language of the statute and applicable regulations, as well as caselaw directly on point.

**B.     The Mere Lack Of A Written Pre-Transaction Agreement Does Not Result In The Loss Of Trust Rights.**

The PACA statute primarily at issue in this matter is 7 U.S.C. § 499e(c)(3), which provides:

> The unpaid supplier, seller, or agent shall lose the benefits of such trust unless such person has given written notice of intent to preserve the benefits of the trust to the commission merchant, dealer, or broker within thirty calendar days (i) after expiration of the time prescribed by which payment must be made, as set forth in regulations issued by the Secretary, (ii) after expiration of such other time by which payment must be made, as the parties have expressly agreed to in writing before entering into the transaction, or (iii) after the time the supplier, seller, or agent has received notice that the payment instrument promptly presented for payment has been dishonored. The written notice to the commission merchant, dealer, or broker shall set forth information in sufficient detail to identify the transaction subject to the trust. When the parties expressly agree to a payment time period different from that established by the Secretary, a copy of any such agreement shall be filed in the records of each party to the transaction and the terms of payment shall be disclosed on invoices, accountings, and other documents relating to the transaction.

*See* 7 U.S.C. § 499e(c)(3).

In *Produce Alliance v. Let-Us Produce*, 776 F.Supp.2d 197, 201-202 (E.D. Va. 2011), the district court analyzed this PACA statute, as well as related statutes and regulations, and caselaw, in connection with determining "the legal impact of a produce supplier extending credit for periods between 11 and 30 days absent a prior written agreement to modify the default 10-day PACA credit period." *Id.* at 203. That is exactly the scenario here, where Produce Co's invoices to the Debtor provided for payment terms of either "Net 14" or "Net 21" but no written pre-transaction agreement exists.

In *Produce Alliance*, the defendants, like the Committee here, "argue that the extension of credit for periods between 11 and 30 days without a prior written agreement automatically invalidates otherwise valid PACA trust rights". *Id.*

In *Produce Alliance*, the district court found that "[a] careful review of the so-called 'writing requirement' as set forth in the PACA statute reveals that Congress only referenced a writing extending payment terms within the context of defining the *alternative notice period*. Specifically, the statute defines timely notice as notice provided "within thirty calendar days (i) after expiration of the time prescribed by which payment must be made, as set forth in regulations issues by the Secretary [*or*] (ii) after expiration of such other time by which

7

payment must be made, *as the parties have expressly agreed to in writing before entering into the transaction* ....." 7 U.S.C. § 499e(c)(3).... A plain reading of such language is that if the parties have not 'expressly agreed in writing' to extend payment terms, then the second notice provision simply cannot apply. Accordingly, in such circumstances, the statutory text indicates that notice remains 'timely' if made in compliance with the default notice period set forth in subsection (i). As here, there is no allegation that any remaining claimant failed to timely provide notice within the default period, there appears to be no statutory basis for finding that the failure to reduce to writing an agreement to extend payment terms within the permissible 11-30 day window rises to the level of a disqualifying event." *Id.* at 203-204.

As set forth in *Produce Alliance*, and applicable here, "an unpaid produce supplier that qualifies for PACA trust protection shall lose the benefits of such trust if *timely notice* of an intent to preserve trust benefits is not made. It is undisputed that the 'default' prompt payment period applicable to the instant dispute is 10 days from the acceptance of a produce shipment. As stated in subsection § 499e(c)(3)(i), notice of intent to preserve trust benefits is timely if made within 30 days after expiration of the 10–day default payment period. *See* 7 C.F.R. § 46.2(aa), 7 U.S.C. § 499e(c)(3)(i). In the alternative, if the parties entered into a *written* agreement *prior to* conducting a produce transaction, notice is timely if made within 30 days after the expiration of the payment period set forth in the writing. 7 U.S.C. § 499e(c)(3)(ii)." *Id.* at 202.

Further, "[a]s promulgated by the United States Department of Agriculture ('USDA'), an excerpt from the applicable regulations provides as follows:

(e) Prompt payment and eligibility for trust benefits.

> (1) The times for prompt accounting and prompt payment are set out in § 46.2(z) and (aa). Parties who elect to use different times for payment must reduce their agreement to writing before entering into the transaction and maintain a copy of their agreement in their records, and the times of payment must be disclosed on invoices, accountings, and other documents relating to the transaction.

> (2) The maximum time for payment for a shipment to which a seller, supplier, or agent can agree *and still qualify for coverage under the trust* is 30

days after receipt and acceptance of the commodities as defined in § 46.2(dd) and paragraph (a)(1) of this section.

7 C.F.R. § 46.46(e)(1)-(2) (emphasis added)."

*See Produce Alliance*, 776 F. Supp. at 202.

The *Produce Alliance* court went on to state that "[a]s highlighted in the regulation, an unpaid supplier that otherwise qualifies for PACA trust protection loses the benefits of the trust if such supplier *agrees to extend credit for more than 30 days* beyond acceptance of the perishable commodities. Such express invalidation of the trust in subsection (e)(2) [of 7 C.F.R. § 46.46] is similar to the statutory provision invalidating the trust in the absence of timely notice. It is thus notable that subsection (e)(1) [of 7 C.F.R. § 46.46], discussing the so-called 'writing requirement,' does not similarly incorporate language indicating that a failure to comply with such provision invalidates the PACA trust." *Id.* at 202.

"Notably, not only does the statute make clear that Congress knew how to draft a mandatory requirement that, if violated, invalidates PACA trust protections, but the regulations make clear that the USDA similarly knew how to draft a mandatory requirement, as the *next two subsections* of the regulations following the 'writing requirement' discuss parameters that are expressly identified as necessary prerequisites to qualifying for trust protection. *Compare* 7 C.F.R. § 46.46(e)(1) (indicating that agreements to modify payment periods must be in writing, but failing to state the penalty for non-compliance), *with* 7 C.F.R. § 46.46(e)(2) (stating that to '*qualify for coverage* under the trust,' a seller may not extend credit beyond thirty days), and 7 C.F.R. § 46.46(e)(3) ('The trust provisions *do not apply to* [listed transactions….'). 'Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally, and purposely in the disparate inclusion or exclusion.' Accordingly, the court rejects defendants' characterization of the 'writing requirement' set forth in subsection (e)(1) of the regulations as a prerequisite to qualifying for PACA trust rights." *Id.* at 204 (internal citations omitted) (emphasis in original).

The *Produce-Alliance* court ultimately found that "the majority of the claimants seeking PACA protection in this action admittedly have no prior written agreements with

defendant Let–Us Produce. However, as discussed above, such claimants nevertheless qualify for PACA trust benefits as such sellers did not extend credit beyond 30 days, and they notified defendant Let–Us Produce of their intent to claim PACA rights through timely invoice notice." *Id.* at 211.

Similarly (if not exactly), here, there is no dispute that Produce Co did not extend credit for beyond thirty days, and there is no dispute that Produce Co timely provided notice within the applicable notice period – indeed, Produce Co provided notice of its intent to preserve its PACA trust rights concurrent with invoicing the Debtor and delivering goods to the Debtor. Additionally, there is no allegation that Produce Co failed to comply with any other PACA requirement. The only allegation made by the Committee is the absence of a written pre-transaction agreement, which, even if true, merely dictates the timing of the required notice under the PACA statute, and does not result in the outright, *per se* loss of Produce Co's PACA trust rights, since Produce Co timely complied with all notice provisions of the PACA statute.

*In re Atlanta Egg & Produce, Inc.*, 321 B.R. 746 (N.D. Ga. 2005), also unequivocally supports entry of an order overruling the Claim Objection. There, the district court addressed the issue of "whether the Bankruptcy Court erred as a matter of law in finding that the…creditors of Atlanta Egg preserved their benefits in the PACA trust, thereby perfecting valid PACA trust claims, ***when the creditors gave notice of intent to preserve their trust benefits by means of their invoices pursuant to 7 U.S.C. § 499e(c)(4), but listed payment terms other than the regulatory 10 days on their invoices without a written agreement between the parties.***" *Id.* at 752 (emphasis added). That is precisely the factual scenario in this case, where: (1) Produce Co gave notice of its intent to preserve its trust benefits by means of its invoices pursuant to 7 U.S.C. § 499e(c)(4); and (2) listed payment terms other than the regulatory 10 days on its invoices without, according to the Committee, a written agreement between the parties.

In *Atlanta Egg*, the appellants, like the Committee here, incorrectly argued that "any payment terms other than ten days must be agreed to in writing by the parties prior to the transaction and maintained in their files in order to qualify as proper PACA notice under the

statute. If payment terms other than 10 days are not agreed to in writing by the parties, and are nonetheless incorporated into an invoice, such invoice cannot preserve the PACA trust pursuant to 7 U.S.C. § 499e(c)(4)." *Id.* at 752 – 753.

In *Atlanta Egg*, the appellants incorrectly contended, like the Committee here, that "*because Appellees and Atlanta Egg never entered into a written pre-transaction payment agreement and the terms of payment appearing on the invoices at issue* either (a) *contain payment terms other than 10-days*, (b) do not list a payment term at all, or (c) list a payment term of 'PACA', *the notice of intent to preserve PACA rights is incomplete and ineffective.*" *Id.* at 752 – 753 (emphasis added).

The *Atlanta Egg* court found that, with respect to invoices "that included payment terms other than 10 days, this Court also concludes that those sellers properly preserved the benefits of the trust…. *Because there was no agreement…to extend the payment terms beyond the standard 10 days, the listing of payment terms other than 10 days had no legal relevance. No provision of the statute or regulations disqualifies a seller from PACA trust benefits simply because the seller unilaterally changed the payment term on the invoice to a period other than the standard 10-day period, but in no circumstance greater than 30 days. These sellers satisfied the notice requirement by including the requisite language on the fact of their invoices to Atlanta Egg, see 7 U.S.C. § 499e(c)(4), and the payment period on the invoices did not exceed thirty days. In compliance with 7 U.S.C. § 499e(c)(4), these sellers, therefore, properly preserved their PACA trust benefits.*" *Id.* at 755 (emphasis added).[2]

*Idahoan Fresh v. Advantage Produce, Inc.*, 157 F.3d 197 (3rd Cir. 1998) is another case similar to this case. There, the produce seller and buyer failed to enter into a written agreement

---

[2] The *Atlanta Egg* court considered, and correctly distinguished, the Ninth Circuit case of *Bowlin & Son, Inc. v. San Joaquin Food Service, Inc.*, 958 F.2d 938 (9th Cir. 1992), an inapposite and inapplicable case in which a written pre-transaction agreement did exist between the parties, but the agreed upon payment time period was not disclosed on the invoices. There, the Ninth Circuit found that, where a written pre-transaction agreement existed but the seller failed to include the agreed upon payment terms in invoices, the seller was divested of trust benefits. Here, there does not appear to be a written pre-transaction agreement between Produce Co and the Debtor. Moreover, if there is such a written agreement, the agreed upon terms are disclosed on the invoices.

extending the payment term, and twenty-eight of the thirty outstanding invoices issued by the seller stated "Payment Terms: Net 20 days" while the remaining two invoices contained no payment term.[3] *Id.* at 200. The issue in *Idahoan Fresh* was "[w]hether a seller also forfeits its right to participate in the PACA trust if it fails to reduce to writing an agreement to extend the payment term." *Id.* According to the *Idahoan Fresh* court, ***"[t]he plain and unambiguous language of the section does not provide…that a written agreement is a precondition of being entitled to the statutory trust benefits. Rather, the requirement is relevant to assessing when prompt payment is due and therefore when notice is timely.*** *Id.* at 203 (emphasis added). In other words, the writing requirement "relates to the enforceability of an agreement to extend a payment term, but does not disqualify an unpaid seller from receiving trust benefits." *Id.* at 204.

In *Idahoan Fresh*, the court found that the seller had satisfied the notice requirement by including the requisite language on the face of the invoices to the buyer (which is exactly what Produce Co has done), and did not agree to a payment period over thirty days (just like Produce Co). Thus, the *Idahoan Fresh* court concluded that the failure to reduce to writing an agreement to extend the payment term did not disqualify the seller from its share in a pro-rata distribution of the statutory trust. *Id.* at 204 – 205. *See also Hull Co. v. Hauser's Foods, Inc.*, 924 F.2d 777 (8th Cir. 1991) (holding that oral agreements between produce sellers and buyers as to payment terms beyond the standard ten days after delivery had no effect on the seller's right to trust protection under PACA).

<u>**None**</u> of these cases, which are directly on point, have been considered by the Committee, and <u>**all**</u> of these cases support the conclusion that Produce Co did not lose its trust rights merely because, according to the Committee, it did not have a written pre-transaction agreement with the Debtor. This is because irrespective of whether such a written agreement exists, Produce Co provided timely notice of its intent to preserve trust rights.

---

[3] In this case, Produce Co's invoices state "Net 21" and "Net 14" (all of which are within the 30 day PACA limit for extending credit).

**C.** **None Of The Cases Cited By The Committee Actually Support The Committee's Argument.**

**None** of the cases cited by the Committee stand for the proposition that Produce Co lost its trust benefits under PACA by not having a written pre-transaction agreement but including in its invoice net 14 days or net 21 days payment terms. Indeed, all of the cases cited by the Committee either (1) involve situations where payment terms were extended beyond 30 days – a clear "no-no" under the PACA statute[4]; (2) do not actually address the issues addressed by the *Produce Alliance*, *Atlanta Egg*, and *Idahoan Fresh*; or (3) support the analyses of *Produce Alliance*, *Atlanta Egg*, and *Idahoan Fresh*.

For example, in *Spada Properties, Inc. v. Unified Grocers, Inc.*, 121 F.Supp.3d 1070 (*see* Claim Objection, p. 4, l. 26 – p. 5, l. 4), the court found that a course of dealing existed between a seller and buyer that reflected an implicit, pre-default agreement to accept payment *more than 30 days* after receipt of produce in violation of PACA's strict prompt-payment eligibility requirements and thus the seller waived PACA trust protections. In this case, there is no question that no agreement existed between Produce Co and the Debtor which extended payment terms more than 30 days after receipt of produce.

As another example, in *Patterson Frozen Foods, Inc. v. Crown Foods Intern., Inc.*, 307 F.3d 666, 669 (7th Cir. 2002), cited by the Committee for the general proposition that, "in order for a PACA claim to be secured by a PACA trust, it must meet 'strict eligibility requirements'" (*see* Claim Objection, p. 4, ll. 21 – 22), the court held that a post-default agreement between a seller and a buyer that extends the buyer's time for payment *beyond 30 days* results in the loss of trust rights. Here, there is no post-default agreement extending payment terms beyond 30 days. Indeed, the Committee asserts that no agreements exist at all.

---

[4] "[T]he regulations establish 30 days as the maximum permissible period to extend credit. Like the statute, the regulations are clear regarding the failure to comply with such limitation: The maximum time that parties can agree to extend payment such that seller can '*still qualify for coverage under the trust* is 30 days after receipt and acceptance' of produce." *See Produce Alliance*, 776 F.Supp.2d at 203, *citing* 7 C.F.R. § 46.46(e)(2) (emphasis in original). Here, Produce Co never extended credit beyond 21 days.

In *John B. Ordille, Inc. v. Lenny Perry's Produce, Inc.*, 2012 WL 5499652 (W.D.N.Y. Nov. 12, 2012 (*see* Claim Objection, p. 5, ll. 11 -18), the court found that the seller had not preserved its trust rights "because it extended to Defendant, via its invoices, a payment term in excess of 30 days." *Id.* at *3. Here, of course, Produce Co has not violated the clear PACA mandate that credit not be extended beyond thirty days (which the PACA statute and regulations specifically indicate results in the loss of PACA trust benefits).

In re *John DeFrancesco & Sons, Inc.*, 114 B.R. 335 (Bankr. D. Mass. 1990) another case cited by the Committee (*see* Claim Objection, p. 5, ll. 18 – 24), actually highlights the fact that a written pre-transaction agreement requirement is relevant with respect to the timeliness of a PACA seller's notice of intent to preserve PACA rights, but the absence thereof does not in and of itself result in the loss of PACA trust rights. There, a seller's invoices contained the word "Terms" printed on them, and "30 days" typewritten. *Id.* at 337. There, there was no evidence of a written pre-transaction agreement. *Id.* There, the debtor argues that the seller's "notice was defective and that therefore the filing was invalid." *Id.* There, the critical, and fatal, fact for the seller, was that the seller failed to provide timely, or any, *notice* of its intent to preserve its PACA rights, and therefore, did not meet the requirements of the statute. *Id.* at 337 – 338. Here, there is no question that Produce Co provided complete and timely notice of its intent to preserve its trust rights (since each invoice itself contains the statutorily required notice language).

In *A.J. Rinella & Co., Inc. v. Bartlett (In re Bartlett)*, 367 B.R. 21 (Bankr. D. Mass. 2007) (*see* Claim Objection, p. 6, ll. 22 – p. 7, l. 18), the buyer argued that the seller failed to strictly comply with the PACA statute and regulations, and therefore failed to preserve it trust benefits, because the seller included a payment term on the invoices ("Net 21-days"), without first obtaining a sufficient written agreement to alter PACA's default 10-day payment provision. *Id.* at 24 – 25. The seller raised two arguments in rebuttal: (1) that a cover letter and credit application, taken together, constitute a sufficient written agreement under PACA; and (2) even if the cover letter is insufficient to constitute a "written agreement" under PACA, inclusion of the "Net-21 days" term on the invoices does not violate the PACA statute or

14

regulations and does not negate the PACA trust; instead, "the 21-day term should simply be deemed irrelevant; the effect of which would only be to imply PACA's default 10-day payment period upon the transactions." *Id.* at 25.

In *In re Bartlett,* the court found that the cover letter and credit application satisfied the written agreement requirements, and did not reach, or address, the issue of whether the seller preserved its PACA trust rights even if it did not have a written pre-transaction agreement. *Id.* at 31-32.[5] Moreover, the court in *In re Bartlett* did not hold that the absence of a written pre-transaction agreement would have resulted in the loss of PACA trust rights to the seller. Rather, the court indicated that "the purpose of the writing requirement is to preclude uncertainties as to the applicable payment terms **and the resulting deadline for filing a PACA notice**" (*id.* at 31), not, as the Committee contends, to cause a loss in PACA trust benefits merely because of the absence of a written agreement.

In *C.H. Robinson Co. v. B.H. Produce Co.*, 723 F.Supp. 785 (N.D. Ga. 1989) (*see* Claim Objection, p. 7, l. 19 – p. 8, l. 3), the court found that, as a result of the lack of a written pre-transaction agreement between one seller and the buyer, the notices to reserve trust benefits were *untimely*. *Id.* at 797. There, the court did not hold that the lack of a written agreement in and of itself resulted in a loss of PACA trust rights where the invoices included payment terms of 30 days. Rather, the court evaluated the timeliness of the notice of intent to preserve PACA rights in the scenario where a written agreement did not exist (which would have extended the notice deadline had it existed). Furthermore, the C.H. Robinson court found that other sellers which also did not have written agreements nevertheless provided timely notice and preserved their trust rights. *Id.* at 796 – 798. Similarly, here, there is no dispute that Produce Co provided timely notice of its intent to preserve PACA trust rights, because Produce Co did so on each of its invoices concurrently with delivery of produce to the Debtor.

---

[5] Had the *Bartlett* court reached this issue, *Atlanta Egg and Idahoan Fresh* would have been directly on point and relevant to the Court's analysis, and provided the answer to the issue (*Produce Alliance* was decided after *Bartlett*, but it too, would answered the issue for the *Bartlett* court).

1    Even the Committee's reference to the Department of Agriculture's website does not

2    support the Committee's position in this case. *See* Claim Objection, p. 5., l. 24 – p. 6, l. 6. The

3    excerpt of the website cited by the Committee does not say that "unless a pre-transaction

4    written agreement is entered into between the parties extending the payment terms beyond 10

5    days, a supplier will not be entitled to the extraordinary benefits of the PACA trust" which is

6    the proposition for which the Committee cites the website. The website, and the Committee's

7    own provided language actually merely provides, with respect to preserving trust rights, that

8    "…to qualify for trust protection, the agreed-upon payment term cannot exceed 30 days from

9    the date of acceptance." As set forth above, such is not the case here, nor does the Committee

10   contend that the payment terms between Produce Co and the Debtor exceeded 30 days.

11   **D.      Produce Co Is Entitled To Its Attorneys' Fees And Costs**

12        The Committee contends that "[a]s Claimant is not entitled to PACA trust security,

13   there can be no basis for Claimant's inclusion of attorney's fees in the Claim." As set forth

14   above, Produce Co's claims are subject to a PACA trust in favor of Produce Co.

15        The Committee also concedes that, if Produce Co's claims are subject to a PACA trust

16   in favor of Produce Co, Produce Co is entitled to its reasonable attorneys' fees and costs.[6]

17        Produce Co respectfully submits that all of its attorneys' fees and costs, which continue

18   to accrue,[7] are reasonable and appropriate. Unfortunately, in this case, the Debtor failed to take

19   into account, provide for, or even disclose, the existence and extent of claims secured by a

20   PACA trust, until Produce Co got involved in this case. Prior to Produce Co's involvement,

21   the Debtor's filings, including its Schedules of Assets and Liabilities, cash collateral motion, or

22   sale motion did not disclose the existence and extent of potential PACA claims, or provide

23   adequate protection of such claims in the context of using cash collateral or selling assets prior

24

25

26

27   [6] The Ninth Circuit Court of Appeals held in *Middle Mountain Land and Produce Inc. v. Sound Commodities Inc.*, 307 F.3d 1220 (9th Cir. 2002), that a seller's contractual right to

28   attorney's fees and interest is included within a valid PACA claim.
     [7] Interest on Produce Co's PACA claims also continues to accrue.

16

to a determination regarding whether such funds or assets belonged to a PACA trust (which under the law is the Debtor's burden to show).[8]

As a result, Produce Co was required to take proactive measures to ensure that its rights, and, consequently, the rights of other PACA creditors, were protected. For example, Produce Co filed an opposition to the Debtor's cash collateral motion, and an opposition to the Debtor's sale motion, in an effort to bring to the Court's attention the existence of PACA claims and the need to address such claims. This required Produce Co's counsel to review extensive pleadings and agreements, and prepare extensive, detailed, responses and a detailed declaration (*see* Docket Nos. 98, 99, 15, and 106). Produce Co's efforts led to the Debtor's agreement to provide adequate protection to PACA creditors, in the form of a cash reserve of $350,000 of sale proceeds for the potential benefit of PACA creditors. Indeed, some PACA creditors have already received payments of their settled claims from such funds. Produce Co respectfully submits that, were it not for its and its counsel's efforts, it is unlikely that any funds would have been reserved, or any adequate protection would have been provided, to any PACA creditor.

Furthermore, Produce Co submits that the Committee's analysis of Produce Co's attorneys' fees and costs is based on a misreading of the fee application information attached to Produce Co's Claim No. 71. For example, the Committee contends that "the detailed time records…include 1.6 hours for 'analysis of amended schedule D' (4/16/2019)[.]" *See* Claim Objection, p. 9, ll. 3 – 4. This is incorrect. There is no such 1.6 hour time entry for reviewing

---

[8] *All* assets of a produce buyer, such as the Debtor, are presumed to be impressed with the PACA trust and the burden to prove that a particular asset is not impressed with the trust falls squarely on the Debtor. *In re Atlantic Tropical Market Corporation*, 118 B.R. at 142 ("[T]he burden rests upon the purchaser to determine when the trust fund actually began and the duration of the fund. Otherwise it will be assumed the trust fund is established upon commencement of the business of buying and selling [perishable agricultural commodities] and is continuously in existence throughout the life of purchaser's business. Also, any assets purchased while the fund is in existence will be assumed to be purchased with trust fund assets and will therefore become part of the trust fund assets, available to satisfy the claims of perfected unpaid suppliers."); *In re Milton Poulos, Inc.* 94 B.R. 648, 652-653 (Bankr. C.D. Cal. 1988) ("[T]he debtor or bankruptcy trustee, rather than the trust beneficiary, is responsible for determining which assets, if any, are not subject to the trust.").

the Debtor's amended Schedule D and this contention by the Committee appears to simply be as a result of misreading the specific line items of the fee application attached as Exhibit "5" to Claim No. 7. There is, however, a 0.1 hour time entry for such task, which was necessary to determine whether the Debtor had disclosed any claims secured by a PACA trust as a Schedule D claim (the Debtor did not), when the Debtor's initial Schedule D had not.[9] Other fees incurred, such as monitoring the chapter 11 case, reviewing monthly operating reports in order to monitor the $350,000 segregated account established for the benefit of PACA creditors, reviewing case pleadings to determine what impact, if any, such pleadings had on Produce Co's PACA claim, and reviewing other claims to determine the total extent of PACA claims in this case, are all reasonable activities and directly relate to the enforcement of Produce Co's claims against the Debtor.

Moreover, Produce Co has incurred additional fees and expenses in connection with responding to the Committee's Claim Objection, researching caselaw directly on point that was not discussed in the Claim Objection, and reviewing the cases cited by the Committee (none of which support denial of Claim No. 71). Produce Co also retained and sought the advice of a legal expert in the PACA field, who provided Produce Co with information and advice regarding the Claim Objection.

Finally, Produce Co will continue to incur attorneys' fees and costs, and its claims will continue to accrue interest, to the extent its claims remain unpaid.

Produce Co has attempted to settle its disputes with the Debtor (which has not participated in any settlement discussions) and the Committee to avoid legal fees and costs. Produce Co and the Committee were unable to settle (in Produce Co's opinion, primarily because of the Committee's flawed position regarding the lack of a written pre-transaction agreement). The Committee then filed the Claim Objection, which Produce Co respectfully submits is wholly without merit, is based on a total misreading of the applicable statute and

---

[9] Immediately above the 0.1 hour time entry for such task is a 1.6 hour time entry for "Preparation of pleading File Opposition To Sale Motion And Request For Judicial Notice In Support Of Opposition" at $250 per hour. Thus, it appears that the Committee ascribed the 1.6 hour time entry to the separate task listed immediately below the 1.6 hour time entry.

18

regulations, and completely ignores caselaw that is directly on point. Thus, Produce Co's legal fees and expenses were necessitated by the circumstances of this case, and the need for Produce Co to protect its rights – the fact that Produce Co was required to incur a significant amount of fees in protecting its rights does not render the fees unreasonable, and that is not the test. The Court should consider what Produce Co was required to do in this case in order to protect its rights – oppose the Debtor's cash collateral motion and sale motion because neither provided adequate protection to PACA creditors; negotiate a cash reserve for the benefit of PACA creditors; and respond to a Claim Objection that should have never been brought in the first place. Under the circumstances, Produce Co submits that its attorney's fees and costs are wholly reasonable.

The debt owed to Produce Co is a significant, and critical, amount to Produce Co (which is a relatively small business), and the legal fees incurred by Produce Co were necessary for Produce Co to preserve and protect its PACA trust rights.

**E.**     **The Court Should Order The Debtor's Estate To Pay Produce Co's Allowed Claim In Full From The Segregated PACA Funds**

As discussed above, interest, and attorneys' fees and costs continue to accrue on Produce Co's claim. The Court should order the Debtor's estate to pay Produce Co's claim in its entirety. Produce Co proposes to file with the Court a notice of additional accrued interest and attorneys' fees and costs. The Committee, the Debtor, and all other parties in interest should be provided an opportunity to review the notice and file objections to the reasonableness of the additional fees and costs requested. To the extent no objection is filed, the Debtor's estate should pay Produce Co's claim in full. To the extent there is an objection to the reasonableness to the additional fees and costs Produce Co has incurred since it filed Claim No. 71, the Court should hold a hearing to resolve such objections.

### III.     Conclusion

For the reasons set forth herein, the Court should enter an order:

1.      Overruling the Claim Objection;

2.      Directing the payment of Claim No. 71 (including all accrued interest and attorneys' fees and costs) in its entirety; and

3.      Granting such further relief as the Court deems just and proper.

Dated:  March 19, 2020                    LEVENE, NEALE, BENDER, YOO &
                                          BRILL L.L.P.


                                    By:____*/s/ Krikor J. Meshefejian*____
                                          David B. Golubchik
                                          Krikor J. Meshefejian
                                          Attorneys for Urban Leaf Co. dba
                                          The Produce Company

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 10250 Constellation Boulevard, Suite 1700, Los Angeles, CA 90067

A true and correct copy of the foregoing document: **OPPOSITION TO OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO CLAIM NO. 71 FILED BY URBAN LEAF CO. DBA THE PRODUCE COMPANY** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **March 19, 2020**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Mikel R. Bistrow     mikel.bistrow@dinsmore.com, caron.burke@dinsmore.com
- Christopher Celentino     chris.celentino@dinsmore.com, caron.burke@dinsmore.com
- Gail Lin Chung     gcl@raisnerroupinian.com, jenny--hoxha--5459@ecf.pacerpro.com
- David J. Cook     cook@squeezebloodfromturnip.com
- Terri H. Didion     terri.didion@usdoj.gov, patti.vargas@usdoj.gov
- Leonardo D. Drubach     leo@9000Law.com
- Trevor Ross Fehr     trevor.fehr@usdoj.gov
- John D. Fiero     jfiero@pszjlaw.com, ocarpio@pszjlaw.com
- Stephen D. Finestone     sfinestone@fhlawllp.com
- Steven T. Gubner     sgubner@ebg-law.com, ecf@ebg-law.com
- Laurie Hager     lhager@sussmanshank.com
- Robert G. Harris     rob@bindermalter.com
- Jennifer C. Hayes     jhayes@fhlawllp.com
- Kristen G. Hilton     Khilton@sussmanshank.com, Jbolstad@sussmanshank.com
- Gary M. Kaplan     gkaplan@fbm.com, calendar@fbm.com
- Eric M. Kyser     ekyser@martynlawfirm.com, admin@martynlawfirm.com
- Michael Lauter     mlauter@sheppardmullin.com
- Kyle Mathews     kmathews@sheppardmullin.com
- Krikor J. Meshefejian     kjm@lnbyb.com
- June Monroe     june@rjlaw.com, shelly@rjlaw.com
- Office of the U.S. Trustee / SF     USTPRegion17.SF.ECF@usdoj.gov
- Jason Rosell     jrosell@pszjlaw.com, mrenck@pszjlaw.com
- Ariella T. Simonds     asimonds@ktbslaw.com
- Ryan A. Witthans     rwitthans@fhlawllp.com
- Kaipo K.B. Young     KYoung@BL-Plaw.com

**2. SERVED BY UNITED STATES MAIL**: On **March 19, 2020**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ *Service information continued on attached page*

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012     **F 9013-3.1.PROOF.SERVICE**

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **March 19, 2020**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

*None.*

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| March 19, 2020 | Lourdes Cruz | */s/ Lourdes Cruz* |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012* **F 9013-3.1.PROOF.SERVICE**