

Stephen D. Finestone (125675)
Jennifer C. Hayes (197252)
Ryan A. Witthans (301432)
FINESTONE HAYES LLP
456 Montgomery Street, Floor 20
San Francisco, CA 94104
Tel. (415) 421-2624
Fax (415) 398-2820
sfinestone@fhlawllp.com
jhayes@fhlawllp.com

Attorneys for Debtor
Munchery, Inc.

Signed and Filed: April 10, 2020

_____
**HANNAH L. BLUMENSTIEL**
U.S. Bankruptcy Judge

John D. Fiero (136557)
Jason H. Rosell (269126)
PACHULSKI STANG ZIEHL & JONES LLP
150 California Street, 15th Floor
San Francisco, CA 94111
Tel: (415) 263-7000
Fax: (415) 263-7010
jfiero@pszjlaw.com
jrosell@pszjlaw.com

Counsel to the Official
Committee of Unsecured Creditors

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| In re<br><br>MUNCHERY, INC.,<br><br>Debtor and Debtor-in-Possession. | Case No. 19-30232-HLB<br>Chapter 11<br><br>**ORDER GRANTING JOINT MOTION TO APPROVE RESTRUCTURING SUPPORT AGREEMENT BY AND BETWEEN THE DEBTOR, THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, TRIPLEPOINT VENTURE GROWTH BDC CORP., THE PUTATIVE CLASS ACTION PLANTIFFS, AND LOOP SOFTWARE, INC.**<br><br>**Date:** April 9, 2020<br>**Time:** 10:00 a.m.<br>**Place:** Courtroom 19 |

1

The Joint Motion To Approve Restructuring Support Agreement By And Between The Debtor, The Official Committee Of Unsecured Creditors, Triplepoint Venture Growth BDC Corp., The Putative Class Action Plantiffs, and Loop Software, Inc. (the "Motion") came on for hearing on the date and time noted above, the Honorable Hannah L. Blumenstiel presiding. All appearances of counsel were as noted on the record.

Upon due consideration and good causing appearing therefor and it appearing that notice of the Motion was appropriate under the circumstances and that no objection was timely filed, the Court hereby orders as follows:

1. The Motion is granted.

2. The RSA attached as **Exhibit A** is approved.

3. This Order is effective upon entry, and the stay otherwise imposed by Rule 62(a) of the Federal Rules of Civil Procedure and/or Bankruptcy Rule 6004(h) shall not apply.

4. The Debtor, the Committee and the other parties to the RSA are authorized to take those steps they, or either one of them, deem(s) necessary to implement this Order without further Court order; provided, however, that a separate order of the Court will be required for any transfer of assets contemplated by the RSA to be effectuated.

**\*\*END OF ORDER\*\***

# COURT SERVICE LIST

ECF Participants only

# Exhibit A

DocuSign Envelope ID: 2FB39122-A34A-4F5A-905C-13052F3D97DF

EXECUTION COPY

# BINDING RSA TERM SHEET

# IN RE MUNCHERY

# Chapter 11 Case No. 19-30232

This Binding RSA Term Sheet (the "Term Sheet") dated February 19, 2020 (the "Effective Date") sets forth the material terms of a restructuring support agreement agreed to during the global settlement conference with Judge Roger L. Efremsky on November 22, 2019. The parties (the "Parties") to the Term Sheet are: (i) Munchery, Inc. (the "Debtor"), (ii) the Official Committee of Unsecured Creditors (the "Committee"), (iii) TriplePoint Venture Growth BDC Corp. ("TriplePoint"), (iv) the putative class action plaintiffs in the pending case of *Phillips et al. v. Munchery, Inc.* (the "Class"), and (v) Loop Software, Inc., a Delaware corporation ("Loop"). The purpose of this Term Sheet is to set forth the terms agreed to by the Parties at the global settlement conference.

The Parties hereby agree that the terms set forth in this Term Sheet shall be binding and enforceable effective as of the Effective Date, provided that the Term Sheet shall only be binding and enforceable against the Debtor upon approval by the Bankruptcy Court (as defined below). During the Support Period (as defined below), the Parties shall take all necessary or appropriate actions reasonably required to more fully memorialize the transactions and arrangements effectuated hereby, including entering into the Definitive Documents (as defined below).

**THIS TERM SHEET DOES NOT CONSTITUTE AN OFFER OF SECURITIES OR A SOLICITATION OF THE ACCEPTANCE OR REJECTION OF A CHAPTER 11 PLAN FOR PURPOSES OF SECTIONS 1125 AND 1126 OF TITLE 11 OF THE UNITED STATES CODE (THE "BANKRUPTCY CODE"). ANY SUCH OFFER OR SOLICITATION WILL COMPLY WITH ALL APPLICABLE SECURITIES LAWS AND/OR PROVISIONS OF THE BANKRUPTCY CODE.**

**THIS TERM SHEET CONTAINS A SERIES OF ASSUMPTIONS, COMPROMISES AND SETTLEMENTS OF ISSUES AND DISPUTES THAT WILL BE RESOLVED IN CONNECTION WITH A SALE PURSUANT TO THE BANKRUPTCY CODE AND CONFIRMATION OF A CHAPTER 11 PLAN. IN THE EVENT THE CHAPTER 11 PLAN CONTEMPLATED UNDER THIS TERM SHEET IS NOT CONFIRMED OR DOES NOT BECOME EFFECTIVE, NOTHING HEREIN SHALL BE CONSTRUED AS AN ADMISSION OF OR THE POSITIONS OF THE PARTIES WITH RESPECT TO THESE ISSUES OR DISPUTES. ACCORDINGLY, THIS TERM SHEET IS PROTECTED BY RULE 408 OF THE FEDERAL RULES OF EVIDENCE, THE ABSOLUTE MEDIATION PRIVILEGE, AND ANY OTHER APPLICABLE STATUTES OR DOCTRINES PROHIBITING THE USE OR DISCLOSURE OF CONFIDENTIAL SETTLEMENT DISCUSSIONS. THIS TERM SHEET IS SUBJECT TO ALL EXISTING CONFIDENTIALITY AGREEMENTS.**

1. **OVERVIEW OF THE RESTRUCTURING**

This Term Sheet contemplates the Restructuring (as defined below) of the Debtor. The Restructuring will be consummated through the Debtor's chapter 11 case (the "Chapter 11 Case")

DocuSign Envelope ID: 2FB39122-A34A-4F5A-905C-13052F3D97DF

currently pending in the United States Bankruptcy Court for the Northern District of California (the "Bankruptcy Court") and a chapter 11 plan of liquidation (the "Plan") to be confirmed by the Bankruptcy Court. The Plan will provide for (i) the sale of the Software Assets to Loop (unless otherwise sold prior to consummation of the Plan) and (ii) the distribution of all of the Debtor's assets in accordance with the waterfall set forth herein (collectively, the "Restructuring").

For purposes of this Term Sheet, "Initial Support Period" means the period commencing on the Effective Date and ending on the earliest of (i) the date on which Loop provides the Debtor, Committee, and TriplePoint evidence, satisfactory to each of them, of its ability to close the Loop Financing (the "Loop Financing Date") and (ii) the date on which this Term Sheet is terminated according to its terms.

For purposes of this Term Sheet, the "Secondary Support Period" means the period commencing on the Loop Financing Date and ending on the earliest of (i) the date on which the confirmed Plan becomes effective (the "Plan Effective Date") and (ii) the date on which this Term Sheet is terminated according to its terms.

The Initial Support Period and the Secondary Support Period are collectively referred to herein as the "Support Period."

The term "Initial Definitive Documents" means (a) a motion to approve the Debtor's entry into this Term Sheet, (b) an order approving the Debtor's entry into this Term Sheet, and (c) any other documents or exhibits related to or contemplated in the foregoing clauses, in each case in form and substance acceptable to Parties.

The term "Secondary Definitive Documents" includes, without limitation, (a) a combined Plan and disclosure statement (and all exhibits thereto), (b) an order tentatively approving the disclosure statement, (c) an order confirming the Plan, and (d) any other documents or exhibits related to or contemplated in the foregoing clauses, in each case in form and substance acceptable to Parties.

The term "Definitive Documents" means, collectively, the Initial Definitive Documents and the Secondary Definitive Documents.

## 2. COVENANTS OF THE PARTIES

During the Support Period, each Party shall:

   i. support and not object to efforts to obtain orders approving of this Term Sheet as a restructuring support agreement (which orders shall be acceptable to the Parties).

During the Initial Support Period, each Party shall:

   i. in good faith, negotiate the Initial Definitive Documents, which shall be in form and substance consistent in all respects with this Term Sheet; and

   ii. consent to those actions contemplated by this Term Sheet or otherwise required to be taken to effectuate the approval of this Term Sheet.

During the Secondary Support Period, each Party shall:

i.  in good faith, negotiate the Secondary Definitive Documents, which shall be in form and substance consistent in all respects with this Term Sheet;

ii. consent to those actions contemplated by this Term Sheet or otherwise required to be taken to effectuate the Restructuring, including entering into all documents and agreements necessary to consummate the Restructuring; and

iii. support entry of orders approving the disclosure statement and confirming the Plan.

During the Initial Support Period, (i) Debtor and the Committee shall draft and file a joint motion to approve this Term Sheet and an order approving such motion, and (ii) no Party shall take any action materially inconsistent with the Restructuring that is expressly contemplated by this Term Sheet and the Definitive Documents.

During the Secondary Support Period, (i) Debtor and the Committee shall draft a joint combined Plan and disclosure statement that incorporates the terms of this Term Sheet and take reasonable efforts to obtain approval of the disclosure statement and confirmation of the Plan; and (ii) no Party shall take any action materially inconsistent with the Restructuring expressly contemplated by this Term Sheet and the Definitive Documents.

During the Support Period, the Committee and the Debtor shall take reasonable efforts to avoid a TriplePoint Termination Event.

### 3. TERMINATION OF THIS TERM SHEET

Upon five (5) business days' written notice to the Parties, during which time the Parties may cure any TriplePoint Termination Event (as defined below) that is susceptible to cure within such 5-business day period, TriplePoint may terminate this Term Sheet after the occurrence, and during the continuation of, any of the following events (each, a "<u>TriplePoint Termination Event</u>"):

i.  conversion of the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code, appointment of a chapter 11 trustee, a responsible officer or an examiner with enlarged powers (beyond those set forth in Section 1106(a)(3) and (4) of the Bankruptcy Code) relating to the operation of the Debtor, or dismissal of the Chapter 11 Case;

ii. the Bankruptcy Court grants relief that is materially inconsistent with this Term Sheet or would reasonably be expected to materially frustrate the purpose of this Term Sheet;

iii. the Debtor or Committee file for approval of or otherwise support any plan, sale, or other transaction that is inconsistent with the Plan or the Restructuring;

iv. any of the orders approving this Term Sheet, the Plan, or the disclosure statement, are reversed, stayed, dismissed, vacated or reconsidered or modified or amended without the consent of TriplePoint or a motion for reconsideration, reargument, or rehearing is granted;

v.  any of the Definitive Documents filed in the Chapter 11 Case contains terms and conditions materially inconsistent with this Term Sheet;

vi. the Bankruptcy Court's confirmation of a competing plan or approval of any transaction for the sale or disposition of any of the Software Assets or the Data and Content Assets that is inconsistent with the terms of the Restructuring;

vii. the Debtor fails to obtain an order of the Bankruptcy Court approving this Term Sheet within 28 days after the Effective Date;

3
DOCS_SF:102012.10
Case: 19-30232   Doc# 316   Filed: 04/10/20   Entered: 04/10/20 16:44:01   Page 7 of 14

DocuSign Envelope ID: 2FB39122-A34A-4F5A-905C-13052F3D97DF

    viii.    if the Software Assets are abandoned to TriplePoint in accordance with Section 4 hereof, the sale of the Software Assets shall not have closed prior to seven business days before the deadline to vote on the Plan;

    ix.    the Debtor fails to file a motion seeking the approval of the disclosure statement to the Plan and confirmation of the Plan within 75 days after the Effective Date; and

    x.    the Debtor fails to obtain an order of the Bankruptcy Court approving the disclosure statement to the Plan and confirming the Plan within 120 days after the Effective Date.

Upon five (5) business days' written notice to the Parties, during which time TriplePoint or the Committee may cure any Debtor Termination Event (as defined below) that is susceptible to cure within such 5-business day period, the Debtor may terminate this Term Sheet upon the occurrence, and during the continuation of, any of the following events (each, a "Debtor Termination Event"):

    i.    A Party's material breach of any of its obligations set forth in the Covenants section of this Term Sheet; and

    ii.    the Debtor determines in good faith that continued performance under this Term Sheet would be inconsistent with the exercise of their fiduciary duties under applicable law; *provided*, *however*, that (i) the Debtor and its advisors may not, directly or indirectly, solicit, initiate, or knowingly encourage, or take any other action designed to facilitate, any inquiries or the making of any proposal that constitutes an alternative transaction that is materially inconsistent with this Term Sheet; and (ii) prior to the Debtor terminating this Term Sheet to move forward with an alternative proposal, the Debtor shall provide TriplePoint and the Committee with at least five (5) business days' written notice of the material terms and conditions of the proposed alternative proposal, during which time TriplePoint and the Committee shall have a right of first refusal to match such alternative proposal.

Upon five (5) business days' written notice to the Parties, during which time the applicable Parties may cure any Committee Termination Event (as defined below) that is susceptible to cure within such 5-business day period, the Committee may terminate this Term Sheet upon the occurrence, and during the continuation of, any of the following events (each, a "Committee Termination Event"):

    i.    The Committee determines, after consultation with the Debtor, that confirmation of the Plan is not feasible for lack of sufficient funds to pay administrative claims; *provided*, *however*, that the Committee may not declare a Committee Termination Event pursuant to this clause (i) to the extent that the lack of sufficient funds to pay administrative claims is the result of legal professional fees of the Debtor and the Committee incurred after the Effective Date in excess of $100,000;[1] and

    ii.    The Committee determines, after consultation with Loop, that Loop will not be able to secure the Loop Financing by March 1, 2020.

---

[1] For the avoidance of doubt, nothing contained in this Term Sheet impairs the right of any administrative claimant, including, without limitation, any legal professionals retained by the Debtor or the Committee, to object to confirmation of the combined Plan and disclosure statement on the grounds that such plan does not provide for the payment in full of administrative claims made by such objecting party.

This Term Sheet may be terminated by mutual written agreement among the Parties.

## 4. TERMS REGARDING CERTAIN ASSETS OF THE DEBTOR AND TRIPLEPOINT'S CLAIM

**Software Assets:**

Loop shall purchase all the software assets owned by the Debtor and generally described as the software for the sale, production, and delivery of prepared meals and meal kits, including the web and mobile e-commerce applications, the "Cookbook" recipe management and production platform, the "pick-and-pack" or "packing" application, the "driver" or "last mile" application, and all related customer care, operations support, and administrative tools (together the "<u>Software Assets</u>") for the following (collectively, the "<u>Software Consideration</u>"): (i) $250,000 cash; *plus* (ii) a promissory note of $250,000, which amount shall accrue interest at 10% per annum, with principal and all accrued interest due on the two year anniversary date of the closing (such promissory note shall be secured by the Software Assets); and, (iii) 10% interest in the common shares of Loop on a fully-diluted basis after the closing of Loop's seed financing in the amount of at least $1,000,000 (the "<u>Loop Financing</u>"). The Software Assets shall be sold by the Debtor pursuant to the Plan, with the Software Consideration distributed to TriplePoint pursuant to the Plan; *provided that* if the Loop Financing is ready to close at least 30 days prior to the scheduled date for the confirmation hearing, the Debtor shall abandon the Software Assets and stipulate to stay relief with TriplePoint to effectuate the sale of the Software Assets.

The purchase and sale of the Software Assets by Loop shall be conditioned upon the closing of the Loop Financing.

**Data Assets:**

The Plan shall provide that all the customer data, content, and trademark assets owned by Debtor, generally described as (a) the customer data, including all email and other contact information, transaction history, and customer ratings and reviews; (b) the historical transactional data; (c) the recipe database, including ingredients, nutritional information, preparation instructions, descriptions, and photographs; and (d) the tradename, trademarks, domain names, all written content, videos, and photography assets developed by or owned by Munchery to support the business or the brand (collectively, the "<u>Data and Content Assets</u>") shall be abandoned on the effective date of the Plan, unless otherwise sold prior to the effective date of the Plan by mutual agreement of the Debtor, the Committee, and TriplePoint. For the avoidance of doubt, neither the Plan nor the abandonment of the Data and Content Assets shall in any way affect the priority, validity, or enforcement of TriplePoint's liens with respect to the Data and Content Assets.

**TriplePoint's Claim under the Plan:**

The Plan shall provide that TriplePoint receives (i) the Software Consideration (unless the Software Assets have already been sold to Loop in accordance with Section 4 hereof) and (ii) an allowed secured claim against the Debtor's non-IP assets in the amount of $1,000,000.00 ("<u>TriplePoint Allowed Non-IP Claim</u>") in full satisfaction of all of its secured claim against the Debtor's estate. TriplePoint shall vote to support confirmation of a chapter 11 plan of liquidation that provides for the prompt payment to TriplePoint of the TriplePoint Allowed Non-IP Claim and

5
DOCS_SF:102012.10
Case: 19-30232   Doc# 316   Filed: 04/10/20   Entered: 04/10/20 16:44:01   Page 9 of 14

the Software Consideration (if necessary) in full. To the extent that the Plan is not confirmed, the TriplePoint Allowed Non-IP Claim shall not be binding upon any party.

**Committee's Adversary Proceeding Against TriplePoint**

The current adversary proceeding brought by the Committee against TriplePoint (Adv. Proceeding No. 19-03048) will be stayed for all purposes, including discovery, pending confirmation of a chapter 11 plan and will be dismissed with prejudice upon the effective date of a chapter 11 plan of liquidation.

## 5. TERMS REGARDING TREATMENT OF THE CLASS

The Class shall receive the following in full satisfaction of its claims: (i) $400,000 to be paid as a priority claim pursuant to section 507(a)(4) of the Bankruptcy Code; *plus* (ii) 50% of any Excess Funds (together, the "Class Payment"). "Excess Funds" shall mean any remaining cash of the estate after payment of all administrative claims, secured claims, priority claims, PACA claims, and the GUC Proceeds (as defined below). The Class Payment shall be made to counsel for the Class and any and all expenses or taxes related to the payment shall be made from the Class Payment and shall be the responsibility of the Class. The Debtor and the Class shall cooperate with respect to any steps required in the pending class action case necessary to obtain approval of or to facilitate this settlement; *provided, however*, that the Class shall bear all responsibility and associated costs of drafting and filing all required pleadings with the district court in connection with this settlement, including without limitation, obtaining (i) certification of the Class for settlement, (ii) approval of the forms of notices, and (iii) obtaining approval of the terms of the Class settlement. The Class shall also bear all cost of providing any required notices with respect to the settlement.

The Class Payment shall be in exchange for a full waiver and release of all claims of the Plaintiff, and a waiver and release of all claims of the members of the Class against, the Debtor's estate arising from the facts alleged in the class action Complaint, including, but not limited to, any administrative, priority, and general unsecured claims. Upon signing this Term Sheet, the Class shall file a class proof of claim in the Debtor's chapter 11 case reflecting the terms of this settlement. For the avoidance of doubt, the class proof of claim shall assert a priority claim for the $400,000 amount, regardless of its apportionment and distribution as between WARN Act back pay, taxes, costs, counsel fees, service payments, or WARN Act damages. The Class shall not object or otherwise oppose any chapter 11 liquidation plan, provided that such plan proposes to pay the Class Payment in full upon the effective date of such chapter 11 plan of liquidation. The Class shall **not** be entitled to vote on a chapter 11 plan of liquidation.

## 6. TERMS REGARDING TREATMENT OF GENERAL UNSECURED CREDITORS

The chapter 11 plan of liquidation shall establish a liquidation trust for the benefit of general unsecured creditors. The liquidation trustee shall be selected solely by the Committee. All remaining assets of the Debtor shall be vested in the liquidation trust. As a condition precedent to the effective date of the chapter 11 plan of liquidation, at least $120,000 shall be available to be transferred to the liquidation trust for the benefit of general unsecured creditors (the "GUC

DocuSign Envelope ID: 2FB39122-A34A-4F5A-905C-13052F3D97DF

Proceeds"). For the avoidance of doubt, the GUC Proceeds is net of any reserves for administrative claims, PACA claims, and non-Class priority claims.

The liquidation trust shall be responsible for reconciling and paying all claims, including, but not limited to, general unsecured claims, PACA claims, administrative claims, and non-Class priority claims.

### 7. MISCELLANEOUS

The Parties retain the right to object to the amount of any administrative claims.

This Term Sheet shall be governed by and construed in accordance with the internal laws of the State of California, without regard to any conflict of law provisions that would require the application of the law of any other jurisdiction.

Any disputes between the Parties arising out of, or in connection with, this Term Sheet shall be brought in the Bankruptcy Court (for so long as the Debtor is subject to the jurisdiction of the Bankruptcy Court) or, to the extent the Bankruptcy Court does not have jurisdiction, in a court located in San Mateo County, California, and the Parties hereby submit to the exclusive jurisdiction of the federal and state courts of the State of California located in San Mateo County with respect to any action or legal proceeding commenced by any Party arising out of, or in connection with, this Term Sheet, and irrevocably waive any objection the Parties now or hereafter may have respecting the venue of any such action or proceeding brought in such a court or respecting the fact that such court is an inconvenient forum.

*[Signature Page to Follow]*

IN WITNESS WHEREOF the parties have executed this document on the respective dates specified below with effect from the date specified on the first page of this document.

**Munchery, Inc.**

By: _[signature]_

Name: Stephen D. Finestone

Title: Counsel for the Debtor

**Official Committee of Unsecured Creditors**

By: _[signature]_

Name: Jason Rosell

Title: Counsel for the Committee

**TriplePoint Venture Growth BDC Corp.**

By: _[signature]_

Name: SAJAL SRIVASTAVA

Title: PRESIDENT

**Class Action Plaintiffs**

By: _____

Name: René Roupinian

Title: Counsel for Class Plaintiffs

**Loop Software, Inc.**

By: _____

Name: James Beriker

Title: CEO

8

DOCS_SF:102012.10

IN WITNESS WHEREOF the parties have executed this document on the respective dates specified below with effect from the date specified on the first page of this document.

| | |
|---|---|
| **Munchery, Inc.** | **Class Action Plaintiffs** |
| By: _____ | By: _____ (signed) |
| Name: Stephen D. Finestone | Name: Renė Roupinian |
| Title: Counsel for the Debtor | Title: Counsel for Class Plaintiffs |
| **Official Committee of Unsecured Creditors** | **Loop Software, Inc.** |
| By: _____ | By: _____ |
| Name: Jason Rosell | Name: James Beriker |
| Title: Counsel for the Committee | Title: CEO |
| **TriplePoint Venture Growth BDC Corp.** | |
| By: _____ | |
| Name: | |
| Title: | |

DocuSign Envelope ID: 2FB39122-A34A-4F5A-905C-13052F3D97DF

IN WITNESS WHEREOF the parties have executed this document on the respective dates specified below with effect from the date specified on the first page of this document.

| **Munchery, Inc.** | **Class Action Plaintiffs** |
|---|---|
| By: _____ | By: _____ |
| Name: Stephen D. Finestone | Name: Renė Roupinian |
| Title: Counsel for the Debtor | Title: Counsel for Class Plaintiffs |
| **Official Committee of Unsecured Creditors** | **Loop Software, Inc.** |
| By: _____ | By: _/s/ James Beriker_____ (F6B56BC2C50744E...) |
| Name: Jason Rosell | Name: James Beriker |
| Title: Counsel for the Committee | Title: CEO |

**TriplePoint Venture Growth BDC Corp.**

By: _____

Name:

Title: