1  Ariella T. Simonds (CA Bar No. 260940)
   KTBS LAW LLP
2  1999 Avenue of the Stars, Thirty-Ninth Floor
   Los Angeles, CA 90067
3  Telephone:     (310) 407-4000
   Facsimile:     (310) 407-9090
4  Email: asimonds@ktbslaw.com
5
   *Counsel for TableArt Inc.*
6

7              **UNITED STATES BANKRUPTCY COURT**

8              **NORTHERN DISTRICT OF CALIFORNIA**

9                **SAN FRANCISCO DIVISION**

10 In re                              Case No. 19-30232 (HLB)

11 MUNCHERY, INC.,                    Chapter 11

12                                    **APPLICATION OF CREDITOR**
             Debtor.                  **TABLEART, INC. FOR ALLOWANCE**
13                                    **AND PAYMENT OF ITS**
                                      **ADMINISTRATIVE EXPENSE CLAIM**
14                                    **PURSUANT TO SECTIONS 365 (d)(3)**
                                      **AND 503(b)(1) OF THE BANKRUPTCY**
15                                    **CODE; MEMORANDUM OF POINTS**
                                      **AND AUTHORITIES**
16

17                                    Hearing Date:   June 4, 2020
                                      Time:           10:00 a.m. (PDT)
18                                    Judge & Crtrm.: Hon. Hannah L. Blumenstiel
                                                      450 Golden Gate Avenue
19                                                    16th Floor
                                                      Courtroom 19
20                                                    San Francisco, CA 94102

21

22

23

24

25

26

27

28

KTBS LAW LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

KTBS LAW LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

TableArt Inc. ("TableArt") files this *Application of Creditor TableArt, Inc. for Allowance and Payment of its Administrative Expense Claim Pursuant to Sections 365(d)(3) and 503(b)(1) of the Bankruptcy Code* (the "Application") pursuant to sections 365(d)(3) and 503(b)(1)(a) of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.*(the "Bankruptcy Code") and requests entry of an order substantially in the form attached hereto as Exhibit A allowing TableArt's claim for post-petition rent owed by the Debtor in the amount of $13,714.60 and granting such claim administrative expense priority status.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

TableArt hereby moves this Court for an order pursuant to sections 365(d)(3) and 503(b)(1)(a) of the Bankruptcy Code approving, allowing and authorizing immediate payment of an administrative expense claim in the amount of $13,714.60 on account of post-petition rent.

### II. STATEMENT OF FACTS

On February 28, 2019 (the "Petition Date"), the Debtor commenced the above-captioned case by filing a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Northern District of California, San Francisco Division (the "Court").

TableArt, as Lessee, is party to that certain real property lease (including all addenda thereto the "Original Master Lease"), dated as of August 29, 2014, with LA Wave LLC, as Lessor (the "Master Lessor"), for the property commonly known as 5242 W. Washington Blvd. in Los Angeles, California (the "Master Lease Property"). TableArt, as Sublessor, and the Debtor, as Sublessee, are party to that certain real property sublease dated as of December 11, 2014 (including all addenda thereto, the "Sublease") for the easternmost portion (consisting of approximately 2,900 square feet) of the Master Lease Property (as more precisely defined in the Sublease, the "Premises"), with a term commencing on December 15, 2014 and expiring on August 31, 2019. A true and correct copy of the Sublease is attached hereto as Exhibit B. The Debtor, as Sublessor, and Light & Green, LLC (the "Light & Green"), as Sublessee, were party to that certain real property sublease dated as of August 15, 2017 (including all addenda thereto, the

KTBS LAW LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

"Sub-Sublease") for the Premises, with a term commencing on August 1, 2017 and expiring on August 31, 2019. The terms of the Master Lease are incorporated into the Sublease pursuant to Section 6.3 of the Sublease and the terms of the Sublease are incorporated into the Sub-Sublease pursuant to Section 6.3 of the Sub-Sublease.

Under the Sublease, the Debtor was obligated to pay TableArt for the months January 2018 through August 2019 base rent in the monthly amount of $6,691.15 (the "Sublease Base Rent"). See EXH. B at 011. However, the Debtor did not pay TableArt the Sublease Base Rent owed under the terms of the Sublease for January 2019 or any subsequent month. Light & Green also did not pay the Debtor any base rent or any other amount owed under the terms of the Sub-Sublease since at least the Petition Date. As of the Petition Date, the Debtor held a security deposit made by the Debtor to secure its obligations under the Sublease in the amount of $13,382.30 (the "Sublease Security Deposit") and a security deposit made by Light & Green to secure its obligations under the Sub-Sublease in the amount of $13,050.00 (the "Sub-Sublease Security Deposit" and, together with the Sublease Security Deposit, the "Security Deposits").

On January 30, 2020, the Court entered that certain *Stipulation and Proposed Order Modifying the Automatic Stay* [Dkt. No. 291] (the "Stipulation"). Pursuant to the Stipulation, the Debtor agreed that TableArt could: (i) apply the Sublease Security Deposit to reduce the Debtor's outstanding obligations under the Sublease; (ii) collect directly from Light & Green any and all amounts owed by Light & Green under the terms of the Sub-Sublease; and (iii) apply the Sub-Sublease Security Deposit to reduce Light & Green's outstanding obligations under the Sub-Sublease, provided that any and all amounts collected by TableArt from Light & Green and/or applied by TableArt from the Security Deposits would reduce TableArt's ultimate administrative expense claim on a dollar-for-dollar basis.

On or about January 31, 2020, TableArt applied the Security Deposits as set forth in the Stipulation. TableArt now asserts an administrative expense claim for the post-petition rent due from the Debtor under the Sublease in the amount of $13,714.60, which represents monthly Base Rent in the amount of $6,691.15 for the period from March 2019 through August 2019, net of the $26,432.30 in Security Deposits previously applied by TableArt. To date, TableArt has not

KTBS LAW LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

1  recovered any other amounts from light & Green.  However, in the event that TableArt's efforts to

2  recover from Light & Green are partially or wholly successful, the dollar amount of TableArt's

3  administrative expense claim against the Debtor's estate will correspondingly be reduced on a

4  dollar-for-dollar basis, as provided in the Stipulation.

5  ### III.  ARGUMENT

6  Pursuant to sections 365(d)(3) and 503(b)(1)(a) of the Bankruptcy Code, TableArt is

7  statutorily entitled to payment of post-petition rent under the Sublease on an administrative

8  expense priority basis.  The Debtor has failed to pay any of the rent due for the period from the

9  Petition Date through and including the termination of the term of the Sublease, in an aggregate

10  amount of no less than $40,146.90.  Pursuant to the Stipulation, in consideration for the

11  modification of the automatic stay to permit TableArt to collect amounts owed by Light & Green

12  under the terms of the Sub-Sublease directly from Light & Green, TableArt agreed, *inter alia*, to

13  reduce the amount of the administrative expense priority claim asserted by TableArt against Light

14  & Green's estate by the amount of the Security Deposits applied.  Following a reduction of

15  $26,432.30, representing the aggregate amount of the Security Deposits, the net amount of

16  TableArt's administrative expense claim is $13,714.60.  Pursuant to sections 365(d)(3) and

17  503(b)(1)(a) of the Bankruptcy Code, TableArt is entitled to allowance and payment of its

18  administrative expense claim in that amount.

19  ### IV.  CONCLUSION

20  **WHEREFORE**, TableArt respectfully requests that the Court enter an order substantially

21  in the form attached hereto as Exhibit A: (i) allowing TableArt's administrative expense claim in

22  the amount of $13,714.60 pursuant to sections 365(d)(3) and 503(b)(1)(a) of the Bankruptcy Code,

23  and (ii) granting such other relief as the Court deems just and proper.

24

25  DATED:  April 29, 2020                    */s/ Ariella T. Simonds*

26                                                         Ariella T. Simonds
                                                            KTBS LAW LLP

27                                                         *Counsel for TableArt Inc.*

28

# EXHIBIT A

Ariella T. Simonds (CA Bar No. 260940)
KTBS LAW LLP
1999 Avenue of the Stars, Thirty-Ninth Floor
Los Angeles, CA 90067
Telephone:     (310) 407-4000
Facsimile:     (310) 407-9090
Email: asimonds@ktbslaw.com

*Counsel for TableArt Inc.*

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| In re | Case No. 19-30232 (HLB) |
| MUNCHERY, INC., | Chapter 11 |
| Debtor. | **[PROPOSED] ORDER APPROVING APPLICATION OF CREDITOR TABLEART, INC. FOR ALLOWANCE AND PAYMENT OF ITS ADMINISTRATIVE EXPENSE CLAIM PURSUANT TO SECTIONS 365 (d)(3) AND 503(b)(1) OF THE BANKRUPTCY CODE** |

KTBS LAW LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

Upon the *Application of Creditor Tableart, Inc. for Allowance and Payment of its Administrative Expense Claim Pursuant to Sections 365 (d)(3) and 503(b)(1) of the Bankruptcy Code* (the "Application")[1] TableArt, Inc. ("TableArt") in the above-captioned chapter 11 case, pursuant to sections 365(d)(3) and 503(b)(1)(a) of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.*(the "Bankruptcy Code"), for an order approving, allowing and authorizing immediate payment of an administrative expense claim in the amount of $13,714.60 on account of post-petition rent, all as more fully set forth in the Application; and the Court having found and determined that notice of the Application as provided to the parties listed therein is reasonable and sufficient, and it appearing that no other or further notice need be provided; and this Court having reviewed the Application and the Memorandum of Points and Authorities attached to the Application; and this Court having held a hearing on the Application; and this Court having determined that the legal and factual bases set forth in the Application establish just cause for the relief granted herein; and upon all of the proceedings had before this Court and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.      The Application is granted as provided herein.

2.      TableArt is allowed an administrative expense claim in the amount of $13,714.60.

3.      The Debtor is authorized and directed to make immediate payment to TableArt in the amount of $13,714.60.

**\*\*\*END OF ORDER\*\*\***

---

[1] Capitalized terms used but not otherwise herein defined shall have the meanings ascribed to such terms in the Application.

KTBS LAW LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

# EXHIBIT B



# STANDARD SUBLEASE
# MULTI-TENANT
## AIR COMMERCIAL REAL ESTATE ASSOCIATION

1. **Basic Provisions ("Basic Provisions").**

    1.1    **Parties**: This Sublease ("**Sublease**"), dated for reference purposes only <u>December 11, 2014</u> , is made by and between <u>TableArt Inc.</u>

<u>    </u> ("**Sublessor**") and

<u>Munchery, Inc.</u>

<u>    </u> ("**Sublessee**"), (collectively the "**Parties**", or individually a "**Party**").

    1.2(a)    **Premises**: That certain portion of the Project (as defined below), known as <u>the easternmost portion of the Building (as defined below)</u>

consisting of approximately <u>2,900</u> square feet ("**Premises**"). The Premises are located at <u>5242 W. Washington Blvd.</u>:

in the City of <u>Los Angeles</u> , County of <u>Los Angeles</u> ,
State of <u>California</u> , with zip code <u>90016</u> . In addition to Sublessee's rights to use and occupy the Premises as hereinafter specified, Sublessee shall have nonexclusive rights to the Common Areas (as defined below) as hereinafter specified, but shall have not any rights to the roof, the exterior walls, or the utility raceways of the building containing the Premises ("**Building**") or to any other buildings in the Project. The Premises, the Building, the Common Areas, the land upon which they are located, along with all other buildings and improvements thereon, are herein collectively referred to as the "**Project.**"

    1.2(b)    **Parking**: <u>all</u> unreserved and <u>all but two (2)</u> reserved vehicle parking spaces.

    1.3    **Term**: <u>Four (4)</u> years and <u>Eight & 1/2</u> (8.5) months commencing <u>December 15, 2014</u> ("**Commencement Date**") and ending <u>August 31, 2019</u> ("**Expiration Date**").

    ~~1.4~~    ~~**Early Possession**: If the Premises are available Sublessee may have non-exclusive possession of the Premises commencing~~ ~~("**Early Possession Date**").~~

    1.5    **Base Rent**: $5,945.00 per month ("**Base Rent**"), payable on the <u>first (1st)</u> day of each month commencing <u>February 1, 2015</u> .

☑ If this box is checked, there are provisions in this Sublease for the Base Rent to be adjusted.

    1.6    **Sublessee's Share** ~~of Operating Expenses~~: <u>forty-one & 1/2</u> percent (<u>41.5</u>%) ("**Sublessee's Share**"). In the event that that size of the Premises and/or the Project are modified during the term of this Lease, Lessor shall recalculate Lessee's Share to reflect such modification.

    1.7    **Base Rent and Other Monies Paid Upon Execution**:
        (a)    **Base Rent**: $2,972.50 for the period <u>January 16, 2015, through January 31, 2015</u> .
        (b)    **Security Deposit**: $13,382.30 ("**Security Deposit**").
        (c)    **Other**: $_____ for _____

        (d)    **Total Due Upon Execution of this Lease**: $16,354.80 .

    1.8    **Agreed Use**: The Premises shall be used and occupied only for <u>storage and distribution of prepared food products</u>

<u>INITIALS</u>

<u>INITIALS</u>

©2001 - AIR COMMERCIAL REAL ESTATE ASSOCIATION
FORM SBMT-4-04/14E

Case: 19-30232   Doc# 320   Filed: 04/29/20   Entered: 04/29/20 14:27:44   Page 001
28   EXH B 001

and for no other purposes.

    1.9    **Real Estate Brokers**:

        (a)    **Representation**: The following real estate brokers ( the "**Brokers**") and brokerage relationships exist in this transaction (check applicable boxes):

☑ Avison Young - Southern California, Ltd. _____ represents Sublessor exclusively ("**Sublessor's Broker**");

☑ Jones Lang LaSalle _____ represents Sublessee exclusively ("**Sublessee's Broker**"); or

☐ _____ ~~represents both Sublessor and Sublessee ("**Dual Agency**").~~

        (b)    **Payment to Brokers**: Upon execution and delivery of this Sublease by both Parties, Sublessor shall pay to the Brokers the brokerage fee agreed to in a separate written agreement ~~(or if there is no such agreement, the sum of _____ or _____ % of the total Base Rent)~~ for the brokerage services rendered by the Brokers.

    ~~1.10    **Guarantor**. The obligations of the Sublessee under this Sublease shall be guaranteed by _____~~

~~_____~~

~~_____~~

~~_____~~

~~_____ ("**Guarantor**").~~


    1.11    **Attachments**. Attached hereto are the following, all of which constitute a part of this Sublease:

☑ an Addendum consisting of Paragraphs 14 _____ through 26 _____ ;

☐ a plot plan depicting the Premises and/or Project;

☐ a current set of the Rules and Regulations;

☐ a Work Letter;

☑ a copy of the **Master Lease**;

☐ other (specify): _____

_____

_____ .


2.    **Premises**.

    2.1    **Letting**. Sublessor hereby subleases to Sublessee, and Sublessee hereby subleases from Sublessor, the Premises, for the term, at the rental, and upon all of the terms, covenants and conditions set forth in this Sublease. While the approximate square footage of the Premises may have been used in the marketing of the Premises for purposes of comparison, the Base Rent stated herein is NOT tied to square footage and is not subject to adjustment should the actual size be determined to be different. **Note: Sublessee is advised to verify the actual size prior to executing this Sublease.**

    2.2    **Condition**. Sublessor shall deliver the Premises to Sublessee broom clean and free of debris on the Commencement Date ~~or the Early Possession Date, whichever first occurs~~ ("**Start Date**"), and warrants that the existing electrical, plumbing, fire sprinkler, lighting, heating, ventilating and air conditioning systems ("**HVAC**"), and any items which the Sublessor is obligated to construct pursuant to the Work Letter attached hereto, if any, other than those constructed by Sublessee, shall be in good operating condition on said date. If a noncompliance with such warranty exists as of the Start Date, or if one of such systems or elements should malfunction or fail within the appropriate warranty period, Sublessor shall, as Sublessor's sole obligation with respect to such matter, except as otherwise provided in this Sublease, promptly after receipt of written notice from Sublessee setting forth with specificity the nature and extent of such noncompliance, malfunction or failure, rectify same at Sublessor's expense. The warranty periods shall be as follows: (i) 36 months as to the HVAC systems, and (ii) 30 days as to the remaining systems and other elements. If Sublessee does not give Sublessor the required notice within the appropriate warranty period, correction of any such noncompliance, malfunction or failure shall be the obligation of Sublessee at Sublessee's sole cost and expense

    2.3    **Compliance**. Sublessor warrants that any improvements, alterations or utility installations made or installed by or on behalf of Sublessor to or on the Premises comply with all applicable covenants or restrictions of record and applicable building codes, regulations and ordinances ("**Applicable Requirements**") in effect on the date that they were made or installed. Sublessor makes no warranty as to the use to which Sublessee will put the Premises or to modifications which may be required by the Americans with Disabilities Act or any similar laws as a result of Sublessee's use. **NOTE: Sublessee is responsible for determining whether or not the zoning and other Applicable Requirements are appropriate for Sublessee's intended use, and acknowledges that past uses of the Premises may no longer be allowed.** If the Premises do not comply with said warranty, Sublessor shall, except as otherwise provided, promptly after receipt of written notice from Sublessee setting forth with specificity the nature and extent of such noncompliance, rectify the same. *If Sublessee does not give Sublessor written notice of any noncompliance with this warranty within 3 months following the Commencement Date, correction of any such noncompliance shall be Sublessee's obligation, at Sublessee's sole cost and expense.*

    2.4    **Acknowledgements**. Sublessee acknowledges that: (a) it has been given an opportunity to inspect and measure the Premises, (b) it has been advised by Sublessor and/or Brokers to satisfy itself with respect to the condition of the Premises

_____
**INITIALS**

_____
**INITIALS**

©2001 - AIR COMMERCIAL REAL ESTATE ASSOCIATION        FORM SBMT-4-04/14E

Case: 19-30232   Doc# 320   Filed: 04/29/20   Entered: 04/29/20 14:27:44   Page 10 of 28   EXHB 1002

(including but not limited to the electrical, HVAC and fire sprinkler systems, security, environmental aspects, and compliance with Applicable Requirements and the Americans with Disabilities Act), and their suitability for Sublessee's intended use, (c) Sublessee has made such investigation as it deems necessary with reference to such matters and assumes all responsibility therefor as the same relate to its occupancy of the Premises, (d) it is not relying on any representation as to the size of the Premises made by Brokers or Sublessor, (e) the square footage of the Premises was not material to Sublessee's decision to sublease the Premises and pay the Rent stated herein, and (f) neither Sublessor, Sublessor's agents, nor Brokers have made any oral or written representations or warranties with respect to said matters other than as set forth in this Sublease. In addition, Sublessor acknowledges that: (i) Brokers have made no representations, promises or warranties concerning Sublessee's ability to honor the Sublease or suitability to occupy the Premises, and (ii) it is Sublessor's sole responsibility to investigate the financial capability and/or suitability of all proposed tenants.

2.5 **Americans with Disabilities Act**. In the event that as a result of Sublessee's use, or intended use, of the Premises the Americans with Disabilities Act or any similar law requires modifications or the construction or installation of improvements in or to the Premises, Building, Project and/or Common Areas, the Parties agree that such modifications, construction or improvements shall be made at: ☐ Sublessor's expense ☑ Sublessee's expense.

2.6 **Vehicle Parking**. Sublessee shall be entitled to use the number of Unreserved Parking Spaces and Reserved Parking Spaces specified in Paragraph 1.2(b) on those portions of the Common Areas designated from time to time for parking. Sublessee shall not use more parking spaces than said number. Said parking spaces shall be used for parking by vehicles no larger than fullsize passenger automobiles or pickup trucks, herein called "**Permitted Size Vehicles**." Sublessor may regulate the loading and unloading of vehicles by adopting Rules and Regulations as provided in Paragraph 2.9. No vehicles other than Permitted Size Vehicles may be parked in the Common Area without the prior written permission of Sublessor.

(a)  ~~Sublessee shall not permit or allow any vehicles that belong to or are controlled by Sublessee or Sublessee's employees, suppliers, shippers, customers, contractors or invitees to be loaded, unloaded, or parked in areas other than those designated by Sublessor for such activities.~~

(b) Sublessee shall not service or store any vehicles in the Common Areas.

(c) If Sublessee permits or allows any of the prohibited activities described in this Paragraph 2.6, then Sublessor shall have the right, without notice, in addition to such other rights and remedies that it may have, to remove or tow away the vehicle involved and charge the cost to Sublessee, which cost shall be immediately payable upon demand by Sublessor.

(d) Two (2) parking stalls on the western half of the parking area shall be reserved for Sublessor's exclusive use.

(e) Sublessee shall not impede Sublessor's ingress or egress to Sublessor's Premises or reserved parking stalls.

2.7 **Common Areas - Definition**. The term "**Common Areas**" is defined as all areas and facilities outside the Premises and within the exterior boundary line of the Project and interior utility raceways and installations within the Premises that are provided and designated by the Sublessor from time to time for the general nonexclusive use of Sublessor, Sublessee and other tenants of the Project and their respective employees, suppliers, shippers, customers, contractors and invitees, including parking areas, loading and unloading areas, trash areas, roadways, walkways, driveways and landscaped areas.

2.8 **Common Areas - Sublessee's Rights**. Sublessor grants to Sublessee, for the benefit of Sublessee and its employees, suppliers, shippers, contractors, customers and invitees, during the term of this Sublease, the nonexclusive right to use, in common with others entitled to such use, the Common Areas as they exist from time to time, subject to any rights, powers, and privileges reserved by Sublessor under the terms hereof or under the terms of any rules and regulations or restrictions governing the use of the Project. Under no circumstances shall the right herein granted to use the Common Areas be deemed to include the right to store any property, temporarily or permanently, in the Common Areas. Any such storage shall be permitted only by the prior written consent of Sublessor or Sublessor's designated agent, which consent may be revoked at any time. In the event that any unauthorized storage shall occur then Sublessor shall have the right, without notice, in addition to such other rights and remedies that it may have, to remove the property and charge the cost to Sublessee, which cost shall be immediately payable upon demand by Sublessor.

2.9 **Common Areas - Rules and Regulations**. Sublessor or such other person(s) as Sublessor may appoint shall have the exclusive control and management of the Common Areas and shall have the right, from time to time, to establish, modify, amend and enforce reasonable rules and regulations ("**Rules and Regulations**") for the management, safety, care, and cleanliness of the grounds, the parking and unloading of vehicles and the preservation of good order, as well as for the convenience of other occupants or tenants of the Building and the Project and their invitees. Sublessee agrees to abide by and conform to all such Rules and Regulations, and to cause its employees, suppliers, shippers, customers, contractors and invitees to so abide and conform. Sublessor shall not be responsible to Sublessee for the noncompliance with said Rules and Regulations by other tenants of the Project.

2.10 **Common Areas - Changes**. Sublessor shall have the right, in Sublessor's sole discretion, from time to time:

(a) To make changes to the Common Areas, including, without limitation, changes in the location, size, shape and number of driveways, entrances, parking spaces, parking areas, loading and unloading areas, ingress, egress, direction of traffic, landscaped areas, walkways and utility raceways;

(b) To close temporarily any of the Common Areas for maintenance purposes so long as reasonable access to the Premises remains available;

(c) To add additional buildings and improvements to the Common Areas;

(d) To use the Common Areas while engaged in making additional improvements, repairs or alterations to the Project, or any portion thereof; and

(e) To do and perform such other acts and make such other changes in, to or with respect to the Common Areas and Project as Sublessor may, in the exercise of sound business judgment, deem to be appropriate.

**INITIALS**

**INITIALS**

©2001 - AIR COMMERCIAL REAL ESTATE ASSOCIATION

FORM SBMT-4-04/14E

3. **Possession.**

~~3.1 **Early Possession.** Any provision herein granting Sublessee Early Possession of the Premises is subject to and conditioned upon the Premises being available for such possession prior to the Commencement Date. Any grant of Early Possession only conveys a non-exclusive right to occupy the Premises. If Sublessee totally or partially occupies the Premises prior to the Commencement Date, the obligation to pay Base Rent shall be abated for the period of such Early Possession. All other terms of this Sublease (including but not limited to the obligations to pay Sublessee's Share of Common Area Operating Expenses, Real Property Taxes and insurance premiums and maintain the Premises) shall, however, be in effect during such period. Any such Early Possession shall not affect the Expiration Date.~~

3.2 **Delay in Commencement.** Sublessor agrees to use its best commercially reasonable efforts to deliver possession of the Premises by the Commencement Date. If, despite said efforts, Sublessor is unable to deliver possession as agreed, Sublessor shall not be subject to any liability therefor, nor shall such failure affect the validity of this Sublease or change the Expiration Date. Sublessee shall not, however, be obligated to pay rent or perform its other obligations until Sublessor delivers possession of the Premises and any period of Rent Abatement that Sublessee would otherwise have enjoyed under the terms hereof, but minus any days of delay caused by the acts or omission of Sublessee. If possession is not delivered within 60 days after the Commencement Date, as the same may be extended under the terms of any Work Letter executed by Parties, Sublessee may, at its option, by notice in writing within 10 days after the end of such 60 day period, cancel this Sublease, in which event the Parties shall be discharged from obligations hereunder. If such written notice is not received by Sublessor within said 10 day period, Sublessee's Right to Cancel shall terminate. If possession of the Premises is not delivered within 120 days after the Commencement Date, this Sublease shall terminate unless other agreements are reached between Sublessor and Sublessee in writing. ~~the rights and obligations of Sublessor and Sublessee shall be as set forth in Paragraph 3.3 of the Master Lease (as modified by Paragraph 6.3 of this Sublease).~~

3.3 **Sublessee Compliance.** Sublessor shall not be required to tender possession of the Premises to Sublessee until Sublessee complies with its obligation to provide evidence of insurance. Pending delivery of such evidence, Sublessee shall be required to perform all of its obligations under this Sublease from and after the Start Date, including the payment of Rent, notwithstanding Sublessor's election to withhold possession pending receipt of such evidence of insurance. Further, if Sublessee is required to perform any other conditions prior to or concurrent with the Start Date, the Start Date shall occur but Sublessor may elect to withhold possession until such conditions are satisfied.

4. **Rent and Other Charges.**

4.1 **Rent Defined.** All monetary obligations of Sublessee to Sublessor under the terms of this Sublease (except for the Security Deposit) are deemed to be rent ("**Rent**"). Rent shall be payable in lawful money of the United States to Sublessor at the address stated herein or to such other persons or at such other places as Sublessor may designate in writing.

~~4.2 **Common Area Operating Expenses.** Sublessee shall pay to Sublessor during the term hereof, in addition to the Base Rent, Sublessee's Share of all Common Area Operating Expenses, as hereinafter defined, during each calendar year of the term of this Sublease, in accordance with the following provisions:~~

~~(a) "**Common Area Operating Expenses**" are defined, for purposes of this Sublease, as those costs incurred by Sublessor relating to the operation of the Project, which are included in the following list:~~

~~(i) Costs related to the operation, repair and maintenance, in neat, clean, good order and condition, but not the replacement of the following:~~

~~(aa) The Common Areas and Common Area improvements, including parking areas, loading and unloading areas, trash areas, roadways, parkways, walkways, driveways, landscaped areas, bumpers, irrigation systems, Common Area lighting facilities, fences and gates, elevators, roofs, and roof drainage systems.~~

~~(bb) Exterior signs and any tenant directories.~~

~~(cc) Any fire sprinkler systems.~~

~~(ii) The cost of water, gas, electricity and telephone to service the Common Areas and any utilities not separately metered.~~

~~(iii) The cost of trash disposal, pest control services, property management, security services, and the costs of any environmental inspections.~~

~~(iv) Reserves set aside for maintenance and repair of Common Areas.~~

~~(v) Real Property Taxes.~~

~~(vi) Insurance premiums.~~

~~(vii) Any deductible portion of an insured loss concerning the Building or the Common Areas.~~

~~(b) The inclusion of the improvements, facilities and services set forth in Subparagraph 4.2(a) shall not be deemed to impose an obligation upon Sublessor to either have said improvements or facilities or to provide those services unless Sublessor already provides the services, or Sublessor has agreed elsewhere in this Sublease to provide the same or some of them.~~

~~(c) Sublessee's Share of Common Area Operating Expenses is payable monthly on the same day as the Base Rent is due hereunder. The amount of such payments shall be based on Sublessor's estimate of the Common Area Operating Expenses. Within 60 days after written request (but not more than once each year) Sublessor shall deliver to Sublessee a reasonably detailed statement showing Sublessee's Share of the actual Common Area Operating Expenses incurred during the preceding year. If Sublessee's payments under this Paragraph 4.2(c) during the preceding year exceed Sublessee's Share as indicated on such statement, Sublessor shall credit the amount of such overpayment against Sublessee's Share of Common Area Operating Expenses~~

INITIALS

INITIALS

©2001 - AIR COMMERCIAL REAL ESTATE ASSOCIATION                    FORM SBMT-4-04/14E

Case: 19-30232   Doc# 320   Filed: 04/29/20   Entered: 04/29/20 14:27:44   Page 12 of 28                                                                            EXHB 1-004

~~next becoming due. If Sublessee's payments under this Paragraph 4.2(c) during the preceding year were less than Sublessee's Share as indicated on such statement, Sublessee shall pay to Sublessor the amount of the deficiency within 10 days after delivery by Sublessor to Sublessee of the statement.~~

~~4.3    **Utilities.**  Sublessee shall pay for all water, gas, heat, light, power, telephone, trash disposal and other utilities and services supplied to the Premises, together with any taxes thereon.  Notwithstanding the provisions of Paragraph 4.2, if at any time in Sublessor's sole judgment, Sublessor determines that Sublessee is using a disproportionate amount of water, electricity or other commonly metered utilities, or that Sublessee is generating such a large volume of trash as to require an increase in the size of the dumpster and/or an increase in the number of times per month that the dumpster is emptied, then Sublessor may increase Sublessee's Base Rent by an amount equal to such increased costs.~~

5.    **Security Deposit.**    The rights and obligations of Sublessor and Sublessee as to said Security Deposit shall be as set forth in Paragraph 5 of the Master Lease (as modified by Paragraph 7.3 of this Sublease).

6.    **Master Lease.**
6.1    Sublessor is the lessee of the Premises by virtue of the Master Lease, wherein LA Wave, LLC

is the lessor, hereinafter the "**Master Lessor**".

6.2    This Sublease is and shall be at all times subject and subordinate to the Master Lease.
6.3    The terms, conditions and respective obligations of Sublessor and Sublessee to each other under this Sublease shall be the terms and conditions of the Master Lease except for those provisions of the Master Lease which are directly contradicted by this Sublease in which event the terms of this Sublease document shall control over the Master Lease.  Therefore, for the purposes of this Sublease, wherever in the Master Lease the word "Lessor" is used it shall be deemed to mean the Sublessor herein and wherever in the Master Lease the word "Lessee" is used it shall be deemed to mean the Sublessee herein.
6.4    During the term of this Sublease and for all periods subsequent for obligations which have arisen prior to the termination of this Sublease, Sublessee does hereby expressly assume and agree to perform and comply with, for the benefit of Sublessor and Master Lessor, each and every obligation of Sublessor under the Master Lease except for the following paragraphs which are excluded therefrom: _____

_____ .
6.5    The obligations that Sublessee has assumed under paragraph 6.4 hereof are hereinafter referred to as the "**Sublessee's Assumed Obligations**".  The obligations that sublessee has not assumed under paragraph 6.4 hereof are hereinafter referred to as the "**Sublessor's Remaining Obligations**".
6.6    Sublessee shall hold Sublessor free and harmless from all liability, judgments, costs, damages, claims or demands, including reasonable attorneys fees, arising out of Sublessee's failure to comply with or perform Sublessee's Assumed Obligations.
6.7    Sublessor agrees to maintain the Master Lease during the entire term of this Sublease, subject, however, to any earlier termination of the Master Lease without the fault of the Sublessor, and to comply with or perform Sublessor's Remaining Obligations and to hold Sublessee free and harmless from all liability, judgments, costs, damages, claims or demands arising out of Sublessor's failure to comply with or perform Sublessor's Remaining Obligations.
6.8    Sublessor represents to Sublessee that the Master Lease is in full force and effect and that no default exists on the part of any Party to the Master Lease.

7.    **Assignment of Sublease and Default.**
7.1    Sublessor hereby assigns and transfers to Master Lessor the Sublessor's interest in this Sublease, subject however to the provisions of Paragraph 8.2 hereof.
7.2    Master Lessor, by executing this document, agrees that until a Default shall occur in the performance of Sublessor's Obligations under the Master Lease, that Sublessor may receive, collect and enjoy the Rent accruing under this Sublease.  However, if Sublessor shall Default in the performance of its obligations to Master Lessor then Master Lessor may, at its option, receive and collect, directly from Sublessee, all Rent owing and to be owed under this Sublease.  Master Lessor shall not, by reason of this assignment of the Sublease nor by reason of the collection of the Rent from the Sublessee, be deemed liable to Sublessee for any failure of the Sublessor to perform and comply with Sublessor's Remaining Obligations.
7.3    Sublessor hereby irrevocably authorizes and directs Sublessee upon receipt of any written notice from the Master Lessor stating that a Default exists in the performance of Sublessor's obligations under the Master Lease, to pay to Master Lessor the Rent due and to become due under the Sublease.  Sublessor agrees that Sublessee shall have the right to rely upon any such statement and request from Master Lessor, and that Sublessee shall pay such Rent to Master Lessor without any obligation or right to inquire as to whether such Default exists and notwithstanding any notice from or claim from Sublessor to the contrary and Sublessor shall have no right or claim against Sublessee for any such Rent so paid by Sublessee.
7.4    No changes or modifications shall be made to this Sublease without the consent of Master Lessor (which consent may not be unreasonable withheld or delayed).

8.    **Consent of Master Lessor.**
8.1    In the event that the Master Lease requires that Sublessor obtain the consent of Master Lessor to any subletting by Sublessor then, this Sublease shall not be effective unless, within 10 days of the date hereof, Master Lessor signs this Sublease thereby giving its consent to this Subletting.

_____
**INITIALS**

_____
**INITIALS**

©2001 - AIR COMMERCIAL REAL ESTATE ASSOCIATION    FORM SBMT-4-04/14E

Case: 19-30232    Doc# 320    Filed: 04/29/20    Entered: 04/29/20 14:27:44    Page 13 of 28    EXH B-1005

8.2    In the event that the obligations of the Sublessor under the Master Lease have been guaranteed by third parties then neither this Sublease, nor the Master Lessor's consent, shall be effective unless, within 10 days of the date hereof, said guarantors sign this Sublease thereby giving their consent to this Sublease.

8.3    In the event that Master Lessor does give such consent then:

(a)    Such consent shall not release Sublessor of its obligations or alter the primary liability of Sublessor to pay the Rent and perform and comply with all of the obligations of Sublessor to be performed under the Master Lease.

(b)    The acceptance of Rent by Master Lessor from Sublessee or any one else liable under the Master Lease shall not be deemed a waiver by Master Lessor of any provisions of the Master Lease.

(c)    The consent to this Sublease shall not constitute a consent to any subsequent subletting or assignment.

(d)    In the event of any Default of Sublessor under the Master Lease, Master Lessor may proceed directly against Sublessor, any guarantors or any one else liable under the Master Lease or this Sublease without first exhausting Master Lessor's remedies against any other person or entity liable thereto to Master Lessor.

(e)    Master Lessor may consent to subsequent sublettings and assignments of the Master Lease or this Sublease or any amendments or modifications thereto without notifying Sublessor or any one else liable under the Master Lease and without obtaining their consent and such action shall not relieve such persons from liability.

(f)    In the event that Sublessor shall Default in its obligations under the Master Lease, then Master Lessor, at its option and without being obligated to do so, may require Sublessee to attorn to Master Lessor in which event Master Lessor shall undertake the obligations of Sublessor under this Sublease from the time of the exercise of said option to termination of this Sublease but Master Lessor shall not be liable for any prepaid Rent nor any Security Deposit paid by Sublessee, nor shall Master Lessor be liable for any other Defaults of the Sublessor under the Sublease.

8.4    The signatures of the Master Lessor and any Guarantors of Sublessor at the end of this document shall constitute their consent to the terms of this Sublease.

8.5    Master Lessor acknowledges that, to the best of Master Lessor's knowledge, no Default presently exists under the Master Lease of obligations to be performed by Sublessor and that the Master Lease is in full force and effect.

8.6    In the event that Sublessor Defaults under its obligations to be performed under the Master Lease by Sublessor, Master Lessor agrees to deliver to Sublessee a copy of any such notice of default.  Sublessee shall have the right to cure any Default of Sublessor described in any notice of default within ten days after service of such notice of default on Sublessee.  If such Default is cured by Sublessee then Sublessee shall have the right of reimbursement and offset from and against Sublessor.

8.7    Notwithstanding anything set forth in *Paragraph 52* of the Master Lease, Master Lessor agrees that Sublessor's right to exercise its Option To Extend pursuant to *Paragraph 52* of the Master Lease shall not be impaired or otherwise affected as a result of Sublessor's subleasing of the Premises to Sublessee pursuant to this Sublease.  For the avoidance of doubt, Master Lessor agrees that the Option To Extend set forth in *Paragraph 52* of the Master Lease remains in full force and effect.

~~9.    **Additional Brokers Commissions**.~~

~~9.1    Sublessor agrees that if Sublessee exercises any option or right of first refusal as granted by Sublessor herein, or any option or right substantially similar thereto, either to extend the term of this Sublease, to renew this Sublease, to purchase the Premises, or to lease or purchase adjacent property which Sublessor may own or in which Sublessor has an interest, then Sublessor shall pay to Broker a fee in accordance with the schedule of Broker in effect at the time of the execution of this Sublease.  Notwithstanding the foregoing, Sublessor's obligation under this Paragraph is limited to a transaction in which Sublessor is acting as a Sublessor, lessor or seller.~~

~~9.2    If a separate brokerage fee agreement is attached then Master Lessor agrees that if Sublessee shall exercise any option or right of first refusal granted to Sublessee by Master Lessor in connection with this Sublease, or any option or right substantially similar thereto, either to extend or renew the Master Lease, to purchase the Premises or any part thereof, or to lease or purchase adjacent property which Master Lessor may own or in which Master Lessor has an interest, or if Broker is the procuring cause of any other lease or sale entered into between Sublessee and Master Lessor pertaining to the Premises, any part thereof, or any adjacent property which Master Lessor owns or in which it has an interest, then as to any of said transactions, Master Lessor shall pay to Broker a fee, in cash, in accordance with the schedule attached to such brokerage fee agreement.~~

~~9.3    Any fee due from Sublessor or Master Lessor hereunder shall be due and payable upon the exercise of any option to extend or renew, upon the execution of any new lease, or, in the event of a purchase, at the close of escrow.~~

~~9.4    Any transferee of Sublessor's interest in this Sublease, or of Master Lessor's interest in the Master Lease, by accepting an assignment thereof, shall be deemed to have assumed the respective obligations of Sublessor or Master Lessor under this Paragraph 9.  Broker shall be deemed to be a third-party beneficiary of this paragraph 9.~~

10.    **Representations and Indemnities of Broker Relationships**.  The Parties each represent and warrant to the other that it has had no dealings with any person, firm, broker or finder (other than the Brokers, if any) in connection with this Sublease, and that no one other than said named Brokers is entitled to any commission or finder's fee in connection herewith.  Sublessee and Sublessor do each hereby agree to indemnify, protect, defend and hold the other harmless from and against liability for compensation or charges which may be claimed by any such unnamed broker, finder or other similar party by reason of any dealings or actions of the indemnifying Party, including any costs, expenses, attorneys' fees reasonably incurred with respect thereto.

11.    **Attorney's fees**.  If any Party ~~or Broker~~ brings an action or proceeding involving the Premises whether founded in tort, contract or equity, or to declare rights hereunder, the Prevailing Party (as hereafter defined) in any such proceeding, action, or appeal thereon, shall be entitled to reasonable attorneys' fees.  Such fees may be awarded in the same suit or recovered in a separate suit,

INITIALS

INITIALS

©2001 - AIR COMMERCIAL REAL ESTATE ASSOCIATION

FORM SBMT-4-04/14E

Case: 19-30232    Doc# 320    Filed: 04/29/20    Entered: 04/29/20 14:27:44    Page 14 of 28                EXH B 006

whether or not such action or proceeding is pursued to decision or judgment. The term, **"Prevailing Party"** shall include, without limitation, a Party ~~or Broker~~ who substantially obtains or defeats the relief sought, as the case may be, whether by compromise, settlement, judgment, or the abandonment by the other Party ~~or Broker~~ of its claim or defense. The attorneys' fees award shall not be computed in accordance with any court fee schedule, but shall be such as to fully reimburse all attorneys' fees reasonably incurred. In addition, Sublessor shall be entitled to attorneys' fees, costs and expenses incurred in the preparation and service of notices of Default and consultations in connection therewith, whether or not a legal action is subsequently commenced in connection with such Default or resulting Breach ($200 is a reasonable minimum per occurrence for such services and consultation).

12.     **No Prior or Other Agreements; ~~Broker~~ Disclaimer**. This Sublease contains all agreements between the Parties with respect to any matter mentioned herein, and no other prior or contemporaneous agreement or understanding shall be effective. Sublessor and Sublessee each represents and warrants to the *other* ~~Brokers~~ that it has made, and is relying solely upon, its own investigation as to the nature, quality, character and financial responsibility of the other Party to this Sublease and as to the use, nature, quality and character of the Premises. ~~Brokers have no responsibility with respect thereto or with respect to any default or breach hereof by either Party. The liability (including court costs and attorneys' fees), of any Broker with respect to negotiation, execution, delivery or performance by either Sublessor or Sublessee under this Sublease or any amendment or modification hereto shall be limited to an amount up to the fee received by such Broker pursuant to this Sublease; provided, however, that the foregoing limitation on each Broker's liability shall not be applicable to any gross negligence or willful misconduct of such Broker.~~

13.     **Accessibility; Americans with Disabilities Act.**
        (a)     The Premises: ¨ have not undergone an inspection by a Certified Access Specialist (CASp). ¨ ~~have undergone an inspection by a Certified Access Specialist (CASp) and it was determined that the Premises met all applicable construction related accessibility standards pursuant to California Civil Code §55.51 et seq.~~ ¨ ~~have undergone an inspection by a Certified Access Specialist (CASp) and it was determined that the Premises did not meet all applicable construction related accessibility standards pursuant to California Civil Code §55.51 et seq.~~
        (b)     Since compliance with the Americans with Disabilities Act (ADA) is dependent upon *Sublessee's* specific use of the Premises, *Sublessor* makes no warranty or representation as to whether or not the Premises comply with ADA or any similar legislation. In the event that *Sublessee's* use of the Premises requires modifications or additions to the Premises in order to be in ADA compliance, *Sublessee* agrees to make any such necessary modifications and/or additions at Lessee's expense.

**ATTENTION:**   NO REPRESENTATION OR RECOMMENDATION IS MADE BY THE AIR COMMERCIAL REAL ESTATE ASSOCIATION OR BY ANY REAL ESTATE BROKER AS TO THE LEGAL SUFFICIENCY, LEGAL EFFECT, OR TAX CONSEQUENCES OF THIS SUBLEASE OR THE TRANSACTION TO WHICH IT RELATES. THE PARTIES ARE URGED TO:

1. SEEK ADVICE OF COUNSEL AS TO THE LEGAL AND TAX CONSEQUENCES OF THIS SUBLEASE.

2. RETAIN APPROPRIATE CONSULTANTS TO REVIEW AND INVESTIGATE THE CONDITION OF THE PREMISES. SAID INVESTIGATION SHOULD INCLUDE BUT NOT BE LIMITED TO: THE POSSIBLE PRESENCE OF HAZARDOUS SUBSTANCES, THE ZONING OF THE PROPERTY, THE STRUCTURAL INTEGRITY, THE CONDITION OF THE ROOF AND OPERATING SYSTEMS, AND THE SUITABILITY OF THE PREMISES FOR SUBLESSEE'S INTENDED USE.
**WARNING:** IF THE SUBJECT PROPERTY IS LOCATED IN A STATE OTHER THAN CALIFORNIA, CERTAIN PROVISIONS OF THE SUBLEASE MAY NEED TO BE REVISED TO COMPLY WITH THE LAWS OF THE STATE IN WHICH THE PROPERTY IS LOCATED.

| | |
|---|---|
| Executed at: _____ | Executed at: *San Francisco CA* |
| On: _____ | On: *December 15, 2014* |
| **By SUBLESSOR:** | **By SUBLESSEE:** |
| TableArt Inc. | Munchery, Inc. |
| By: _____ | By: _____ |
| Name Printed: Walter Lowry | Name Printed: *Tri Tran* |
| Title: President | Title: *Chief Executive Officer* |
| By: _____ | By: _____ |
| Name Printed: _____ | Name Printed: _____ |
| Title: _____ | Title: _____ |
| Address: 8024 Melrose Ave. | Address: _____ |

**PAGE 7 OF 9**

**INITIALS**                                                                 **INITIALS**

©2001 - AIR COMMERCIAL REAL ESTATE ASSOCIATION                              FORM SBMT-4-04/14E

EXH. B 007

Los Angeles, CA 90046

| | |
|---|---|
| Telephone:(323 ) 653-8278 | Telephone:(___ ) _____ |
| Facsimile:(___ ) _____ | Facsimile:(___ ) _____ |
| Email: _____ | Email: _____ |
| Email: _____ | Email: _____ |
| Federal ID No. _____ | Federal ID No. _____ |

**BROKER:** | **BROKER:**

Avison Young - Southern California, Ltd. | Jones Lang LaSalle

| | |
|---|---|
| Attn: Chase Gordon | Attn: Andrew Dilfer |
| Title: _____ | Title: _____ |
| | |
| Address: 6711 Forest Lawn Drive | Address: 2631 Rosecrans Avenue, Suite 375 |
| Los Angeles, CA 90068 | El Segundo, CA 90245 |
| Telephone:(323 ) 851-6666 | Telephone:(___ ) _____ |
| Facsimile:(323 ) 851-2022 | Facsimile:(___ ) _____ |
| Email: chase.gordon@avisonyoung.com | Email: _____ |
| Federal ID No. _____ | Federal ID No. _____ |
| Broker/Agent BRE License #: 01914803 | Broker/Agent BRE License #: _____ |

Consent to the above Sublease is hereby given.

| | |
|---|---|
| Executed at: _LA_ | Executed at: _____ |
| On: _12/23/14_ | On: _____ |

**By MASTER LESSOR:** | **By GUARANTOR(S):**

LA Wave, LLC | By: _____

| | Name Printed: Walter Lowry |
|---|---|
| | Address: 2976 Lakeridge Drive |
| By: _____ | Los Angeles, CA 90068 |
| Name Printed: Tim Dietenhofer | |
| Title: Manager | |

| | |
|---|---|
| By: _____ | By: _____ |
| Name Printed: _____ | Name Printed: Craig Thompson |
| Title: _____ | Address: 2976 Lakeridge Drive |
| Address: 4000 Venice Blvd. | Los Angeles, CA 90068 |
| Los Angeles, CA 90019 | |
| Telephone:(323 ) 735-5010 | |
| Facsimile:(___ ) _____ | |
| Email: tim@alliancela.com | |
| Federal ID No. _____ | |

NOTICE:  These forms are often modified to meet changing requirements of law and industry needs.  Always write or call to make sure you are utilizing the most current form:  AIR Commercial Real Estate Association,  500 N Brand Blvd, Suite 900, Glendale, CA 91203. Telephone No. (213) 687-8777.  Fax No.: (213) 687-8616.

**PAGE 8 OF 9**

INITIALS

INITIALS

©2001 - AIR COMMERCIAL REAL ESTATE ASSOCIATION

FORM SBMT-4-04/14E

Case: 19-30232    Doc# 320    Filed: 04/29/20    Entered: 04/29/20 14:27:44    Page 16 of 28

EXH. B 008

©Copyright 2001 By AIR Commercial Real Estate Association.
All rights reserved. No part of these works may be reproduced in any form without permission in writing.

**INITIALS**

PAGE 9 OF 9

**INITIALS**

©2001 - AIR COMMERCIAL REAL ESTATE ASSOCIATION

FORM SBMT-4-04/14E



# RENT ADJUSTMENT(S)
## STANDARD SUBLEASE ADDENDUM

**Dated** _____ December 11, 2014 _____

**By and Between (Sublessor)** TableArt Inc. _____

_____

**(Sublessee)** Munchery, Inc. _____

_____

**Address of Premises:** 5242 W. Washington Blvd.

Los Angeles, CA 90016

Paragraph 14

A. **RENT ADJUSTMENTS:**

The monthly rent for each month of the adjustment period(s) specified below shall be increased using the method(s) indicated below: (Check Method(s) to be Used and Fill in Appropriately)

☐ I. Cost of Living Adjustment(s) (COLA)

a. On (Fill in COLA Dates): _____

the Base Rent shall be adjusted by the change, if any, from the Base Month specified below, in the Consumer Price Index of the Bureau of Labor Statistics of the U.S. Department of Labor for (select one):☐ CPI W (Urban Wage Earners and Clerical Workers) or ☐ CPI U (All Urban Consumers), for (Fill in Urban Area):

_____, All Items

(1982-1984 = 100), herein referred to as "CPI".

b. The monthly Base Rent payable in accordance with paragraph A.I.a. of this Addendum shall be calculated as follows: the Base Rent set forth in paragraph 1.5 of the attached Lease, shall be multiplied by a fraction the numerator of which shall be the CPI of the calendar month 2 months prior to the month(s) specified in paragraph A.I.a. above during which the adjustment is to take effect, and the denominator of which shall be the CPI of the calendar month which is 2 months prior to (select one): the ☐ first month of the term of this Lease as set forth in paragraph 1.3 ("Base Month") or ☐ (Fill in Other "Base Month"): _____. The sum so calculated shall constitute the new monthly Base Rent hereunder, but in no event, shall any such new monthly Base Rent be less than the Base Rent payable for the month immediately preceding the Base Rent adjustment.

c. In the event the compilation and/or publication of the CPI shall be transferred to any other governmental department or bureau or agency or shall be discontinued, then the index most nearly the same as the CPI shall be used to make such calculation. In the event that the Parties cannot agree on such alternative index, then the matter shall be submitted for decision to the American Arbitration Association in accordance with the then rules of said Association and the decision of the arbitrators shall be binding upon the parties. The cost of said Arbitration shall be paid equally by the Parties.

PAGE 1 OF 3

**INITIALS**

**INITIALS**

©2000 - AIR COMMERCIAL REAL ESTATE ASSOCIATION

FORM RA-5-04/14E

~~☐ II. **Market Rental Value Adjustment(s) (MRV)**~~
~~a. On (Fill in MRV Adjustment Date(s): _____~~
~~_____~~
~~_____~~

~~the Base Rent shall be adjusted to the "Market Rental Value" of the property as follows:~~

~~1) Four months prior to each Market Rental Value Adjustment Date described above, the Parties shall attempt to agree upon what the new MRV will be on the adjustment date. If agreement cannot be reached within thirty days, then:~~

~~(a) Lessor and Lessee shall immediately appoint a mutually acceptable appraiser or broker to establish the new MRV within the next 30 days. Any associated costs will be split equally between the Parties, or~~

~~(b) Both Lessor and Lessee shall each immediately make a reasonable determination of the MRV and submit such determination, in writing, to arbitration in accordance with the following provisions:~~

~~(i) Within 15 days thereafter, Lessor and Lessee shall each select an ☐ appraiser or ☐ broker ("Consultant" check one) of their choice to act as an arbitrator. The two arbitrators so appointed shall immediately select a third mutually acceptable Consultant to act as a third arbitrator.~~

~~(ii) The 3 arbitrators shall within 30 days of the appointment of the third arbitrator reach a decision as to what the actual MRV for the Premises is, and whether Lessor's or Lessee's submitted MRV is the closest thereto. The decision of a majority of the arbitrators shall be binding on the Parties. The submitted MRV which is determined to be the closest to the actual MRV shall thereafter be used by the Parties.~~

~~(iii) If either of the Parties fails to appoint an arbitrator within the specified 15 days, the arbitrator timely appointed by one of them shall reach a decision on his or her own, and said decision shall be binding on the Parties.~~

~~(iv) The entire cost of such arbitration shall be paid by the party whose submitted MRV is not selected, i.e., the one that is NOT the closest to the actual MRV.~~

~~2) When determining MRV, the Lessor, Lessee and Consultants shall consider the terms of comparable market transactions which shall include, but no limited to, rent, rental adjustments, abated rent, lease term and financial condition of tenants.~~

~~3) Notwithstanding the foregoing, the new Base Rent shall not be less than the rent payable for the month immediately preceding the rent adjustment.~~

~~b. Upon the establishment of each New Market Rental Value:~~
~~1) the new MRV will become the new "Base Rent" for the purpose of calculating any further Adjustments, and~~
~~2) the first month of each Market Rental Value term shall become the new 'Base Month' for the purpose of calculating any further Adjustments.~~

☑  **III.  Fixed Rental Adjustment(s) (FRA)**

The Base Rent shall be increased to the following amounts on the dates set forth below:

| On (Fill in FRA Adjustment Date(s)): | The New Base Rent shall be: |
|---|---|
| December 15, 2015 | $6,123.35 |
| December 15, 2016 | $6,307.05 |
| December 15, 2017 | $6,496.26 |
| December 15, 2018 | $6,691.15 |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |

~~☐ IV.  Initial Term Adjustments.~~
~~The formula used to calculate adjustments to the Base Rate during the original Term of the Lease shall continue to be used during the extended term.~~

~~B.     NOTICE:~~
~~Unless specified otherwise herein, notice of any such adjustments, other than Fixed Rental Adjustments, shall be made as specified in paragraph 23 of the Lease.~~

~~C.     BROKER'S FEE:~~
~~The Brokers shall be paid a Brokerage Fee for each adjustment specified above in accordance with paragraph 15 of the Lease or if applicable, paragraph 9 of the Sublease.~~

NOTICE:  These forms are often modified to meet changing requirements of law and industry needs.  Always write or call to make sure you

are utilizing the most current form: AIR Commercial Real Estate Association, 500 N Brand Blvd, Suite 900, Glendale, CA 91203. Telephone No. (213) 687-8777. Fax No.: (213) 687-8616.

INITIALS

INITIALS

©2000 - AIR COMMERCIAL REAL ESTATE ASSOCIATION

FORM RA-5-04/14E

EXHIBIT 2



# OPTION(S) TO EXTEND
## STANDARD SUBLEASE ADDENDUM

**Dated** _____ December 11, 2014 _____

**By and Between (Sublessor)** TableArt Inc. _____

_____

**By and Between (Sublessee)** Munchery, Inc. _____

_____

**Address of Premises:** 5242 W. Washington Blvd. _____

Los Angeles, CA 90016 _____

Paragraph 15____

**A. OPTION(S) TO EXTEND:**

Sublessor hereby grants to Sublessee the option to extend the term of this Sublease for one (1)_____ additional sixty (60)_____ month period(s) commencing when the prior term expires upon each and all of the following terms and conditions:

(i) In order to exercise an option to extend, Sublessee must give written notice of such election to Sublessor and Sublessor must receive the same at least six (6) but not more than eight (8) months prior to the date that the option period would commence, time being of the essence. If proper notification of the exercise of an option is not given and/or received, such option shall automatically expire. Options (if there are more than one) may only be exercised consecutively.

~~(ii) The provisions of paragraph 39, including those relating to Lessee's Default set forth in paragraph 39.4 of this Lease, are conditions of this Option.~~

(iii) Except for the provisions of this Sublease granting an option or options to extend the term, all of the terms and conditions of this Sublease except where specifically modified by this option shall apply.

(iv) This Option is personal to the original Sublessee, and cannot be assigned or exercised by anyone other than said original Sublessee and only while the original Sublessee is in full possession of the Premises and without the intention of thereafter assigning or subletting.

(v) The monthly rent for each month of the option period shall be calculated as follows, using the method(s) indicated below: (Check Method(s) to be Used and Fill in Appropriately)

~~☐ I. Cost of Living Adjustment(s) (COLA)~~

~~a. On (Fill in COLA Dates):~~ _____

~~the Base Rent shall be adjusted by the change, if any, from the Base Month specified below, in the Consumer Price Index of the Bureau of Labor Statistics of the U.S. Department of Labor for (select one): ☐ CPI W (Urban Wage Earners and Clerical Workers) or ☐ CPI U (All Urban Consumers), for (Fill in Urban Area):~~ -

~~All Items (1982-1984 = 100), herein referred to as "CPI".~~

~~b. The monthly Base Rent payable in accordance with paragraph A.I.a. of this Addendum shall be calculated as follows: the Base Rent set forth~~

**INITIALS**

PAGE 1 OF 3

**INITIALS**

©2000 - AIR COMMERCIAL REAL ESTATE ASSOCIATION
OE-4-04/14E

FORM

Case: 19-30232   Doc# 320   Filed: 04/29/20   Entered: 04/29/20 14:27:44   Page 21 of
28
EXHIBIT 3

in paragraph 1.5 of the attached Lease, shall be multiplied by a fraction the numerator of which shall be the CPI of the calendar month 2 months prior to the month(s) specified in paragraph A.I.a. above during which the adjustment is to take effect, and the denominator of which shall be the CPI of the calendar month which is 2 months prior to (select one): ☐ the first month of the term of this Lease as set forth in paragraph 1.3 ("Base Month") or ☐ (Fill in Other "Base Month"): -

The sum so calculated shall constitute the new monthly Base Rent hereunder, but in no event, shall any such new monthly Base Rent be less than the Base Rent payable for the month immediately preceding the rent adjustment.

c. In the event the compilation and/or publication of the CPI shall be transferred to any other governmental department or bureau or agency or shall be discontinued, then the index most nearly the same as the CPI shall be used to make such calculation. In the event that the Parties cannot agree on such alternative index, then the matter shall be submitted for decision to the American Arbitration Association in accordance with the then rules of said Association and the decision of the arbitrators shall be binding upon the parties. The cost of said Arbitration shall be paid equally by the Parties.

☑ **II. Market Rental Value Adjustment(s) (MRV)**

a. On (Fill in MRV Adjustment Date(s))

September 1, 2019

the Base Rent shall be adjusted to the "Market Rental Value" of the property as follows:

1) Four months prior to each Market Rental Value Adjustment Date described above, the Parties shall attempt to agree upon what the new MRV will be on the adjustment date. If agreement cannot be reached, within thirty days, then:

(a) Lessor and Lessee shall immediately appoint a mutually acceptable appraiser or broker to establish the new MRV within the next 30 days. Any associated costs will be split equally between the Parties, or

(b) Both Lessor and Lessee shall each immediately make a reasonable determination of the MRV and submit such determination, in writing, to arbitration in accordance with the following provisions:

(i) Within 15 days thereafter, Lessor and Lessee shall each select an ☐ appraiser or ☐ broker ("Consultant" - check one) of their choice to act as an arbitrator. The two arbitrators so appointed shall immediately select a third mutually acceptable Consultant to act as a third arbitrator.

(ii) The 3 arbitrators shall within 30 days of the appointment of the third arbitrator reach a decision as to what the actual MRV for the Premises is, and whether Lessor's or Lessee's submitted MRV is the closest thereto. The decision of a majority of the arbitrators shall be binding on the Parties. The submitted MRV which is determined to be the closest to the actual MRV shall thereafter be used by the Parties.

(iii) If either of the Parties fails to appoint an arbitrator within the specified 15 days, the arbitrator timely appointed by one of them shall reach a decision on his or her own, and said decision shall be binding on the Parties.

(iv) The entire cost of such arbitration shall be paid by the party whose submitted MRV is not selected, ie. the one that is NOT the closest to the actual MRV.

2) When determining MRV, the Lessor, Lessee and Consultants shall consider the terms of comparable market transactions which shall include, but no limited to, rent, rental adjustments, abated rent, lease term and financial condition of tenants. -

3) Notwithstanding the foregoing, the new Base Rent shall not be less than the rent payable for the month immediately preceding the rent adjustment.

b. Upon the establishment of each New Market Rental Value:

1) the new MRV will become the new "Base Rent" for the purpose of calculating any further Adjustments, and -

2) the first month of each Market Rental Value term shall become the new "Base Month" for the purpose of calculating any further Adjustments.

Sublessor and Sublessee hereby acknowledge and agree that, pursuant to <u>Paragraph 52</u> of the Master Lease, the Base Rent under the Master Lease is adjusted to the "**Market Rental Value**" upon Sublessor's successful exercise of the Option To Extend set forth in <u>Paragraph 52</u> of the Master Lease. Upon Sublessee's successful exercise of the Option To Extend set forth in <u>Paragraph 14</u> of this Sublease, the Base Rent under this Sublease shall be increased by the same percentage that the Base Rent has been increased under the Master Lease. Thereafter, the Base Rent under this Sublease shall be increased as provided in <u>Section III</u> below.

☑ **III. Fixed Rental Adjustment(s) (FRA)**

The Base Rent shall be increased to the following amounts on the dates set forth below:

| On (Fill in FRA Adjustment Date(s)): | The New Base Rent shall be: |
|---|---|
| September 1, 2020 | 103% of prior month's amount |
| September 1, 2021 | 103% of prior month's amount |
| September 1, 2022 | 103% of prior month's amount |

INITIALS

INITIALS

©2000 - AIR COMMERCIAL REAL ESTATE ASSOCIATION
OE-4-04/14E

FORM

September 1, 2023                        103% of prior month's amount

☐ **IV. Initial Term Adjustments.**
~~The formula used to calculate adjustments to the Base Rate during the original Term of the Lease shall continue to be used during the extended term.~~

**B. NOTICE:**
~~Unless specified otherwise herein, notice of any rental adjustments, other than Fixed Rental Adjustments, shall be made as specified in paragraph 23 of the Lease.~~

**C. BROKER'S FEE:**
~~The Brokers shall be paid a Brokerage Fee for each adjustment specified above in accordance with paragraph 15 of the Lease or if applicable, paragraph 9 of the Sublease.~~

**NOTICE:  These forms are often modified to meet changing requirements of law and industry needs.  Always write or call to make sure you are utilizing the most current form:  AIR Commercial Real Estate Association,  500 N Brand Blvd, Suite 900, Glendale, CA 91203.  Telephone No. (213) 687-8777.  Fax No.: (213) 687-8616.**

**PAGE 3 OF 3**

INITIALS

INITIALS

©2000 - AIR COMMERCIAL REAL ESTATE ASSOCIATION
OE-4-04/14E

FORM

EXH. B 015



# ADDENDUM

**Date:** December 11, 2014

**By and Between (Sublessor)** TableArt Inc.

**(Sublessee)** Munchery, Inc.

**Address of Premises:** 5242 W. Washington Blvd.
Los Angeles, CA 90016

Paragraph 16-26

In the event of any conflict between the provisions of this Addendum and the printed provisions of the Lease, this Addendum shall control.

16.    Prior to the Commencement Date, Sublessor, at its sole cost and expense, (a) shall cause a demising wall to be installed between the roll-up loading doors of the Building, separating the Premises from the portion of the Building that will continue to be occupied solely by Sublessor, and (b) shall cause all stained or otherwise damaged ceiling tiles in the Premises to be repaired or replaced. The demising wall shall be subject to the approval of Sublessor's insurance provider. As provided in Paragraph 59 of the Master Lease, (i) all work done by Sublessor shall be done with permits from the Los Angeles Dept. of Building and Safety (if required by local building codes) and performed by licensed professionals, and (ii) Sublessor shall comply with all applicable laws and codes, including, without limitation, fire codes. Sublessee shall reasonably cooperate with Sublessor in applying for and obtaining any permits that may be required.

17.    Sublessee, at its sole cost and expense, may install its company signage on the Building, provided all said signage complies with local laws, is tasteful and complementary to the Building's aesthetics, and is first approved by Sublessor and Master Lessor. Sublessor's approval shall include the size, type, color, location, copy, nature, and display qualities of any said signage, but shall not be unreasonably withheld or delayed. Notwithstanding any of the foregoing, Sublessee shall not affix any sign to the roof of the Building. In addition, Sublessee, at its sole cost and expense, may install shelving units or racks and bolt them to the floor and walls. Any work done by Sublessee pursuant to this Paragraph shall be subject to the terms and conditions set forth in Paragraph 59 of the Master Lease.

18.    All payments by Sublessee under this Sublease shall be made by electronic funds transfer (EFT) or wire transfer in accordance with instructions provided by Sublessor from time to time.

19.    Sublessee shall pay Sublessor, as additional rent, an amount equal to all Utilities Expenses (as defined

**PAGE 1 OF 3**

INITIALS

INITIALS

Case: 19-30232    Doc# 320    Filed: 04/29/20    Entered: 04/29/20 14:27:44    Page 24 of 28

EXH. B 016

below) that are in excess of the Base Amount (as defined below). For purposes of this Sublease, (i) the term "**Utilities Expenses**" means all costs and expenses that Sublessor pays or incurs during any calendar month for water, gas, power, sewer, solid waste (trash) disposal, or other utilities or services provided to the Building, and (ii) the term "**Base Amount**" means the total of all Utilities Expenses for the calendar month of October 2014 (as evidenced by bills, invoices, or other statements (generally, "**Invoices**") issued by the relevant providers). Sublessor shall provide Sublessee with copies of all Invoices for Utilities Expenses for each calendar month promptly after Sublessor has received all such Invoices, and shall provide a separate statement setting forth the amount (if any) that the total of all Utilities Expenses for such calendar month exceeds the Base Amount. Sublessee shall pay Sublessor any such excess within fifteen (15) days after receiving copies of the relevant Invoices and Sublessor's separate statement.

20.    Pursuant to Paragraph 57 of the Master Lease, Sublessor is required to pay Master Lessor "**Net Fees**", which are to be used by Master Lessor to pay the expenses of the Property, including property taxes, insurance, a management company fee, and any maintenance of the Project that Master Lessor might be required to perform. Sublessee shall pay Sublessor, as additional rent, Sublessee's Share (as defined in Paragraph 1.6) of any increase in such Net Fees above $1,870 per month. Sublessor shall provide Sublessee with a copy of any Invoice for such Net Fees for an amount in excess of $1,870 per month, and shall provide a separate statement setting forth Sublessee's Share of any such excess. Sublessee shall pay Sublessor any such excess within fifteen (15) days after receiving copies of the relevant Invoice and Sublessor's separate statement.

21.    Sublessee, at its sole cost and expense, shall keep the Premises in as good order, condition, and repair as existed on the Commencement Date. Sublessor shall remain responsible for any repairs that are Sublessor's responsibility under the Master Lease; provided, however, Sublessee shall pay Sublessor, as additional rent, (i) all reasonable costs and expenses incurred by Sublessor in connection with repairs that affect or benefit only the Premises, and (ii) Sublessee's Share of all reasonable costs and expenses incurred by Sublessor in connection with repairs that affect or benefit the entire Building. Sublessee shall make any such payment within fifteen (15) days after receiving an Invoice therefor, together with reasonably acceptable substantiation thereof. Sublessee shall reasonably cooperate with Sublessor in connection with any repairs being performed by Sublessor (including, without limitation, providing necessary or appropriate access to the Premises and in applying for and obtaining any permits that may be required).

22.    Sublessee shall not, directly or indirectly, voluntarily or by operation of law, assign this Sublease, sublease any part of the Premises, mortgage, pledge, or hypothecate Sublessee's subleasehold interest, or grant any concession or license within the Premises without Sublessor's prior written consent, which may be withheld in Sublessor's sole and absolute discretion. Any attempt to do any of the foregoing without Sublessor's prior written consent shall be void and of no force or effect.

23.    The Base Rent due and owing for the first month of the initial Sublease term shall be abated. Sublessee shall not be entitled to any other abatement of or reduction in Base Rent payable under this Sublease. As provided in Paragraph 13.3 of the Master Lease, any agreement for free or abated rent or other charges, or for the giving or paying by Sublessor to or for Sublessee of any cash or other bonus, inducement, or consideration for Sublessee's entering into this Sublease (all of which concessions are hereinafter referred to as "**Inducement Provisions**") shall be deemed conditioned upon Sublessee's full and faithful performance of all of

Case: 19-30232     Doc# 320     Filed: 04/29/20     Entered: 04/29/20 14:27:44     Page 25 of
28                                                                                                    EXHB 2017

the terms, covenants, and conditions of this Sublease. Upon breach of this Sublease by Sublessee, any such Inducement Provision shall automatically be deemed deleted from this Sublease and of no further force or effect, and any rent, other charge, bonus, inducement, or consideration theretofore abated, given, or paid by Sublessor under such an Inducement Provision shall be immediately due and payable by Sublessee to Sublessor, notwithstanding any subsequent cure of said breach by Sublessee. The acceptance by Sublessor of rent or the cure of the breach that initiated the operation of this Paragraph shall not be deemed a waiver by Sublessor of the provisions of this Paragraph unless specifically so stated in writing by Sublessor at the time of such acceptance.

24.     Provided that no event of default shall have occurred under the Sublease, Sublessee shall have the right to reduce the amount of the Security Deposit by half ("**Security Deposit Reduction Amount**") by applying the Security Deposit Reduction Amount to the Base Rent due and owing for the 25th full calendar month of the initial Sublease term and, if any portion of the Security Deposit Reduction Amount remains after such application, to the Base Rent due and owing for the 26th full calendar month of the initial Sublease term.

25.     For the avoidance of doubt, Sublessor and Sublessee hereby agree that all claims, disputes, or disagreements arising under this Sublease shall be resolved in accordance with the terms and conditions set forth in Paragraph 53 of the Master Lease.

26.     The Option To Extend set forth in Paragraph 15 of this Sublease is expressly contingent upon Sublessor successfully exercising the Option To Extend set forth in Paragraph 52 of the Master Lease.

KTBS LAW LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

1    STATE OF CALIFORNIA       )
                                     )

2    CITY OF LOS ANGELES      )

3        I, Shanda D. Pearson, am employed in the city and county of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 1999 Avenue of the Stars, 39th Floor, Los Angeles, California 90067.

       On April 29, 2020, I caused to be served the following document in the manner stated below:

- **APPLICATION OF CREDITOR TABLEART, INC. FOR ALLOWANCE AND PAYMENT OF ITS ADMINISTRATIVE EXPENSE CLAIM PURSUANT TO SECTIONS 365(d)(3) AND 503(b)(1) OF THE BANKRUPTCY CODE; MEMORANDUM OF POINTS AND AUTHORITIES**

| | |
|---|---|
| ☒ | TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF): Pursuant to controlling General Orders and LBR, the foregoing document was served by the court via NEF and hyperlink to the document. On **April 29, 2020**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below. |
| ☒ | (BY MAIL) I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Los Angeles, California, in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit. |
| ☐ | (BY OVERNIGHT DELIVERY) By sending by FedEx and/or USPS Express Mail to the addressee(s) as indicated on the attached list. |
| ☐ | (BY EMAIL) I caused to be served the above-described document by email to the parties indicated on the attached service list at the indicated email address. |
| ☐ | (PERSONAL DELIVERY) I arranged for service on the following persons and/or entities by personal delivery. |

       I declare under penalty of perjury, under the laws of the State of California and the United States of America that the foregoing is true and correct.

       Executed on April 29, 2020 at Los Angeles, California.

*/s/ Shanda D. Pearson*
Shanda D. Pearson

**TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):**

- Mikel R. Bistrow    mikel.bistrow@dinsmore.com, caron.burke@dinsmore.com
- Christopher Celentino    chris.celentino@dinsmore.com, caron.burke@dinsmore.com
- Gail Lin Chung    gcl@raisnerroupinian.com, jenny--hoxha--5459@ecf.pacerpro.com
- David J. Cook    cook@squeezebloodfromturnip.com
- Terri H. Didion    terri.didion@usdoj.gov, patti.vargas@usdoj.gov
- Leonardo D. Drubach    leo@9000Law.com
- Trevor Ross Fehr    trevor.fehr@usdoj.gov
- John D. Fiero    jfiero@pszjlaw.com, ocarpio@pszjlaw.com
- Stephen D. Finestone    sfinestone@fhlawllp.com
- Steven T. Gubner    sgubner@ebg-law.com, ecf@ebg-law.com
- Laurie Hager    lhager@sussmanshank.com
- Robert G. Harris    rob@bindermalter.com
- Jennifer C. Hayes    jhayes@fhlawllp.com
- Kristen G. Hilton    Khilton@sussmanshank.com, Jbolstad@sussmanshank.com
- Gary M. Kaplan    gkaplan@fbm.com, calendar@fbm.com
- Eric M. Kyser    ekyser@martynlawfirm.com, admin@martynlawfirm.coom
- Michael Lauter    mlauter@sheppardmullin.com
- Kyle Mathews    kmathews@sheppardmullin.com
- Krikor J. Meshefejian    kjm@lnbyb.com
- June Monroe    june@rjlaw.com, shelly@rjlaw.com
- Office of the U.S. Trustee / SF    USTPRegion17.SF.ECF@usdoj.gov
- Jason Rosell    jrosell@pszjlaw.com, mrenck@pszjlaw.com
- Ariella T. Simonds    asimonds@ktbslaw.com
- Ryan A. Witthans    rwitthans@fhlawllp.com
- Kaipo K.B. Young    KYoung@BL-Plaw.com

**SERVED VIA U.S. MAIL:**

| Armanino, LLP<br>12657 Alcosta Blvd., Suite 500<br>San Ramon, CA 94583 | James Beriker<br>220 Shaw Rd.<br>South San Francisco, CA 94080 | David S. Catuogno<br>K&L Gates LLP<br>1 Newark Center, 10th Fl.<br>Newark, NJ 07102 |
|---|---|---|
| Daniel M. Eliades<br>K&L Gates LLP<br>1 Newark Center, 10th Fl.<br>Newark, NJ 07102 | Gail C. Lin<br>Outten & Golden LLP<br>One California Street, Suite 1250<br>San Francisco, CA 94111 | Pachulski Stang Ziehl & Jones LLP<br>150 California St., 15th Floor<br>San Francisco, CA 94111-4500 |