Stephen D. Finestone (125675)
Jennifer C. Hayes (197252)
Ryan A. Witthans (301432)
FINESTONE HAYES LLP
456 Montgomery Street, Floor 20
San Francisco, CA 94104
Tel. (415) 421-2624
Fax (415) 398-2820
sfinestone@fhlawllp.com
jhayes@fhlawllp.com

Attorneys for Debtor
Munchery, Inc.

John D. Fiero (136557)
Jason H. Rosell (269126)
PACHULSKI STANG ZIEHL & JONES LLP
150 California Street, 15th Floor
San Francisco, CA 94111
Tel: (415) 263-7000
Fax: (415) 263-7010
jfiero@pszjlaw.com
jrosell@pszjlaw.com

Counsel to the Official
Committee of Unsecured Creditors

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| In re<br><br>MUNCHERY, INC.,<br><br>Debtor and Debtor-in-Possession. | Case No. 19-30232-HLB<br>Chapter 11<br><br>**DECLARATION OF JAMES BERIKER IN SUPPORT OF CONFIRMATION OF FIRST AMENDED JOINTLY PROPOSED PLAN DATED JUNE 10, 2020**<br><br>**Date:** August 20, 2020<br>**Time:** 10:00 a.m.<br>**Place:** Via Courtcall |

I, James Beriker, declare as follows:

1. I am the acting Chief Executive Officer ("CEO") of Munchery, Inc. ("Munchery" or the "Debtor"). I make this declaration in support of the confirmation of the First Amended Jointly Proposed Plan dated June 10, 2020 (ECF 351 - the "Plan"). The information in this declaration is based upon my personal knowledge obtained during this bankruptcy case. All dollar amounts referenced below are approximate amounts. The opinions expressed below are based upon my information and belief. If called as a witness I could and would testify competently to the matters stated below.

2. Based on consultation with the Debtor's counsel and for the reasons set forth below, I believe the Plan meets the Bankruptcy Code's requirements for confirmation and should be confirmed. The Debtor received no objections to confirmation.

3. Balloting: The ballot summary will be subsequently filed with the Court. The creditor classes were divided up between three classes. Class One is the secured claim of TriplePoint Venture Growth BDC Corp ("TriplePoint"). TriplePoint, with a secured claim of $3,559,373, voted to accept the Plan. Class Two is the class for general unsecured creditors. The Debtor received 13 ballots, representing claims of $611,000. All votes were to accept the Plan. Class Three is the class action claims of Debtor's former employees. Pursuant to the previously approved Restructuring Support Agreement ("RSA"), Class Three is to receive $400,000 in satisfaction of the claims. This class did not vote pursuant to the terms of the RSA.

4. To the best of my knowledge, the Plan complies with the applicable provisions of the Bankruptcy Code.

5. To the best of my knowledge, the Plan proponents, Debtor and the Official Committee of Unsecured Creditors (the "Committee), have complied with the Bankruptcy Code with respect to the solicitation of acceptances of the Plan.

6. The Plan is proposed in good faith and not by any means prohibited by law. It is the result of a lengthy mediation process between the Debtor, the Committee, TriplePoint and the Class Action Claimants.

7. Any payments to be made under the Plan are approved by, or subject to approval of this Court.

8. The identity of the Plan administrator and Oversight Member have been disclosed, as well as any compensation they will receive.

9. As noted above with respect to balloting, each impaired class has accepted the Plan.

10. The Plan meets the "best interests" test, as unsecured creditors will receive more under the Plan, which incorporates the terms of the RSA, than they would if the case were converted to a Chapter 7 and the RSA was no longer in effect. Given that TriplePoint has a secured claim in excess of $3 million, its claim would consume all the funds in the estate, unless the Chapter 7 trustee successfully challenged the secured nature of the claim, which I believe would be unlikely to succeed and would be expensive litigation.

11. I do not believe confirmation of the Plan will be followed by liquidation or further reorganization, as the Plan is liquidating in nature.

12. All administrative fees required to be paid, have been paid or will be paid on the Effective Date of the Plan.

13. To the best of my knowledge, priority and administrative creditors will be treated according to the Bankruptcy Code and will receive payment of their claims either on the Effective Date or when such claim is allowed.

14. To the best of my knowledge the Plan is feasible. My opinion as to feasibility of the Plan is based upon the following calculations:

**Cash on hand:**

| | | |
|---|---|---|
| - | Bank accounts: | $2,097,000 |
| - | Finestone Hayes Trust | $9,800 |
| - | Pachulski Stang Trust | $20,000 |
| - | **Subtotal:** | $2,127,467 |

**Anticipated Receipts:**

| | | |
|---|---|---|
| - | Funds from NY Landlord | $55,750 |

3

|   |   |   |
|---|---|---|
| - | Receivable from Rolliyo, Inc. | $20,000 |
| - | Credit card class action claim | $20,000 |
| - | **Subtotal** | $95,750 |

**Total Available Funds:** $2,223,217

15. With respect to the anticipated funds, I provide the following information. The $55,000 from the New York landlord is a return of a portion of Munchery's security deposit and is pursuant to a stipulation between the parties. A motion for approval of the stipulation has been filed and the Debtor is waiting for the notice period to expire on or about August 28, 2020 before uploading an order granting the motion. I do not anticipate any objection to the stipulation and the landlord has the funds and is prepared to turn them over upon entry of the order.

16. The receivable from Rolliyo, Inc. is due on or about December 15, 2020 and will be made pursuant to the promissory note in favor of the Debtor, which was entered into as part of the sale of Debtor's Data and Content Assets. The payment will include accrued interest as well, but that amount is relatively negligible, and I have valued the receivable based on the face amount of the promissory note. I do not believe there is any issue with the receipt of this payment.

17. The item identified as the credit card class action claim relates to a pending class action against Visa and Mastercard having to do with overcharging merchant fees. Parties have approached Debtor about purchasing its claims in the class action. I am informed and believe that $20,000 is a fair valuation of this claim at this point based upon conversations between Debtor's counsel and the potential purchasers. Bidding between interested parties may increase the return on this claim, but at this point $20,000 is an appropriate value.

18. The available funds will be used to pay the following:

   i) administrative claims

   ii) priority claims

   iii) $1,000,000 to TriplePoint pursuant to the RSA

   iv) $400,000 to the Class Action Claimants (Class 2) pursuant to the terms of the RSA

v) $120,000 to the unsecured creditors pool pursuant to the terms of the RSA.

19. With respect to the Administrative Claims, my best estimate is that they are as follows:

i) The claim of Pachulski Stang as Committee Counsel, which I estimate at $170,500. This is the amount sought by in firm's recent fee application and represents fees and costs incurred through June 30, 2020. There will likely be some additional fees owing through the date of confirmation, but I expect those to be no more than $5,000, as Pachulski Stang has done minimal work in the past month or two.

ii) The claim of Finestone Hayes LLP as Debtor's counsel. While I understand that the firm's fees are currently approximately $210,000, Finestone Hayes LLP has agreed to limit its compensation to an amount that assures the Debtor's ability to meet the Plan's payment requirements. I estimate that the firm's fees may be reduced to $175,000.

iii) The claim of Armanino LLP ("Armanino") as Debtor's financial advisor. Armanino's interim fees were recently approved. Debtor paid the bulk of the approved interim fees and estimates the unpaid balance and additional fees incurred prior to confirmation to be $12,000.

iv) The claim of Omni Management ("Omni") as the service and noticing agent. Based on recent invoicing, Debtor estimates the Omni claim at $5,800.

v) The claim of TableArt, pursuant to Court order is $13,700

vi) The claim of the Employment Development Department ("EDD") for $16,829 (Claim #95). The EDD filed a second administrative claim (#98) for approximately $40,000 but has advised the Debtor it will be withdrawing that claim.

vii) The claim of Aetna related to health insurance of approximately $4,100. Debtor missed a payment in mid-2019. Aetna has not filed a claim, but Debtor agreed to make the payment as part of the Plan.

Thus, the total administrative claims are estimated at $402,400

20. With respect to the Priority tax claims, there are a number of objections to claims that are outstanding. A discussion regarding those claims follows:

5

i) IRS claim for $291,000 (#42). The bulk of this claim ($283,000) is for an excise tax assessed in December 2018 for the 2015 tax year. The claim is based on enforcement of the Affordable Care Act ("ACA") and relates to the IRS's interpretation that certain employees were entitled to health insurance and did not receive it. The Debtor has provided the IRS with information indicating that the identified employees were not entitled to health insurance. In addition, Debtor provided the IRS with legal citations as to why the claim, even if allowed, would be treated as a general unsecured claim rather than a priority claim. The IRS's claim is based on shared responsibility obligations under the ACA. Court decisions have held that such obligations do not meet the definition of excise tax and as such are not entitled to priority. *In re Chesteen*, 799 Fed. Appx. 236 (5th Circuit 2020). Moreover, Debtor believes the assessment in the claim is more akin to a penalty as it is not designed to compensate the IRS for a pecuniary loss. Based on discussions with counsel for the IRS, Debtor expects the IRS to withdraw this claim.

ii) The Los Angeles County Claim for $43,222 (#45). This claim is an unsecured personal property tax claim. As set forth in the objection to the claim, Debtor asserts to defenses to the claim. First, the claim is based upon an alleged value of personal property totaling $2,581,911. Debtor sold its interest in the location in August 2018. The sale allocated $300,000 for the personal property and equipment. The claim also includes a penalty of $7,784. If the tax is adjusted on the revised value and the penalty is subordinated, the amended claim will be for approximately $4,200. Los Angeles County recently retained outside counsel. Debtor granted a 30-day extension to respond to the objection but based on initial contacts with the claimant's counsel, Debtor is hopeful that the objection will be resolved consensually.

iii) The CDTFA claim for $125,377 (#81). This claim is for sales tax assessed against Debtor for the sale of personal property in connection with Debtor's sale of its South San Francisco location. Debtor has been in contact with the taxing agency and believes it has an exemption to the tax. The parties are still exchanging information, but Debtor anticipates this claim will be withdrawn based on the exemption or significantly reduced based upon the value of the assets sold.

iv) The San Mateo County claim for $47,847 (#38). Debtor seeks a reduction in this claim of $7,118 based on the assessment of penalties, which should be subordinated. The objection was served on July 27, 2020. Debtor has not yet heard from the claimant, but it still has time to respond.

v) The Franchise Tax Board claim of $835.

21. Based on the above discussion, I estimate the priority tax payments at $73,000. This calculation assumes that the IRS claim will be reduce to no more than $8,000, the Los Angeles County claim will be $4,200, the CDTFA claim will be valued at $20,000 (though I expect it to be withdrawn or disallowed), and the San Mateo County claim will be reduced to $40,000.

22. Starting with the available funds of $2,223,000 and reducing by the estimated Administrative claims of $402,400, leaves $1,820,600. Deducting the estimated priority claims of $73,000, leaves $1,747,600. From that amount, Debtor must pay TriplePoint $1,000,000, pay the Class Action Plaintiffs $400,000 and the General Unsecured Creditor pool $120,000, leaving a balance of $227,600. I believe this balance should cover any adjustment that might be necessary to the estimates above. Based on the above, I believe performance of the Plan is feasible.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 13th day of August 2020 in Los Altos, California.

                                                      /s/ James Beriker
                                                      James Beriker